# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

IN RE: W.R. Grace & Co., *et al.*

| | |
|---|---|
| W.R. Grace & Co., *et al.*, and<br>the State of Montana,<br><br>               Appellants,<br><br>     v.<br><br>Libby Claimants,<br><br>             Appellee. | Civil Action No. 08-246 (RLB)<br><br><br>Bankruptcy Case No. 01-1139<br>Adversary Case No. 01-771<br>Appeal No. 08-19 |

## LIBBY CLAIMANTS' EMERGENCY MOTION TO
## DISSOLVE STAY PENDING APPEAL

Claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] hereby move this Court to dissolve the stay granted by the Bankruptcy Court pending the appeal to this Court by the Debtors (collectively, "Grace") and the State of Montana (the "State") of the Bankruptcy Court's order denying Grace's request to enjoin the Libby Claimants' separate and independent tort claims against the State (the "State Litigation") for lack of subject matter jurisdiction (the "Denial Order").[2]  The stay pending appeal (the "Stay")[3] should be immediately dissolved because the standards for a stay pending appeal have not been met; specifically, the Bankruptcy Court determined that the State "is not likely to prevail on the merits of appeal," and improperly concluded that harm to the State from

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Bankr. Case D.I. 17337] filed in the bankruptcy case (Case No. 01-01139 (JFK)), as it may be amended and restated from time to time.

[2] The Denial Order is comprised of the following: Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana [Adversary Proc. D.I. 420] and Memorandum and Opinion [Adversary Proc. D.I. 419], both entered on April 16, 2007 and (ii) Order Denying Motions to Reconsider [Adversary Proc. D.I. 484] and Memorandum Opinion [Adversary Proc. D.I. 483], both entered on March 31, 2008.

[3] A copy of the Bankruptcy Court order granting the Stay is attached as Exhibit A (the "Stay Order").

not granting a stay outweighed the continuing harm to sick and dying Libby Claimants from being barred from pursuing the State Litigation. Under the guise of a stay pending appeal, the Bankruptcy Court has left in place an injunction of the State Litigation that has already lasted 30 months despite this Court having twice expressed concern over its indefinite duration absent a determination that Grace is actually entitled to the injunction. Now that the Bankruptcy Court has twice determined that it lacks jurisdiction to enter the injunction, it is long past time for the stay to be terminated once and for all.

Furthermore, the stay pending appeal obtained by the State is improper because there is no appeal pending. The Denial Order is an interlocutory order. Grace has sought and the State has joined its request, but has not been granted, leave to appeal—nor should it be.[4] In the absence of an appeal, there can be no stay pending appeal.

In support of this Motion, the Libby Claimants state:

## Background

The suffering of the people of Libby, Montana due to asbestos disease from exposure to Libby asbestos originating from the vermiculite mine and mill operated by Grace is well chronicled.[5] Through the Center for Asbestos Related Disease (the "CARD Clinic") in Libby, Montana, Dr. Alan C. Whitehouse and Dr. C. Brad Black have diagnosed at least 1,500 patients with asbestos related disease due to exposure to Libby asbestos in or near Lincoln County, Montana.[6] The CARD Clinic regularly treats about 1,200 of these 1,500 patients.[7] Since the CARD Clinic opened in 2000, more than 65 patients have died of cancer or respiratory failure

---

[4] The standard for granting an interlocutory appeal has not been met. See Opposition of Libby Claimants to Motion of W.R. Grace for Leave to Appeal Order Denying Injunction dated April 21, 2008 [Adversary Proc. D.I. 505].
[5] [Adversary Proc. D.I. 417, p.3.]
[6] [Id., Ex. C, ¶2.]
[7] [Id.]

2

related to asbestos disease.[8]  Most of those deaths have occurred since Grace filed its Chapter 11 case on April 2, 2001.[9]  Currently the CARD Clinic has over 80 patients on oxygen, and over 100 patients are severely limited, with short life expectancy.[10]  Most of these require 24 hour care.[11]

But the devastating disease in Libby, said to be 10 times more deadly than more common types of asbestosis, was not caused by Grace alone.  The State also engaged in tortious conduct injuring the people of Libby.  In Orr v. State of Montana, 106 P.3d 100 (Mont. 2004), the Montana Supreme Court held that under the state's Industrial Hygiene Act, "the State had statutory duties to the public and persons confronted with workplace hazards," Orr, 106 P.3d at 110, ¶ 40, and that "the State had discretion to determine what information to gather, but once that information was gathered, it had no discretion about whether to distribute it." Id. at 108, ¶ 25.  The court noted: "[I]t appears that the record is bereft of any actions taken by the State to warn the miners or the Libby townspeople of their plight." Id. at 110, ¶ 37.

Libby Claimants continue to suffer and die, without medical coverage for end stage care.  The Grace Libby Medical Program does not pay for nursing home care or 24-hour home care for patients with asbestos disease.  The affidavits of those who have performed the 24-hour home care, and of those who are currently performing it, show enormous suffering and terrible stress.[12]  For the Libby Claimants, especially those on oxygen, these services are critical as they are unable to care for themselves, leaving exhausted family members to bear the burden, with no help from Grace.

---

[8] [Id., ¶7.]
[9] Since the Chapter 11 filing, 41 clients of the firm McGarvey, Heberling, Sullivan & McGarvey in Kalispell, Montana have died of asbestos related disease.  [Id., Ex. D, ¶4.]
[10] [Id., Ex. C, ¶7.]
[11] [Id.]
[12] [Adversary Proc. D.I. 363, Ex. A-N.]

3

Grace has not only failed to provide the care that the Libby Claimants need and deserve, but has sought to prevent them from obtaining compensation in the tort system from the State and other recognized wrongdoers with no special relationship to Grace or its Chapter 11 case. Grace's attempt to extend to the State the preliminary injunction that Grace obtained early on its bankruptcy case to enjoin asbestos-related claims against insurers and other affiliates of Grace (the "Preliminary Injunction") goes far beyond the original purpose of the Preliminary Injunction, and far beyond the typical case where the debtor in a mass tort case seeks to enjoin suits against its insurers and affiliates to protect the bankruptcy estate.    Rather, in direct contradiction to the consistent teachings of the Third Circuit—most recently in In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)—Grace seeks to shield a non-debtor party from on-going litigation that cannot, as a matter of law, have a direct impact on Grace's estate.  In Combustion Engineering and two earlier decisions, the Third Circuit concluded that the bankruptcy court did not have jurisdiction to enjoin litigation among non-debtor parties merely because the defendant claimed a right of contribution or indemnity against the debtor – as the State does here.  The Bankruptcy Court properly recognized this established, controlling Third Circuit precedent in the Denial Order, ruling that "related-to subject matter jurisdiction does not exist for the purpose of expanding the injunction to include the [State Litigation]."[13]  And for the same reason, the Bankruptcy Court ruled that Grace and the State are *not* likely to succeed on appeal.[14]  Yet the Bankruptcy Court granted the stay pending appeal anyway.

