## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:  W.R. Grace & Co., *et al.*

| | | |
|---|---|---|
| W.R. GRACE & CO., et al., | ) | 08-cv-00246 (RLB) |
| | ) | |
| Appellants. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LIBBY CLAIMANTS, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

| | | |
|---|---|---|
| STATE OF MONTANA, | ) | 08-MC-00091 (RLB) |
| | ) | |
| Appellants. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LIBBY CLAIMANTS, | ) | |
| | ) | |
| Appellees | ) | |

### STATE OF MONTANA'S OBJECTION TO THE  LIBBY CLAIMANT'S EMERGENCY MOTION TO DISSOLVE STAY PENDING APPEAL

Appellant State of Montana ("Montana") objects to the Libby Claimants' Emergency Motion to Dissolve Stay Pending Appeal ("Motion") relating to the Bankruptcy Court's Memorandum Order Granting Motion For Stay Pending Appeal entered April 22, 2008 ("Stay Pending Appeal Order") [D.I. 508][1].The decision rendered by the Bankruptcy Court to stay pending appeal was properly decided based upon the standards as set forth in Federal Bankruptcy Rule of Procedure 8005 and, therefore, should remain in place until the merits of the current appeal is decided by this Court.

---

[1] The Libby Claimants filed the Motion in the appeal filed by Debtors, 08-cv-00246 (RLB) and not the State of Montana's appeal, 08-mc-00091 (RLB).  Montana files this Objection to the Motion under both captions.

## BACKGROUND

1.    On April 2, 2001, the Debtors, including W.R. Grace & Co. and W.R. Grace & Co.-Conn., filed their petitions under Chapter 11 of the Bankruptcy Code.

2.    A group of plaintiffs from Libby, Montana ("the Libby Claimants") had alleged that Debtors were responsible for their asbestos-related injuries.  The Libby Claimants had also filed suit against various affiliated entities and third parties whose purported liability was derivative of the liability of Debtors.  On May 3, 2001, the Bankruptcy Court entered the preliminary injunction at issue, barring the continued prosecution of those latter actions.  [D.I. 32]

3.    On January 22, 2002, the Bankruptcy Court modified the preliminary injunction to include certain additional affiliates, and to reinstate the bar against the commencement of new actions against affiliates arising from alleged exposure to asbestos, whether indirectly or directly caused by Debtors. [D.I. 87]

4.    On February 4, 2002, certain Libby Claimants sought to modify the preliminary injunction in order to pursue an alleged direct cause of action against Maryland Casualty Company ("MCC"), one of Debtors' insurers. The Bankruptcy Court denied the Libby Claimants' motion, a decision later affirmed by the U.S. Circuit Court of Appeals for the Third Circuit. In re W.R. Grace & Co. (Gerard v. W. R. Grace & Co.), 115 Fed. Appx. 565 (3d Cir. 2004).

5.    The Libby Claimants then brought asbestos personal injury claims arising from Debtors' mining operations by commencing suit against Montana Vermiculite Company ("MVC"), the former owners of Debtors' mining operations. [D.I. 153] The Court amended the preliminary injunction to stay actions against MVC on February 25, 2005. [D.I. 358]

2

6.    On or about March 25, 2003, Montana filed contribution and indemnification claims against Debtors.  Proof of Claim Number 6101.

7.    On June 9, 2005, Montana filed a motion in the main bankruptcy case for relief from the automatic stay, seeking to join Debtors as third-party defendants in the state-court actions filed against it by the Libby Claimants.  Montana later withdrew this motion without prejudice to re-file.

8.    On August 22, 2005, Debtors filed a Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana (the "Injunction Motion") [D.I. 359] seeking to expand the preliminary injunction to include all pending state court actions against the State of Montana and related to Debtors' mining activities in Libby, Montana (the "State Court Actions").