---

[13]    Order dated April 16, 2007 [Adv. Pro. D.I. 419, 420].    Reported as W. R. Grace & Co. v. Chakarian (In re W. R. Grace & Co.), 366 B.R. 295, 302 (Bankr. D. Del. 2007).

[14] Stay Order at p. 2.

4

## Procedural History

On April 2, 2001 (the "Petition Date"), Grace filed petitions for relief under Chapter 11 of the Code.  On the same date, Grace filed an adversary complaint seeking, *inter alia*, the Preliminary Injunction.[15]  The Bankruptcy Court entered a temporary restraining order on April 2, 2001,[16] and on May 3, 2001 entered the Preliminary Injunction sought by Grace.[17]  On January 22, 2002, the Bankruptcy Court entered an order modifying the Preliminary Injunction to expand its scope to include certain additional affiliates of Grace.[18]

Prior to and after the Petition Date, the Libby Claimants commenced the State Litigation in the Montana District Courts for Lincoln, Cascade, and Lewis and Clark Counties against the State.[19]  The State Litigation proceeded uninterrupted by and without involvement of Grace until August 22, 2005, more than four years after Grace entered Chapter 11.[20]  On that day, Grace filed a motion[21] (the "State Injunction Motion") to expand the Preliminary Injunction to include the State Litigation.  The Libby Claimants filed an opposition to the State Injunction Motion[22] joined in by the PI Committee representing all asbestos personal injury claimants.[23]

On December 19, 2005, the Bankruptcy Court held a hearing on the State Injunction Motion.[24]  At the conclusion of the hearing, the Bankruptcy Court stated that it would take the

---

[15] [Adversary Proc. D.I.  359, ¶ 3.]
[16] [Id.]
[17] [Id.]
[18] [Adversary Proc. D.I. 87.]
[19] [Adversary Proc. D.I. 363, p. 5.]
[20] [Id.]
[21] Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 359.]
[22] Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 363.]
[23] Joinder of the Official Committee of Asbestos Personal Injury Claimants in the Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 365.] Grace filed a reply to both oppositions. Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 367.]
[24] [Bankr. Case D.I. 11473.]

State Injunction Motion under advisement.[25]  In response, the State asked the Bankruptcy Court to "stay the Libby Claimants from taking discovery or proceeding any further with the [State Litigation] until the [Bankruptcy] Court renders a decision on [the State Injunction Motion]."[26] The Bankruptcy Court indicated that it considered the extension of the stay appropriate and sought the Libby Claimants' agreement to such a stay.[27]  Asked by the Libby Claimants for an indication of the time period within which the Bankruptcy Court would render a decision, the Bankruptcy Court suggested it could be more than a year.[28]  Having previously entered into a voluntary stay in a separate matter wherein the Bankruptcy Court took ten months to render its decision,[29] the Libby Claimants informed the Bankruptcy Court that they would not assent to the stay.[30]  The Bankruptcy Court then orally entered a stay,[31] followed one month later by entry of a written order on January 17, 2006.[32]

The Libby Claimants appealed to this Court.[33]  The Libby Claimants asserted that the Bankruptcy Court's order was reviewable as a preliminary injunction, regardless of whether it was denominated as such by the Bankruptcy Court, because it provided for a stay continuing beyond the time permissible under Fed. R. Civ. P. 65(b).[34]  On May 10, 2006, after briefing and oral argument, this Court determined:

> The Court believes, generally, that the conditions necessary for the Court
> to entertain this interlocutory appeal are not present in this case.  However,
> the Court thinks the indefinite nature of the Bankruptcy Court's stay order

---

[25] [Id., p. 199:21.]
[26] [Id., pp. 200:21-25 and 201:1-5.]
[27] [Id., p. 201:7-11.]
[28] [Id., p. 202:15-25.]
[29] In a similar contested proceeding concerning Grace's attempt to further expand the Preliminary Injunction to cover Montana Vermiculite Company, the Bankruptcy Court asked the Libby Claimants if they would continue a voluntary stay pending its ruling on Grace's motion.  The Libby Claimants acceded to the Bankruptcy Court's request.  The decision was not rendered until 10 months later. [Adversary Proc. D.I. 298 and 299.]
[30] [Bankr. Case D.I. 11473, p.203:1-7.]
[31] [Id., p. 203:8.]
[32] [Adversary Proc. D.I. 376.]
[33] [Adversary Proc. D.I. 373, 378.]
[34] Brief of Libby Claimants. [Dist. Crt. Case No. 06-26, D.I. 5.]

> may present an exceptional circumstance. Therefore, the Court exercises jurisdiction under 28 U.S.C. § 158(a)(3) for the limited purpose of addressing the indefiniteness of the Bankruptcy Court's stay order. A time frame in which the Bankruptcy Court will render its decision on the Debtors' motion to expand the preliminary injunction to include actions against the State of Montana would be appropriate in light of the indefinite stay order presently in place. However, the Bankruptcy Court is, in the first instance, best suited to determine that time frame.

W.R. Grace v. Libby Claimants (In re W.R. Grace & Co.), 2006 WL 1313190, *1 (D. Del. 2006).[35] Accordingly, this Court remanded the matter to the Bankruptcy Court so that it could "advise the parties of a specific date on or before which it expects to render its decision on Debtors' motion to expand the preliminary injunction." Id.

The Bankruptcy Court ignored this Court's directive and never provided the parties with a date upon which it would decide the State Injunction Motion. More than 11 months after this Court's ruling (and 16 months from the entry of the initial stay order), the Bankruptcy Court ruled in the Denial Order on April 16, 2007, that "related-to subject matter jurisdiction does not exist for the purpose of expanding the injunction to include the [State Litigation]."

In response to the Denial Order, on April 26, 2007, Grace[36] and the State[37] filed motions to reconsider (collectively, the "Motions for Reconsideration"). On May 14, 2007, the Libby Claimants[38] and the PI Committee[39] filed oppositions to the Motions for Reconsideration. On May 21, 2007, the Bankruptcy Court heard oral argument on the Motions for Reconsideration,

---

[35] [Dist. Crt. Case No. 06-26, D.I. 26.]

[36] Debtors' Motion to Alter and Amend the Court's Order Denying Its Request to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 427.]

[37] State of Montana's Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction Entered on April 16, 2007. [Adversary Proc. D.I. 426.]

[38] Libby Claimants' Objection to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 442.]