9.    The Libby Claimants filed an objection to the Injunction Motion [D.I. 363], while the Official Committee of Unsecured Creditors submitted a joinder to the Injunction Motion [D.I. 359].  The State of Montana filed a response in which  it did not object to the Injunction Motion unless the relief affected certain of Montana's rights. [D.I. 362]

10.    On December 19, 2005, the Court held a hearing on Debtors' Injunction Motion (the "Hearing").  At that time, Debtors represented that the Libby Claimants claims against Montana were wholly derivative of Debtors' and that the Libby Claimants' actions against Montana arise from alleged exposure to asbestos caused by Debtors.  [Tr., 153:6-15]

11.    On April 16, 2007, the Court entered its Memorandum Opinion and Order Denying Debtors' Injunction Motion. [D.I. 419 and 420]

12.    On April 26, 2007, Montana filed a Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction Entered

April 16, 2007 ("Motion for Reconsideration"). [D.I. 426]. Debtors filed a similar motion on the same date. [D.I. 427]

13. On March 31, 2008, the Court entered its Order Denying Motions to Reconsider (the "Order"), which denied both Montana's and Debtors' motions to reconsider. [D.I. 484] The Memorandum Opinion in regards to Order Denying Motion to Reconsider was entered on April 1, 2008 [D.I. 485]

14. On April 7, 2008, Debtors announced a tentative settlement with the Official Committee of Asbestos Personal Injury Claimants ("APIC"), the Future Claimants Representative ("FCR"), and the Official Committee of Equity Security Holders (the "Equity Committee") covering the asbestos-related personal injury claims. Under the proposed settlement, Debtors will establish a §524(g) trust for the benefit of the APIC and pay $250 million in cash and various other forms of compensation. The proposed settlement did not address or resolve the contribution and indemnity claims filed by Montana against the Debtors.

15. On April 9, 2008, Montana filed with the Bankruptcy Court the "State of Montana's Motion for Stay Pending Appeal in the District Court of This Court's Order Denying Montana's Motion for Reconsideration" [D.I. 486]. Following a hearing on April 21, 2008, the Bankruptcy Court entered the Stay Pending Appeal Order. [D.I. 508]

## OBJECTION TO THE LIBBY CLAIMANTS' MOTION

### A. Overview

The Bankruptcy Court twice recognized the complexity of the issues involved in this case, in light of the equities on all sides, and as a result it twice issued temporary stays of the State Court Action pending its rulings on whether to expand the preliminary injunction to cover claims of Montana. [D.I. 376, 466]  Following the Bankruptcy Court's Order denying Motions to Reconsider, which denied both Montana's and Debtors' Motions to Reconsider [D.I. 484], the Bankruptcy Court again recognized the complexity of the issues involved in this case and entered the subject Stay Pending Appeal Order.  For the same reasons the Bankruptcy Court had issued the temporary stays, this Court should deny the Libby Claimants' Motion.

### B. The State of Montana is Properly Before the District Court

The Libby Claimants' represent there is no appeal pending before this Court. Such a representation is not correct. See 1:08-mc-00091-RLB and 1:08-cv-00246- RLB.  On April 10, 2008, both Montana and Debtors filed notices of appeal of the Bankruptcy Court's Order Denying Motions to Reconsider.  [D.I. 490 and 492]  The Libby Claimants note that Grace has sought, and Montana has joined, in a request for leave to appeal.

### C.  The Bankruptcy Court Properly Applies the Legal Standard for Stay Pending Appeal

In the Bankruptcy Court's April 22, 2008 Memorandum Order granting Motion for Stay Pending of Appeal, the Bankruptcy Court correctly stated that it had jurisdiction to entertain the Rule 8005 Motion for Stay Appending Appeal.  Further, the Bankruptcy Court noted that while a section 105 injunction is based on the underlying merits of the action, the Rule 8005 stay is centered on staying the effect of the Bankruptcy Court's Order denying the injunction, not on the merits of the underlying action.  The Bankruptcy Court further noted that Rule 8005 is aimed at

"maintaining the status quo pending an appeal so that the rights of all parties in interest are protected."  The Bankruptcy Court properly noted that

> In order to obtain a stay pending appeal the movant, here the State of Montana, must (1) make a strong showing of likelihood of success on the merits in the appeal, (2) that it will suffer irreparable harm absent a stay, (3) that issuance of the stay will not substantially injure other parties to the action and (4) that the stay is in the public interest.  In re Finova Group, Inc., 2007 WL 3238764 (D. Del., Oct. 31, 2007).  The Bankruptcy Court is required to balance all of those factors.  Morgan v. Polaroid Corp., 2004 WL 253477 (D. Del., Feb. 9, 2004).