[39] Opposition of the Official Committee of Asbestos Personal Injury Claimants to the Debtors' and the State of Montana's Motions to Reconsider the Court's Decision Denying a Stay of Litigation Against Montana. [Adversary Proc. D.I. 443.]

along with yet another motion (the "BNSF Injunction Motion") by Grace to expand the Preliminary Injunction to include the Libby Claimants' actions against BNSF Railway Company[40] ("BNSF"). Upon hearing all of the arguments, the Bankruptcy Court announced that it would take the matters under advisement and orally entered yet another temporary stay of the State Litigation pending its rulings.[41]

On July 23, 2007, at a subsequent hearing on issuance of the temporary stay, the Bankruptcy Court responded to the Libby Claimants' argument that it lacked jurisdiction to enter such a stay: "I think it's still appropriate to keep in place the preliminary injunction. I will attempt to get an opinion out very promptly. I'm calling this a temporary stay."[42]  Pursuant to the Bankruptcy Court's directive, Grace prepared a form of order to reflect the Bankruptcy Court's rulings, which was submitted to the Bankruptcy Court under a certification of counsel on August 6, 2007.[43]  On August 29, 2007, the Bankruptcy Court entered the order staying the Libby Claimants' actions against the State and BNSF, pending the Bankruptcy Court's rulings on the Motions for Reconsideration and the BNSF Injunction Motion.[44]

On August 30, 2007, the Libby Claimants appealed that second stay order to this Court.[45] On January 22, 2008, this Court entered a Memorandum and Order granting Grace's and the State's Motions to Dismiss the appeal in order to give the Bankruptcy Court additional time to decide the motions but went on to order that

---

[40] Along with its predecessors, the Great Northern Railway Company, the Burlington Northern Railroad Company, and The Burlington Northern & Santa Fe Railway Company.
[41] [Bankr. Case D.I. 15948, p. 94:1.]
[42] [Id. at p. 97-98:24-25, 1.]
[43] [Adversary Proc. D.I. 465.]
[44] [Adversary Proc. D.I. 466.]
[45] [Adversary Proc. D.I. 467.]

> If the Bankruptcy Court has not made a decision on the BNSF Injunction Motion and Debtors' Motion for Reconsideration by the 15th of April, 2008, the parties may refile. Upon the event of refiling, the Court will consider the issue on the underlying merits.

W.R. Grace v. Libby Claimants (In re W.R. Grace & Co.), 2008 WL 205310, *3 (D. Del. 2008).[46]

On March 31, 2008, the Bankruptcy Court denied the Motions for Reconsideration on the same ground as before: the Bankruptcy Court lacks subject matter jurisdiction over the State Litigation. On April 9, 2008, the State filed a motion for stay pending appeal (the "Stay Motion"), repeating the arguments it made in its motion for reconsideration.[47] Grace did not join the Stay Motion and did not file its own motion for a stay pending appeal. Lacking Grace's standing to invoke the specter of harm to the bankruptcy estate, the State's motivation in this matter—to ward off as long as possible the day when it must stand trial in its own courts for breaching its duties to the people of Libby—was laid bare. Although the Third Circuit has been crystal clear that the standard for subject matter jurisdiction concerns the effect of third-party litigation on the bankruptcy estate, not on the litigation defendant, the Bankruptcy Court ruled that although the State "is not likely to prevail on the merits of appeal," the Stay was necessary because of the potential harm *to the State* if it were compelled to defend the State Litigation "without benefit of the Debtors as a party and without being able to obtain discovery from the Debtors because of the automatic stay." Stay Order at p. 3. In so ruling, the Bankruptcy Court further continued the 30-month stay of the State Litigation with seemingly no regard to the continuing harm to the Libby Claimants and despite having ruled twice that it lacked jurisdiction to do so.

---

[46] [Dist. Crt. Case No. 07-609, D.I. 15.]

[47] State of Montana's Motion for Stay Pending Appeal in the District Court of this Court's Order Denying Montana's Motion for Reconsideration [Docket No. 486].

**ARGUMENT**

The Stay should be immediately dissolved because the standards for a stay pending appeal have not been met; specifically, the Bankruptcy Court determined that the State "is not likely to prevail on the merits of appeal," and improperly concluded that harm to the State from not granting a stay outweighed the continuing harm to sick and dying Libby Claimants from being barred from pursuing the State Litigation. Furthermore, the Stay is improper because there is no appeal pending at this time.

**I.    The Bankruptcy Court Failed to Correctly Apply the Standard for Issuance of a Stay Pending Appeal**

Fed. R. Bankr. P. 8005 states that a stay pending appeal should be granted only to "protect the rights of all parties in interest."  A motion for stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant. In re Lickman, 301 B.R. 739 (Bankr. M.D. Fla. 2003).  The Court of Appeals for the Third Circuit has held that the standard for a stay pending appeal is substantially the same as that for preliminary injunctive relief. See Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991).  Thus, courts in the Third Circuit and elsewhere regularly apply the traditional four-part test for an injunction when considering whether to grant or deny a motion for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

10

Id.; see also The Pitt News v. Fisher, 215 F.3d 354, 365 (3d Cir. 2000)(courts may issue preliminary injunctions only if movant demonstrates that all four factors favor granting the injunction). In this case, the State cannot meet any of the factors and, in any event, the Stay certainly does not meet the requirement of Fed. R. Bankr. P. 8005 that the rights of the Libby Claimants be protected.

### A.    No Likelihood of Success on Appeal

In the Stay Order, the Bankruptcy Court concludes that the State is "unlikely to prevail on the merits on appeal," because the Denial Order is grounded in controlling Third Circuit precedent "expressed in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), In re Federal-Mogul Global, Inc., 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom. Daimler Chrysler Corp. v. Official Comm. of Asbestos Claimants, 537 U.S. 1148 (2003), and In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)." Stay Order at p. 2.

The Bankruptcy Court's holding in the Denial Order that it lacked subject matter jurisdiction to enjoin the State Litigation based on Pacor, Federal-Mogul, and Combustion Engineering is unassailable. Pacor is the seminal case that established the test for determining whether litigation between third parties meets the bankruptcy jurisdictional test, under 28 U.S.C. § 1334, of being "related to" a bankruptcy case:

> [T]he test for determining whether a civil proceeding is related to the bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankruptcy estate.

11

Pacor, 743 F.2d at 994.  Applying this standard, the Third Circuit held that related-to jurisdiction

did *not* extend to personal injury litigation between non-debtor parties even though the non-

debtor defendant claimed a right of indemnity or contribution from the debtor:

> At best, [the personal injury lawsuit] is a mere precursor to the potential
> third party claim for indemnification by [non-debtor] Pacor against
> [debtor] Manville.  Yet the outcome of the [the personal injury lawsuit]
> would in no way bind Manville, in that it could not determine any rights,
> liabilities, or course of action of the debtor. Since Manville is not a party
> to the [the personal injury lawsuit], it could not be bound by res judicata or
> collateral estoppel.