As set out in great detail in the Bankruptcy Court's Stay Pending Appeal Order, consistent with Finova and Morgan, the Bankruptcy Court balanced the Rule 8005 factors and concluded that the stay pending appeal to this Court of the Order Denying Motions to Reconsider is warranted "under the unique circumstances presented."  See Stay Pending Appeal Order.

The Third Circuit recognizes that in bankruptcy cases, "a myriad of circumstances can occur that would necessitate the grant of a stay pending appeal in order to preserve a party's position." In re Highway Truck Drivers & Helpers Local Union # 107, 888 F.2d 293, 298 (3d Cir.1989).

> Issues relating to stays pending appeal in bankruptcy cases are governed by Bankruptcy Rules 7062 and 8005. Bankruptcy Rule 7062 provides that FED. R. CIV. P. 62 is applicable in adversary proceedings….Bankruptcy Rule 8005 enables the bankruptcy court and the district court to tailor relief to the unique circumstances of the case, "[n]otwithstanding Rule 7062," by making any "appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."

In re Trans World Airlines, Inc., 18 F.3d 208, 212 (3d Cir. 1994).

> Bankruptcy Rule 8005 provides, in relevant part:
>
> A motion for a stay of the judgment, order, or decree of a bankruptcy court, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance in the bankruptcy court. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy court may suspend or order the continuation

of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by the bankruptcy court, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy court.

A bankruptcy court has the power to grant a stay even though, having already ruled on the merits of the case, the court will have found no "likelihood of success on the merits." In other words, that the Bankruptcy Court has already passed on the merits of this case does not prevent it from staying the case pending appeal.[2] Accordingly, the best statement of this the Bankruptcy Court's broad power under Rule 8005 is this:   the Bankruptcy Court "may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Rule 8005.

### D.  The Bankruptcy Court Properly Granted a Stay Pending Appeal

1.      *Montana will likely succeed on the merits*

While the Bankruptcy Court in its Stay Pending Appeal Order concluded that the State of Montana is "not likely to prevail on the merits on appeal," the Bankruptcy Court found that other factors in the balancing test carry more weight under the facts and circumstances of this case. Specifically, in conducting the balancing test, the Bankruptcy Court stated:

> . . . the harm to the parties that will result in the event that an appellate court determines that the injunction should issue will be so severe if a stay is not issued that Montana's likelihood of

---

[2] Counsel for Montana has found one case that seems to recognize this, albeit implicitly.  *See* In re WestPoint Stevens, Inc., 2007 WL 1346616 (S.D.N.Y. 2007).  In that case, the Bankruptcy Court found that movants had shown "a 'likelihood of success in their appeals…in light of the risk of harm to the respective parties.'" Id. at *4. The District Could held that "[t]he Bankruptcy Court's conclusion that this prong of the analysis was satisfied was neither clearly erroneous nor unreasonable. The standard requires only a showing of a substantial possibility of success on the merits where other factors are also strong.  Such substantial possibility need not rise to the level of a likelihood of success."  In other words, the standard used in that court implicitly acknowledged that the movant need not show a greater than 50/50 chance of success, if other factors weigh heavily enough.

> success on the merits is not the predominant factor to consider under the unique circumstances presented.

In denying Debtors' Injunction Motion, the Bankruptcy Court did not analyze whether enjoining the State Court Actions against Montana would be appropriate under section 105(a). Rather, it concluded that it lacked subject matter jurisdiction to issue such an injunction.  In this current appeal, Montana is requesting that this Court determined that the Bankruptcy Court's conclusion was legal error.

Most importantly, the Third Circuit has already held, within this same adversary proceeding, that the Bankruptcy Court had jurisdiction to enjoin state-court litigation against third-party defendants that have an indemnification claim against Grace.  Gerard v. W.R. Grace & Co., 115 Fed. Appx. 565 (3d Cir. 2004).