Id. at 995.  Accordingly, the Third Circuit concluded:

> there would be **no automatic creation of liability** against Manville on
> account of a judgment against Pacor.  Pacor is not a contractual guarantor
> of Manville, nor has Manville agreed to indemnify Pacor, and thus a
> judgment in the [the personal injury lawsuit] could not give rise to any
> automatic liability on the part of the estate.    All issues regarding
> Manville's possible liability would be resolved in the subsequent third
> party impleader action . . . .  There would therefore be no effect on
> administration of the estate, until such time as Pacor may choose to pursue
> its third party claim.

Id. at 995-96 (emphasis added).  Since the Chapter 11 debtor could not be bound **automatically**

by the litigation, the litigation could not affect the estate and thus was not related to (for

jurisdictional purposes, under 28 U.S.C. § 1334) the debtor's Chapter 11 case.  Id.

     Pacor has been expressly approved by the United States Supreme Court.  Celotex Corp.

v. Edwards, 514 U.S. 300, 308 (1995).  And the Third Circuit has confirmed and amplified Pacor

in two subsequent high-profile decisions:    Federal-Mogul and Combustion Engineering.

Federal-Mogul additionally established that under the Pacor test, even an asserted right of

contractual indemnification against the debtor (in contrast with the common-law indemnification

sought in Pacor) was insufficient to confer related-to jurisdiction where defenses to

indemnification could be asserted by the debtor; in that situation, as in Pacor, liability of the

12

debtor would not automatically follow from entry of judgment against the party claiming indemnification. Pacor, 743 F.2d at 994-96. And Combustion Engineering—which involved an attempt to enjoin litigation among third parties rather than, as in Pacor and Federal-Mogul—established that a bankruptcy must have jurisdiction over the third-party litigation, under the Pacor test, in order to enjoin such litigation. In sum, these three major decisions of the Third Circuit establish a clear test for whether the Bankruptcy Court has jurisdiction to enjoin the State Litigation.[48]

The Bankruptcy Court correctly held that the State Litigation does not meet this clear standard for related-to jurisdiction. The State Litigation is going forward against the State of Montana, not Grace. Any claims that the State might have against Grace have not yet accrued and would require another lawsuit before they could have an impact on Grace's bankruptcy proceeding. In the contested matter relating to allowance of the State's claim, Grace will not be bound by any determination or order in the State Litigation.[49] In sum, as the Bankruptcy Court stated in the Denial Order, the position of the claims in the State Litigation

> is nearly identical to the claims in Pacor and Federal-Mogul. Before any effect on Debtors can be realized, the State of Montana must first be found liable in state court and then pursue its claim for indemnification in bankruptcy court.

---

[48] Although not pertinent to the State Litigation, in which the State claims a right of indemnity under common law rather than a contract, the Third Circuit has left unclear the issue of whether an indemnification agreement *to which the debtor asserts no defense* would be sufficient to establish related-to jurisdiction. On the one hand, the Court indicated in *dictum* that an uncontested contractual indemnity from the debtor held by the defendant in non-debtor litigation could establish related-to jurisdiction. Pacor, 743 F.2d at 995. On the other hand, the logic and rationale of Pacor, Federal-Mogul and Combustion Engineering support the opposite result by establishing that a judgment against the defendant in the non-debtor litigation would not automatically result in liability of the bankruptcy estate since, as expressly stated by the Third Circuit, the debtor—protected by the automatic stay from any adverse effect of the non-bankruptcy litigation—would be free to defend the non-debtor defendant's indemnity claim on any basis, including issues already determined as between the non-debtor parties. Pacor, 743 F.2d at 995; Federal-Mogul, 282 B.R. at 309.

[49] Apart from the federal principles discussed above, Montana law prohibits the State from litigating or establishing a factual basis (*i.e.*, percentage of comparative fault) against Grace during the course of the State Litigation. See generally Mont. Code Ann. § 27-1-703 (1997); Plumb v. Fourth Judicial Dist. Court, 927 P.2d 1011 (Mont. 1996) (entry of findings against a non-party violates substantive due process).

13

Denial Order at p. 9. Neither in the Stay Motion nor in the other papers filed in this matter has the State (or Grace for that matter) offered a persuasive argument to distinguish the instant matter from Pacor, Federal-Mogul, and Combustion Engineering. Indeed, no such distinction exists. The Bankruptcy Court correctly decided the Denial Order and correctly concluded, in considering the Stay Motion, that the State is "unlikely to prevail" in its appeal. Accordingly, the Stay should not have been issued and this Court should dissolve it immediately.

### B.    Purported Harm to the State

Despite having recognized that Pacor, Federal-Mogul, and Combustion Engineering thwarted the State's ability to meet the first element of the test for a stay pending appeal, in evaluating the second factor, the Bankruptcy Court astoundingly ignores the lesson for which Pacor is universally cited: the standard for subject matter jurisdiction concerns the effect of third-party litigation *on the bankruptcy estate*, not on the litigation defendant. See Pacor, 743 F.2d at 994-96. In balancing the harms, the Bankruptcy Court found that the Stay is appropriate in light of the potential harm *to the State* if it were compelled to defend the State Litigation "without benefit of the Debtors as a party and without being able to obtain discovery from the Debtors because of the automatic stay." Stay Order at p. 3. These concerns are completely irrelevant under Pacor.

Even if permitted to consider potential harm to the State, the concerns expressed by the Bankruptcy Court are unfounded. True, as the Bankruptcy Court noted, absent the Stay, the State would need to proceed with the State Litigation without Grace as a party. But that is the situation faced by every defendant when a codefendant files for bankruptcy. Since the automatic stay protects only the debtor from needing to defend the lawsuit, the litigation proceeds against

the non-debtor parties.[50] In re Desa Holdings Corp., 353 B.R. 419 (Bankr. D. Del. 2006) ("It is a tenet of bankruptcy law that the automatic stay provisions of Section 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against non-debtors.") This happens every day of the week. If the State claims to be harmed by this circumstance, then even putting aside the obvious point that Pacor and its progeny do not support the exercise of jurisdiction on that basis, a stay issued by the Bankruptcy Court is most certainly not the answer. Any such stay would need to be permanent, given that Grace will never be a party to the State Litigation since the temporary protection afforded by the automatic stay will be supplanted by the permanent protection of a discharge from liability once Grace confirms its Chapter 11 plan. 11 U.S.C. § 1141(d). But any stay of the State Litigation would expire upon confirmation, because at that point injunctions protecting third parties are governed exclusively by Section 524(g), which indisputably does not permit an injunction against the State Litigation. See 11 U.S.C. § 524(g)(4)(ii), and Combustion Engineering, 391 F.3d at 234 (in an asbestos case, no injunction protecting third parties may issue except as expressly permitted by Section 524(g)). In sum, staying the State Litigation does not address whatever alleged harm the State would bear from Grace's absence as a codefendant, but merely delays the inevitable day when the State Litigation will proceed on that basis.