At the heart of both Montana's and Debtors' appeals before this Court, relating to the Bankruptcy Court's denying Debtors' Injunction Motion, is the Bankruptcy Court's holding that it lacks subject matter jurisdiction to expand the injunction to include the State of Montana.  The Bankruptcy Court acknowledged that application of the test for subject matter jurisdiction "has proven to be most difficult with cases involving indemnification and contribution."  [DI 419 at 7] Moreover, the Bankruptcy Court concluded that "reasonable minds can differ" on this issue:

> I think there's an issue, a big issue.  I think Circuit has to decide whether I appropriately applied those standards and perhaps in a concept like this, where the purpose of the bankruptcy is essentially to stop all of the claims against the debtor, impose this breathing spell and let the debtor address its claims in the concept of a plan.  Perhaps I am wrong.  And I think the Circuit should take a look to see, or the District Court and the Circuit to take a look and see, and that's really where this issue should go and has to go. And I think there is a reasonable possibility, otherwise I wouldn't be writing an opinion, that reasonable minds can differ on that issue.

4/21/08 hearing transcript at 46:5-16 [Bankruptcy Case DI 18644].   Accordingly, at the very least, there is a substantial ground for disagreement relating to the controlling issue of law as to subject matter jurisdiction.

Montana has always argued that Gerard controls.  In their responses to this argument, the Libby Claimants have stressed In re Combustion Engineering, 391 F.3d 190 (3d Cir. 2004), arguing that it has overruled or weakened Gerard.  Their position is not correct  Nevertheless, even if the Libby Claimants are correct that Combustion Engineering requires "related to" jurisdiction before the Court can enjoin a non-core proceeding, the Third Circuit has already determined a specific instance of where there is such "related to" jurisdiction – in the situation presented by Gerard.[3]   Because there is "related to" jurisdiction in Gerard, there is "related to" jurisdiction here.

The Bankruptcy Court in its April 16, 2007 Memorandum Opinion and Order Denying Debtors' Injunction Motion recognized the existence of "related to" jurisdiction over the previously-issued injunction covering MCC, which gave rise to Gerard.  That is, the Bankruptcy Court concluded that, even if Combustion Engineering requires "related to" jurisdiction, there was such jurisdiction over the injunction covering MCC.  The present case is indistinguishable.

In Gerard, the Libby Claimants' actions against MCC were brought to pursue MCC for its alleged own independent actions, not because MCC was the Debtors' insurer. In enjoining the

---

[3] The Court in Gerard at one point seemed to disavow the need to find "related to" jurisdiction.  115 Fed. Appx. at *567.  Yet, in the next paragraph, the Court held: "In addition to having been misdirected as to the issue before it, the District Court, in its jurisdictional analysis, was also misled as to the nature of the proceeding before the Bankruptcy Court. Clearly, the ruling on appeal to the District Court resulted from the adversary proceeding seeking injunctive relief initiated by the debtor in its own chapter 11 case. Thus, the proceeding was assuredly "related to" the case, and, further, it definitely "arose under" the bankruptcy proceeding (and was perhaps even a "core" proceeding)." Id. at *567-68. Hence the Court concluded that the injunction "related to" the bankruptcy.  Indeed, the Libby Claimants have conceded as much in a brief. Opposition of Montana Plaintiffs to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana p. 4 ("The panel concluded that the order on appeal was "'related to' the case" because it resulted from an adversary proceeding seeking injunctive relief that Grace initiated."). [D.I. 442]   In any event, to the extent there is tension between Combustion Engineering and Gerard, Gerard should be read to be consistent with Combustion Engineering if at all possible, and that is surely possible here.

Libby Claimants' direct actions against MCC, the Bankruptcy Court stated that "MCC was a workers compensation insurer for Debtors and a ruling against MCC would have had a direct impact on the estate.," Just as with their actions against MCC, the Libby Claimants actions against the State of Montana are allegedly for the State of Montana's own independent actions.