With respect to the State's ability to obtain discovery from Grace, while the automatic stay of Section 362(a) contains an extensive list of actions from which the bankruptcy estate is protected, discovery in litigation among non-debtors is not among them. Chapter 11 debtors routinely respond to such discovery. See 28 U.S.C. § 959, which generally requires a debtor in

---

[50] Fed. R. Civ. P. 19(a), concerning required joinder of parties, by its terms does not require joinder that would result in depriving the court of jurisdiction. Once the Debtors filed for bankruptcy, they were no longer subject to the jurisdiction of the court in the State Litigation.

15

possession to conduct itself according to the same rules of the road as non-debtors.  The
Bankruptcy Court cited no authority for the proposition that the automatic stay protects Grace
from discovery in the State Litigation.

Nor does the record indicate that discovery will impose any meaningful burden on Grace.
There is no indication that testimony by current Grace personnel will be required.  This is not
surprising, since, as explained by the Supreme Court of Montana, the State Litigation concerns
inspections that were initially conducted more than 50 years ago.  Orr v. State of Montana, 106
P.3d 100, 103 (Mont. 2004).  Although the State may request production of documents from
Grace,[51] it is undisputed that the Grace documents relevant to the State Litigation are housed at a
repository in Boston, Massachusetts, set up to handle with ease all document requests against
Grace.  The documents are all on a database, and have in the past been made available for
litigation parties including the Libby Claimants.  If a keeper-of-records deposition is needed to
authenticate documents, it could not possibly distract any key personnel of Grace from the
reorganization effort.  Prior to Grace's filing the State Injunction Motion, the State Litigation
proceeded uninterrupted by and without involvement of Grace for more than four years.  There
was no harm then, and there is no harm now.

### C.    The Balancing of Harms Favors the Libby Claimants

Notwithstanding the Bankruptcy Court's indifference to the harm that years of delay in
pursuing the State Litigation causes to the Libby Claimants, that harm is severe.  As described
above, the Libby Claimants continue to suffer and die, without medical coverage for end stage

---

[51] The Libby Claimants' proof in the State Litigation regarding the Grace operations in Libby will be based upon exhibits and testimony obtained in pre-bankruptcy litigation with Grace. [Adversary proc. D.I. 363, Ex Q, ¶ 8.] The Libby Claimants will not be serving discovery requests upon Grace for any State Litigation. [Id.] Moreover, the State has already been provided with much of the discovery obtained by the Libby Claimants from Grace and the Grace repository. [Id. at ¶ 7.]

16

393.001-20298.doc

care. Even as the Libby Claimants suffer death by prolonged strangulation, the Grace Libby Medical Program does not pay for nursing home care or 24-hour home care for patients with asbestos disease. Lack of any 24-hour care for the severely ill Libby Claimants has caused enormous hardship for them and for the family members and other people who have assumed the burden of providing such care.[52] Although the Libby Claimants are barred by the automatic stay from seeking a remedy from Grace while it attempts to reorganize, fairness and equity require that they be permitted to obtain, through the tort system, compensation to cover end-stage care from wrongdoers like the State. Considerations of justice require permitting the Libby Claimants to pursue the State Litigation.

Contrary to the State's assertion in the Stay Motion, the recently announced settlement between Grace and the Asbestos Claimants' Committee has no bearing on this matter. As demonstrated above, Grace's Chapter 11 plan cannot have any effect on the State Litigation because the State is not an owner, manager, insurer or financier of Grace. (As more specifically delineated in Section 524(g)(4)(ii) of the Bankruptcy Code, these are the categories of third parties that may be affected by an injunction under a Chapter 11 plan in an asbestos case.) If it turns out that Grace's plan will have some kind of adverse impact on the State, the State has a completely satisfactory remedy: it can object to confirmation. The effect of a Chapter 11 plan on the State is not a factor that should be considered in the context of a motion for stay pending appeal in an adversary proceeding that has nothing to do with Grace's plan.

### D.    Public Interest

In the Stay Order the Bankruptcy Court finds that the public interest is served by staying the State Litigation because the "public fisc" (the State of Montana's, presumably) will be impacted if the Libby Claimants' suits are ultimately successful. This flies in the face of the

---

[52] [Adversary Proc. D.I. 363, Exs. A-N.]

17

decision of the Montana Supreme Court determining that the Libby Claimants stated a claim against the State because the State breached its duty "to warn the miners or the Libby townspeople of their plight." Orr, 106 P.3d at 110. In applying the injunction standard having reference to the public interest, the personal views of a bankruptcy judge concerning the fiscal affairs of the Montana state government cannot trump the reported decision of Montana's highest court permitting the State Litigation to proceed regardless of the inevitable cost to Montana's taxpayers if the Libby Claimants obtain judgment.

Furthermore, federal policy supports "the just, **speedy**, and inexpensive determination of every action." Fed. R. Civ. P. 1 (emphasis added). There is an important public interest in permitting injured persons to obtain the speediest possible recovery, especially when the plaintiff is likely to die if the litigation drags on. See Clinton v. Jones, 520 U.S. 681, 708 (1997) (potential death of a party is a factor in determining prejudice caused by a stay of litigation). There is no public interest in permitting the State of Montana, a non-debtor party, to hide behind the protections of the Bankruptcy Code.

At the end but perhaps as part of its discussion of the public interest, the Bankruptcy Court expressed concern that "record taint" may impact the Grace estate if the State Litigation were to proceed, adding:

> We recognize that the fact of record taint affecting the Debtors in the event the state court actions proceed gives rise to the thought that we should have issued the injunction in favor of the State of Montana rather than denying it. However, we are bound by Pacor as expressed in our most recent Memorandum Opinion on this issue.

Stay Order at pp. 4-5. Thus, the Bankruptcy Court itself supplied an essential reason why "record taint" is not a legitimate concern, namely, that in Pacor the Third Circuit held that not even the entry of judgment against a non-debtor party for injuries related to the debtor's asbestos,

18

let alone the creation of an evidentiary record concerning the debtor's asbestos in the trial leading to such judgment, affected the debtor's bankruptcy estate.[53]  If insufficient to establish "related to" jurisdiction, how can "record taint" be invoked as a matter of public interest requiring a stay pending appeal?