The Libby Claimants' theory of the liability of MCC is almost the same as the theory of liability asserted against the State of Montana. The Court of Appeals described the claim against MCC:

> Essentially, the Plaintiffs . . . contend that, as Grace's worker's compensation carrier, MCC undertook a duty to the workers, their families and the community of Libby, Montana to exercise reasonable care in relation to the mine safety program and that MCC breached this duty. They further allege that MCC aided and abetted Grace in its dangerously substandard operation and conspired with Grace to conceal the dangers posed by asbestos at the Libby Mine.

Gerard, 115 Fed. Appx. at 566-67.

In complaints filed against the State of Montana, Libby Claimants assert nearly the same theories of liability arising from the State's inspections of Grace's facilities in Libby, i.e., that by conducting inspections at the Grace facility, Montana undertook a duty to the workers, their families and the community of Libby, Montana to exercise reasonable care in warning of asbestos at the facility. [D.I. 359, Ex. A & B].

In simplest terms, Debtors face the same risk from the Libby Claimants suing Montana as they did from the Libby Claimants suing MCC. In order to find Montana liable to the Libby Claimants, the Libby Claimants will first have to find Debtors negligently exposed the Libby Claimants to asbestos. If so, Debtors will be liable to the State pursuant to the State's pending contribution and indemnification claims. Specifically, Debtors have stated: "The Debtors and the State share an identity of interest with respect to the Montana Actions. Underlying any claim

against the State, is the question of whether the Debtors negligently exposed the Montana plaintiffs to asbestos."   Debtors' Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana at 10 [D.I. 359].

The State of Montana has filed a proof of claim for contribution and indemnification from Debtors for all cases filed against it by the Libby Claimants.  In other words, given that Montana's liability is derivative of any liability found against Debtors, Montana's contribution and indemnification claims will be automatically liquidated with the amount of the finding against Montana to be deducted from Debtors' estate. Therefore, because there is "related to" jurisdiction over MCC given that a determination it is liable for some injury to the Libby Claimants will effect Debtors' estate and that Montana can only be found liable if Debtors negligently exposed the Libby Claimants to asbestos – which in turn means Debtors cannot dispute Montana's contribution and indemnity claims - the Libby Claimants' actions against Montana will have a direct effect on Debtors' estate, i.e., there is "related to" jurisdiction here.[4]

In its March 31, 2008 Order Denying Motions to Reconsider, the Bankruptcy Court tried to distinguish the situation in MCC/Gerard by holding that Montana would need "intervening adjudication" to recover against Debtors, but that MCC would not need "intervening adjudication" because of the settlement agreement provision between Debtors and MCC

---

[4] The Libby Claimants spend much time in their responses to Montana's Motion to Reconsider arguing that Gerard is distinguishable by its procedural posture.  They claim that the Third Circuit in Gerard was discussing not subject-matter jurisdiction, but some other type of jurisdiction: "the relevant issue [was] whether the bankruptcy court [had] jurisdiction to consider the modification request rather than the underlying jurisdictional issue of whether the bankruptcy court had jurisdiction to enter the injunction in the first place."  Opposition of Montana Plaintiffs to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana p.5. [D.I. 442]  Aside from the fact that the wording of the opinion, particularly the discussion of "related to" jurisdiction, clearly indicates that the Court was considering whether there was subject-matter jurisdiction supporting the injunction itself, 115 Fed. Appx. at *567-68), it is axiomatic that courts must analyze *sua sponte* whether they have subject-matter jurisdiction.  See, e.g., In re Intel Corp. Microprocessor Antitrust Litigation, 476 F.Supp.2d 452, 455 (D. Del. 2007).  Consequently, to assume that the Court in Gerard did not consider whether subject-matter jurisdiction supported the injunction covering MCC is to assume that the Court, after the Libby Claimants explicitly attacked subject-matter jurisdiction on appeal, either disregarded the rule or decided to make no mention of jurisdiction.  That assumption is without merit.

mandating that Debtors indemnify MCC against asbestos-related claims.  However, that finding is in error, given that Montana's liability is derivative of any liability found against Debtors  and Montana's timely filed and pending contribution and indemnification claims for any liability resulting to it from the Libby Claimants' actions against Montana.