The Bankruptcy Court itself supplied another reason why the creation of yet another trial record involving Grace's asbestos should be a matter of indifference to Grace: "[The Libby Claimants'] claims against the Debtors . . . will be addressed in the Debtors' plan of reorganization."  Stay Order at p. 4.  From the outset of Grace's Chapter 11 case, it has been apparent that Grace would—in the same manner as other asbestos debtors—establish one or more trusts under Section 524(g) to provide payment on account of asbestos claims, including those of the Libby Claimants, and would receive a discharge of liability for such claims.  As the Bankruptcy Court observed, a term sheet among Grace, the Asbestos Claimants' Committee and certain other parties providing for exactly this approach, and fixing the amounts that Grace will transfer to the trust (which will be sufficient to pay only a small fraction of Grace's asbestos liability), was announced on April 7.  See id.  To be sure, many issues remain to be resolved before Grace emerges from Chapter 11, and the Bankruptcy Court has a record of overly optimistic predictions concerning how soon Grace will emerge.[54]  But there is no doubt that Grace will at some point emerge from Chapter 11 freed from liability to its asbestos creditors,

---

[53] Grace's argument throughout these proceedings that its own conduct is in large part at issue in the State Litigation does not distinguish this situation from Pacor and Federal-Mogul.  In Federal-Mogul, the debtor's conduct was squarely at issue because the debtor had manufactured the brake pads that were the subject of the third-party litigation.  Nevertheless, the bankruptcy court lacked jurisdiction over the target litigation.  Federal-Mogul, 282 B.R. 301.  In Pacor, too, the debtor's conduct was at issue in the third-party litigation, which concerned asbestos products manufactured by the debtor.  The debtors in Pacor and Federal-Mogul faced the same detriment about which Grace professes concern: in the litigation among non-debtor parties, witnesses might say things about the debtor without the debtor being present to cross-examine.

[54] "So, I for one can predict that between now and two years from now at least Grace is going to be not on my docket any longer in terms of plan confirmation."  [Bankr. Case D.I. 6266, Tr. of 8/23/04 hearing at p. 41:15-17.]

19

including the Libby Claimants.  So even if the creation of a trial record in litigation among parties other than Grace could in any way affect a future trial of the Libby Claimants against Grace, no such trial will ever take place because Grace's asbestos liabilities will be discharged under Chapter 11.

Finally, although even a well-founded concern about "record taint" cannot confer jurisdiction, Grace has failed to establish a valid basis for any such concerns in this case.  While in past Bankruptcy Court pleadings Grace points to a District Court decision in Johns-Manville noting that "[o]nce an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time," that observation is inapposite here.[55]  Whatever admissions Grace is concerned about have already been made.  The issue of Grace's conduct in Libby has been tried three times to verdict in Montana.[56]  In addition to the numerous documents, photographs and other exhibits that were submitted to the courts during those trials, the plaintiffs introduced the testimony of dozens of miners along with the very damaging testimony of Earl Lovick, the assistant manager of the Libby mine for nearly 30 years, and now deceased.[57]  The evidentiary record of Grace's misconduct in Libby already exists.  Indeed, the Montana Supreme Court has determined that the proof meets Montana's high standard for punitive damages, see Mont. Code Ann. § 27-1-221 (1997), and affirmed a jury's finding that Grace committed intentional, reckless and/or malicious conduct.  Finstad v. W.R. Grace & Co., 8 P.3d 778 (Mont. 2000).

In sum, the Bankruptcy Court failed to correctly apply the standard for the issuance of stay pending appeal.  The State is "unlikely" to succeed in its appeal, the balance of the harms

---

[55] [Adversary Proc. D.I. 359, ¶ 29, (citing Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 40 B.R. 219, 225 (S.D.N.Y. 1984)).]
[56] [Adversary Proc. D.I. 363, p.15.]
[57] [Id.]

clearly favors the Libby Claimants, and there is no public interest served by delaying the inevitable State Litigation. The Stay does not "protect the rights of all parties in interest" and should be dissolved immediately.

## II.    The Stay is Improper Because there is No Appeal Pending

The Denial Order is an interlocutory order. Grace has sought and the State has joined, but has not been granted, leave to appeal. As set forth more fully in the Opposition of Libby Claimants to Motion of W.R. Grace for Leave to Appeal Order Denying Injunction dated April 21, 2008,[58] Grace is unable to demonstrate an exceptional circumstance for an appeal of the interlocutory Denial Order, nor can it demonstrate all other requirements for granting leave to appeal under 28 U.S.C. § 158(a)(3) have been met. In the absence of an appeal, there can be no stay pending appeal. In re Muecke, 2003 WL 22143257, *2 (W.D. Tex. 2003); In re James River Assocs., 148 B.R. 790, 798 (E.D. Va. 1992). The Stay is improper.

## III.    Requesting the Bankruptcy Court to Terminate the Stay Would be Futile

Pursuant to Fed. R. Bankr. P. 8005, the Libby Claimants hereby submit that a request to the Bankruptcy Court to terminate the Stay would be futile. For the reasons stated above, the Libby Claimants assert that the Bankruptcy Court was wrong in issuing the Stay. The Libby Claimants have already made these arguments to the Bankruptcy Court and believe a motion to reconsider would be an ineffective use of time and resources. In the interest of an expedited termination of the Stay, the Libby Claimants have filed the Motion with this Court.

---

[58] [Adversary Proc. D.I. 505.]

393.001-20298.doc

## CONCLUSION

For the foregoing reasons, the Motion should be granted.  The Stay should be dissolved

forthwith.

Dated: May 2, 2008
      Wilmington, Delaware

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
      mumford@lrclaw.com

- and -

Daniel C. Cohn
Christopher M. Candon
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2505
Facsimile:  (617) 951-0679

*Counsel for the Libby Claimants*

393.001-20298.doc

# EXHIBIT A

(STAY ORDER)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE

W.R. Grace & Co., Inc., *et al.*                    Bankruptcy No. 01-1139
    Debtors                                         Chapter 11

W.R. Grace & Co., Inc., *et al.*
    Plaintiffs
v.                                                  Adversary No. 01-771
Margaret Chakarian and
John Does 1-1000 *et al.*
    Defendants                                      **Related to Document. No. 486,
                                                    State of Montana's Motion for
                                                    Stay Pending Appeal in the
                                                    District Court of this Court's
                                                    Order Denying Montana's Motion
                                                    for Reconsideration**

### MEMORANDUM ORDER GRANTING MOTION FOR STAY PENDING APPEAL

The issue before court is whether to grant a stay pending appeal under Fed.R.Bankr.P.

8005. The underlying state court action has been stayed for approximately 30 months. The

argument at the hearing of April 21, 2008, focused on whether this court has jurisdiction to

entertain the motion for stay because of our March 27, 2008, Order at Adversary Doc. No. 484

that we had no jurisdiction to issue an injunction in favor of the State of Montana under 11

U.S.C. §105. The issue of this court's jurisdiction with respect to the §105 injunction is the basis

of the order that is subject to the appeal. We find that we have jurisdiction to entertain the

Fed.R.Bankr.P. 8005 motion for stay pending appeal. In addition, we have jurisdiction over the

parties in interest who have appeared here seeking the §105 relief.