Montana believes that this attempt fails for another reason.  Either, one: the automatic stay precludes Montana from impleading Debtors into the State Court Actions, or it does not (an issue not yet decided in the main bankruptcy case).  If the automatic stay precludes Montana from impleading the Debtors into the State Court Actions, then the automatic stay would also have precluded MCC from impleading the Debtors into the state court actions against it, regardless of the Grace-MCC settlement agreement indemnification provision.  Consequently, MCC, just like Montana, would have needed "intervening adjudication" to recover what it lost in the state court actions against it.

Or, two:  if the automatic stay does not preclude Montana from impleading Debtors into the State Court Actions, then the automatic stay would also not have precluded MCC from impleading the Debtors into the State Court Actions, regardless of the Grace-MCC settlement agreement indemnification provision.  Consequently, there would be no need for "intervening adjudication" by either MCC or Montana, and there would be an (alleged) identical "direct impact" on the estate in either case.  In short, the settlement agreement indemnification provision between MCC and Grace is irrelevant, and Montana is in the same position that MCC was.  Debtors' liability to MCC was exactly as "direct" or dependent on "intervening adjudication," depending upon the scope of the automatic stay, as their liability to Montana.

Gerard has decided the issue in this case.  Because there is subject-matter jurisdiction for the injunction covering MCC, there is subject-matter jurisdiction for an injunction covering

Montana.  At the very least, as the Bankruptcy Court has pointed out, "reasonable minds can differ" on this issue.  Thus, the first prong of the Rule 8005 standard is met.

> 2.    *Not staying the Order pending appeal will irreparably harm Montana (and Debtors)*

As the Bankruptcy Court concluded, Montana will be irreparably harmed if the State Court Actions are allowed to proceed against it pending appeal.  The Bankruptcy Court stated:

> If an appellate court determines that our conclusions in the March 27, 2008 Memorandum Opinion and Order are incorrect and, therefore, the injunction should issue in Montana's favor, absent a state pending appeal Montana will be required to defend actions that it otherwise would not have been required to defend at this time.  Furthermore, if the actions proceed against Montana, the State would be forced to defend without benefit of Debtors as a party and without being able to obtain discovery from the debtors because of the automatic stay.  Conversely, the harm which the Libby Claimants may suffer is not substantial because, although they may have independent claims against the State, the basis of the Libby Claimants' primary alleged wrong has been and continues to focus on Debtors and Debtors' operations which generated asbestos dust in the Libby, Montana, area and led to alleged personal injuries and property damages for which Libby Claimants seek redress.

[DI 508 at 3].

As the Bankruptcy Court made clear, there is the obvious harm that Montana will have to undergo discovery and participate in a case centering around Debtors' mining and other activities, if the stay is not in place during appeal.  That is, the Libby Claimants would have to show that Debtors' mining and other activities were actually causing harm, and then that Montana was aware of that harm and failed to warn.  Debtors' presence and involvement in the State Court Actions is mandatory for defense against those claims.Indeed, Debtors would have documents and evidence in their control bearing directly on those issues.

For example, Montana alleges that W.R. Grace conducted medical examinations of many of the Libby Claimants beginning in 1959 through the date it ceased its mining operations (1990)

and provided the results of those examinations to many of the Libby Claimants -including findings that many of the Libby Claimants had symptoms consistent with or manifestations of asbestos-related disease well before any suits were filed against Montana. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana further alleges W. R. Grace actively concealed from Montana information about its operations and the particular harm and injury caused by dust containing asbestos at its Libby, Montana operations. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana alleges W.R. Grace had safety devices and safeguards, such as respiratory protective devices and ventilation systems in the workplace, and instructed the miners to use such devices. Montana alleges that W.R. Grace either knew those devices and systems were not used or maintained in a manner sufficient to prevent injury from asbestos dust or, conversely, that its mandates were followed by the Libby Claimants. Montana alleges the Libby Claimants deny they had access to the devices and systems or were instructed to use them. Montana alleges W.R. Grace has testimony and documents to support Montana's allegations.