Rule 8005 requires that motions to stay pending appeal be presented to the bankruptcy

1

Adv.
DKT. NO. _58_
DT. FILED _4/22/08_

judge in the first instance. Rule 8005 permits the bankruptcy judge to make such appropriate rulings as "will protect the rights of all parties in interest."

In our Memorandum Opinion of March 27, 2008, we found that a §105 injunction in favor of Montana could not issue for the reasons expressed in two opinions we issued on the subject, *see* Adversary Doc. Nos. 419 and 483,[1] and, although the standards for issuance of a stay pending appeal under Rule 8005 are similar to those for issuance of an injunction, the focus of a stay pending appeal is different. While a §105 injunction is based on the underlying merits of the action, the Rule 8005 stay is centered on staying the effect of this court's order denying the injunction, not on the merits of the underlying action. The Rule also is aimed at maintaining the status quo pending an appeal so that the rights of all parties in interest are protected. In order to obtain a stay pending appeal the movant, here the State of Montana, must (1) make a strong showing of likelihood of success on the merits in the appeal, (2) that it will suffer irreparable harm absent a stay, (3) that issuance of the stay will not substantially injure other parties to the action and (4) that the stay is in the public interest. *In re Finova Group, Inc.*, 2007 WL 3238764 (D. Del., Oct. 31, 2007). The bankruptcy court is required to balance all of those factors. *Morgan v. Polaroid Corporation*, 2004 WL 253477 (D. Del., Feb. 9, 2004).

Here, we find that, based on the views of the Court of Appeals for the Third Circuit as expressed in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002), *cert. denied sub nom. DaimlerChrysler v. Official Committee of Asbestos Claimants*, 537 U.S. 1148 (2003), and *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004), the State of Montana is not likely to prevail on the merits on appeal.

---

[1]The orders corresponding to those Memorandum Opinions are at Doc. Nos. 420 and 484.

2

However, the harm to the parties that will result in the event that an appellate court determines that the injunction should issue will be so severe if a stay is not issued that Montana's likelihood of success on the merits is not the predominant factor to be considered under the unique circumstances presented.

If an appellate court determines that our conclusions in the March 27, 2008, Memorandum Opinion and Order are incorrect and, therefore, the injunction should issue in Montana's favor, absent a stay pending appeal Montana will be required to defend actions that it otherwise would not have been required to defend at this time. Furthermore, if the actions proceed against Montana, the State would be forced to defend without benefit of Debtors as a party and without being able to obtain discovery from the Debtors because of the automatic stay. Conversely, the harm which the Libby Claimants may suffer is not substantial because, although they may have independent claims against the State, the basis of the Libby Claimants' primary alleged wrong has been and continues to be focused on Debtors and Debtors' operations which generated asbestos dust in the Libby, Montana, area and led to the alleged personal injuries and property damages for which Libby Claimants seek redress.

We note that only statutory action direct claims against the State for, in essence alleged violation of its independent duty to warn, and not claims that also implicate Debtors such as aiding and abetting claims, may go forward at this time. All claims against the Debtors, or which implicate them or their businesses, products, property, etc., are stayed pursuant to §362. Any claims that implicate the Debtors or their businesses, products, property, etc., are clearly subject to §362, must be addressed in the plan, and may be channeled to a trust under §524(g) or otherwise addressed.

3

Furthermore, the Libby Claimants are asbestos creditors and are subject to the automatic stay of §362 as well as to the existing §105 injunctions issued in favor of other parties against which the Libby Claimants have attempted to bring actions throughout the pendency of this case. Their claims against the Debtors, the alleged source of asserted Libby ills, will be addressed in the Debtors' plan of reorganization with respect to which, we note, significant progress has been made recently as announced in court on April 7.[2] Another short delay pending appeal will not cause substantial or untoward harm until the merits of the appeal are determined.

We also find that issuance of a stay pending appeal will not harm the public interest. In fact, not issuing the stay will harm the public interest because permitting the suit to go forward is an economic cost to be borne by its citizens and, if Montana suffers an adverse judgment, its public fisc will be affected.

Furthermore, although the parties have represented to the court that by statute there can be no collateral estoppel effect against the Debtors through pursuit of the Montana state court actions, the reality is that there will be "record taint" in that witnesses will be called to testify. The impact could well adversely impact the estate inasmuch as Debtors' products and conduct will of necessity be put at issue in the state court actions.

We recognize that the fact of record taint affecting the Debtors in the event the state court actions proceed gives rise to the thought that we should have issued the injunction in favor of the State of Montana rather than denying it. However, we are bound by *Pacor* as expressed in our

---

[2]The State of Montana offered to use a period of a stay pending appeal as an opportunity to try to settle this dispute. The several months that this appeal could pend will provide an opportunity for those discussions. The court encourages the State and the Libby Claimants to engage in that endeavor.

4

most recent Memorandum Opinion on this issue. In addition, Debtors may solve their own

liability issues, including contingent liabilities to the State of Montana, if any, through a plan .

For the foregoing reasons, it is **ORDERED** that the State of Montana's motion for stay

pending appeal is **GRANTED**.

It is **FURTHER ORDERED** that counsel for the State of Montana shall immediately

serve a copy of this Memorandum Order on all parties in interest who do not receive electronic

notice and shall file a certificate of service forthwith.

_Judith K. Fitzgerald_    4/22/08

Judith K. Fitzgerald
United States Bankruptcy Judge

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: W.R. Grace & Co., *et al.*

| | |
|---|---|
| W.R. Grace & Co., *et al.*, and<br>The State of Montana,<br><br>           Appellants,<br><br>    v.<br><br>Libby Claimants,<br><br>           Appellee. | Civil Action No. 08-246 (RLB)<br><br>Bankruptcy Case No. 01-1139<br>Adversary Case No. 01-771<br>Appeal No. 08-19 |

### AFFIDAVIT OF SERVICE

STATE OF DELAWARE   )
                      ) SS
NEW CASTLE COUNTY  )

      Cathy A. Adams, being duly sworn according to law, deposes and says that she is employed by the law firm of Landis Rath & Cobb LLP, attorneys for the Libby Claimants in the above-referenced cases, and on the 2nd day of May, 2008, she caused a copy of the following:

### LIBBY CLAIMANTS' EMERGENCY MOTION TO DISSOLVE STAY PENDING APPEAL

to be served upon the parties on the attached list via first class mail or in the manner as indicated.

*Cathy A. Adams*
Cathy A. Adams

      SWORN TO AND SUBSCRIBED before me this 2nd day of May, 2008.