Montana alleges W.R. Grace controlled the methods, processes, practices, means, and operations in the place of employment. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana alleges the acts and omissions of W.R. Grace were the cause of the injuries and damages allegedly sustained by those Plaintiffs. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana alleges many of the Libby Claimants filed workers' compensation claims against Debtors in which claims were made for asbestos-related disease, but that those Libby

Claimants either do not have access to that information, deny having access to that information, or deny having made such claims. Montana alleges W.R. Grace and its workers' compensation insurers also subject to the automatic stay have testimony and documents to support Montana's allegation.

Forcing Montana to defend against the Libby Claimants' actions without the presence of Debtors would cause grave harm, given that evidence of what Debtors did not inform or withheld from Montana is in sole and exclusive Debtors' control.

Furthermore, Montana may be harmed by the Bankruptcy Court's Order denying the Motions to Reconsider in combination with the recently announced tentative settlement between Debtors and the APIC, FCR, and Equity Committee covering the asbestos-related personal injury claims. Under the proposed settlement, Debtors will pay $250 million now and make various other forms of compensation. Montana was kept out of this settlement – indeed, Montana knows only the limited information contained in the press release announcing the settlement and the term sheet. Even if the Libby Claimants' claims against Debtors will be settled under that settlement, the fact that they will prosecute their actions against Montana and seek to hold Montana liable for Debtors' own actions. This is certainly true given that the asserted value of the claims against Montana which, if the Libby Claimants are correct that Montana is liable to them and given that Montana's liability is derivative of any liability found against the Debtors, means Montana's contribution and indemnification claims will , not may, approximate a large portion of the proposed trust. Consequently, Montana may be prejudiced by the settlement, particularly if the settlement forces Montana to look only to the 524(g) trust to satisfy any future indemnification or contribution claims. As a result, the Bankruptcy Court correctly entered the

stay pending appeal to allow Montana and the other parties to resolve Montana's role in any such settlement, thus promoting a consensual reorganization.

### 3.    *Staying the Order will not substantially harm the Libby Claimants*

The Bankruptcy Court points out in its Stay Pending Appeal Order that any harm suffered by the Libby Claimants would not be substantial in that the Libby Claimants' primary alleged wrong focuses on the Debtors and the Debtors' operations.[5] Moreover, the appeal likely will not take an extraordinary amount of time, and the irreparable harm to Montana if the District Court reverses the Bankruptcy Court far outweighs the minor harm that the Libby Claimants' would suffer if the District Court affirms the Bankruptcy Court. [D.I. 508 at 3]

### 4.    *The Public Interest Weighs in Favor of the Stay Pending Appeal*

Finally, the public interest weighs in favor of the stay pending appeal issued by the Bankruptcy Court. The Libby Claimants seek to hold the citizens of Montana liable for acts of a private company. In fact, as the Bankruptcy Court concluded:

> issuance of a stay pending appeal will not harm the public interest.
> In fact, not issuing the stay will harm the public interest because
> permitting the suit to go forward is an economic cost to be borne
> by the citizens and, if Montana suffers an adverse judgment, its
> public fisc will be affected.

---

[5] The Bankruptcy Court recently addressed the Libby Claimants asserted harm in its Memorandum Opinion dated April 11, 2008 [D.I. 498] granting the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. The Bankruptcy Court rejected the Libby Claimants' assertion of prejudice by the implementation of an injunction as to BNSF action, noting that the Court "acknowledged that the delays caused by the proceedings affect all 'asbestos victims' and that was why the Court was 'pushing the Debtor to get a plan through . . . and get people who are entitled to compensation compensated.' " [D.I. 498] citing Case No. 01-01139, Doc. No. 6266, Transcript of 8/23/04, at 55.

**CONCLUSION**

This Motion should be denied while the appeal process progresses. The Bankruptcy Court correctly applied the standards for issuing its order of stay pending appeal.

Dated: May 12, 2008                      Respectfully submitted,

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*


   /s/ Kevin J. Mangan
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801
(302) 252-4320
Counsel for the State of Montana

WCSR  3897730v2