*Linda M. Rogers*
Notary Public

LINDA M. ROGERS
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires June 20, 2011

393.001-20247.DOC

**W.R. Grace & Co.,** *et al.* **v. Margaret Chakarian,** *et al.,*
**and John Does 1-1000**
**Adv. Pro. No. 01-771**

**District Court 1:08-cv-246**
**Service List**

Mark Shelnitz
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
(Debtors and Debtors in Possession)

David M. Bernick, P.C.
Janet S. Baer, Esquire
Lori Sinanyan, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
(Counsel to W.R. Grace & Co., *et al.*)

**HAND DELIVERY**
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
(Counsel to Debtors and Debtors in Possession)

Lewis Kruger, Esquire
Kenneth Pasquale, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
(Counsel to Official Committee of Unsecured
Creditors)

**HAND DELIVERY**
Michael R. Lastowski, Esquire
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
(Counsel to Official Committee of Unsecured Creditors)

**HAND DELIVERY**
Michael B. Joseph, Esquire
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

Scott L. Baena, Esquire
Bilzin Sumberg Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

**HAND DELIVERY**
Marla Rosoff Eskin, Esquire
Mark T. Hurford, Esquire
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19801
(Counsel to the Official Committee of Asbestos
Personal Injury Claimants)

Peter Van N. Lockwood, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
(Counsel to the Official Committee of Asbestos
Personal Injury Claimants)

Elihu Inselbuch, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
(Counsel to the Official Committee of Asbestos
Personal Injury Claimants)

**HAND DELIVERY**
Frank J. Perch, Esquire
Office of the United States Trustee
844 King Street
Suite 2311
Wilmington, DE 19801
(United States Trustee)

**HAND DELIVERY**
Teresa K.D. Currier, Esquire
Buchanan Ingersoll & Rooney PC
1000 West Street, Suite 1410
Wilmington, DE 19801
(Counsel to Equity Committee)

Philip Bentley, Esquire
Thomas M. Mayer, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(Counsel to Equity Committee)

John C. Phillips, Jr., Esquire
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
(Counsel to David T. Austern, Future Claimants'
Representative)

Richard H. Wyron, Esquire
Orrick, Herrington & Sutcliffe, LLP
3050 K Street, NW
Suite 300
Washington, DC 20007
(Counsel to David T. Austern, Future Claimants'
Representative)

**HAND DELIVERY**
Edward B. Rosenthal, Esquire
Rosenthal, Monhait, & Goddess, P.A.
919 Market Street
Mellon Bank Center, Suite 1401
Wilmington, DE 19801
(Counsel to Continental Casualty Company)

Brian H. Mukherjee, Esquire
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(Counsel to CNA Financial Corporation)

Elizabeth DeCristofaro, Esquire
Ford Marrin Esposito Witmeyer & Gleser, L.L.P.
Wall Street Plaza, 23rd Floor
New York, NY 10005-1875
(Counsel to Continental Casualty Company)

**HAND DELIVERY**
Ian Connor Bifferato, Esquire
Garvan F. McDaniel, Esquire
Chad J. Toms, Esquire
Bifferato Gentilotti LLC
800 North King Street, First Floor
Wilmington, DE 19801
(Counsel to Royal Indemnity Company)

Carl J. Pernicone, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
(Counsel to Royal Indemnity Company)

Daniel C. Cohn, Esquire
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA 02110
(Counsel to Libby Plaintiffs)


**HAND DELIVERY**
Evelyn J. Meltzer, Esquire
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
PO Box 1709
Wilmington, DE 19899-1709
(Counsel to BNSF Railway Company)

Edward C. Toole, Jr., Esquire
Anne Marie Aaronson, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(Counsel to BNSF Railway Company)


**HAND DELIVERY**
Mark J. Phillips, Esquire
Jeffrey C. Wisler, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(Counsel to Maryland Casualty Company)

Edward J. Longosz, II, Esquire
Laura G. Stover, Esquire
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, N.W., Suite 1200
Washington, DC 20006
(Counsel to Maryland Casualty Company)


**HAND DELIVERY**
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(Counsel to DIP Lender)

J. Douglas Bacon, Esquire
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(Counsel to DIP Lender)


David S. Rosenbloom, Esquire
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096
(Counsel to National Medical Care, Inc.)

**HAND DELIVERY**
David E. Wilks, Esquire
Buchanan Ingersoll PC
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE 19801
(Counsel to Gamma Holding, NV)

**HAND DELIVERY**
Kathleen M. Miller, Esquire
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue
Wilmington, DE  19801
(Counsel to the Allen Plaintiffs)

Gary Smolker
Alice Smolker
4720 Lincoln Blvd., Suite 280
Marina del Rey, CA  90292-6977

**HAND DELIVERY**
Steven K. Kortanek, Esquire
Klehr Harrison Harvey Branzburg & Ellers LLP
919 Market St., Suite 1000
Wilmington, DE  19801
(Counsel to Carol Gerard)

Brian Parker, Esquire
36 South Charles Street
Charles Center South
Suite 2200
Baltimore, MD  21201
(Counsel to Carol Gerard)

**HAND DELIVERY**
Thomas D. Walsh, Esquire
McCarter & English, LLP
919 Market St., Suite 1800
Wilmington, DE  19801
(Counsel to James and Julie Holland)

Michael S. Etkin, Esquire
Lowenstein Sandler P.C.
65 Livingston Avenue
Roseland, NJ  07068
(Counsel to Keri Evans)

David K. Foust, Esquire
3030 W. Grand Boulevard
10th Floor – Suite 200
Detroit, MI  48202
(Counsel to the State of Michigan, Department of
Corrections)

**HAND DELIVERY**
Francis A. Monaco, Jr., Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
(Counsel to the State of Montana)

**HAND DELIVERY**
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE  19899
(Counsel to The Chase Manhattan Bank)

**HAND DELIVERY**
Bernard G. Conaway, Esquire
Fox Rothschild LLP
919 Market Street, Suite 1300
Wilmington, DE  19801
(Counsel to the Lanier Law Firm Asbestos Claimants)

**HAND DELIVERY**
Daniel B. Butz, Esquire
Gregory T. Donilon, Esquire
William H. Sudell, Jr., Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(Counsel to The Scotts Co.)

Robert J. Sidman, Esquire
Tiffany Strelow Cobb, Esquire
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216
(Counsel to The Scotts Co.)

**HAND DELIVERY**
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite1200
Wilmington, DE 19801
(Counsel to ExxonMobile)

**HAND DELIVERY**
Ellen W. Slights
Assistant U.S. Attorney
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, DE 19801

Dale R. Cockrell, Esquire
Christensen, Moore, Cockrell, Cummings &
Axelberg, P.C.
P.O. Box 7370
Kalispell, MT 59904
(Counsel to the State of Montana)