IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re: W.R. Grace & Co., *et al.*

| | |
|---|---|
| W.R. GRACE & CO., et al., and the State of Montana  Appellants,  v.  LIBBY CLAIMANTS,  Appellee. | 08-cv-00246 (RLB)  Bankruptcy Case No. 01-1139  Adversary Case No. 01-771  Appeal No. 08-19 |

## APPELLANT STATE OF MONTANA'S BRIEF ON APPEAL

Dated: May 27, 2008

**WOMBLE CARLYLE SANDRIDGE**
**& RICE, PLLC**
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, 15th
Floor Wilmington, DE 19801
(302) 252-4320
Counsel for the State of Montana

## TABLE OF CONTENTS

PAGE(S)

I. NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

    A.    Preliminary Statement ................................................................................. 1

    B.    Standard of Review on Appeal ................................................................... 2

    C.    Background and History ............................................................................. 2

II. ARGUMENT ............................................................................................................ 6

    A.    The Bankruptcy Court Has Jurisdiction to Enjoin the State Court Actions ........................................................................................................ 6

        (1)    *Gerard* Shows There is Jurisdiction in this Case, and *Gerard* Controls ................................................................. 6

        (2)    The Other Third Circuit Decisions Regarding Subject Matter Jurisdiction Can Be Distinguished From This Case and Reconciled with *Gerard* .................................................................. 12

    B.    The State of Montana and Debtors Have an Identity of Interest That Supports Expansion of the Preliminary Injunction ......................... 14

III. CONCLUSION ....................................................................................................... 17

## TABLE OF AUTHORITIES

*In re W.R. Grace & Co. (Gerard v. W.R. Grace & Co.)*,
115 Fed. Appx. 565 (3d Cir. 2004) ................................................................................. passim

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ............................................................ 2, 13, 14

*In re Federal Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002) .......................................... 2, 13, 14

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) ............................................... 2

*Kool, Mann, Coffee & co., v. Coffey*, 300 F.3d 340 (3d Cir. 2002) ............................................ 2

*Duke Energy Royal, LLC v. Pillowtex Corp.*, 349 F.3d 711 (3d Cir. 2003) ............................... 2

*In re Combustion Engineering*, 391 F.3d 190 (3d Cir. 2004) ............................................. passim

*In re Intel Corp. Microprocessor Antitrust Litigation*, 476 F. Supp.2d 452 (D. Del. 2007) . 12

*In re American Film Technologies, Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994) ..................... 14

### Statutes and Rules

28 U.S.C. § 1334(b) ................................................................................................................. 1, 17

11 U.S.C. § 105(a) ................................................................................................................. passim

Mont. Code Ann. Section 27-1-703(5) ...................................................................................... 10

WCSR 3907450v1

Appellant State of Montana ("Montana" or "Appellant"), by and through its undersigned counsel, appeals to the United States District Court for the District of Delaware from the Bankruptcy Court's: (1) Memorandum Opinion and Order dated, April 13, 2007, Denying Debtor's Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana [Adv. D.I. 419 and 420]; and (2) Memorandum Opinion and Order, dated March 27, 2008, Denying the Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction [Adv. D.I. 483 and 484] and in support thereof, Montana states as follows:

## I. NATURE AND STAGE OF PROCEEDINGS

### A.  PRELIMINARY STATEMENT

This appeal relates to the Bankruptcy Court's denial of Debtors' request to enjoin the Libby Claimants' asbestos-related actions against Montana.  At the heart of this appeal is the Bankruptcy Court's failure to follow legal precedent set in this very same adversary proceeding, precedent established by the Third Circuit in the *Gerard* case.[1]  Maryland Casualty Company ("MCC") in *Gerard* and the State of Montana are in the same position.  The Libby Claimants' theory of liability against MCC is the same theory of liability asserted against Montana.  The alleged independent liability raised by the Libby Claimants against Montana mirrors the allegations the Libby Claimants made against MCC in *Gerard*.  And in *Gerard*, the Third Circuit upheld the finding of subject-matter jurisdiction and sustained the injunction as to those actions.

In this case, the Bankruptcy Court concluded that related-to jurisdiction under 28 U.S.C. § 1334(b) to expand the injunction did not exist "because there could be no direct effect on the

---

[1]  *In re W.R. Grace & Co. (Gerard v. W.R. Grace & Co.)* 115 Fed. Appx. 565 (3d Cir. 2004) ("*Gerard*").

Debtors' estate [from the actions pending against Montana] without intervening litigation." [Adv. Pro. D.I. 483]. The Bankruptcy Court relied on the precedent of *Pacor*[2] and *Federal Mogul*,[3] in denying Debtors' request to expand the preliminary injunction. *Pacor* and *Federal Mogul*, however, are not applicable to the case presented before the Court on this appeal. *Gerard* is. As such, the Bankruptcy Court's decision constitutes a clear legal error.

### B.   STANDARD OF REVIEW ON APPEAL

In an appeal from a judgment of a bankruptcy court, the District Court reviews questions of law on a *de novo* standard, and questions fact on a "clearly erroneous" standard. Bankruptcy Rule 8013. A finding is "clearly erroneous" only when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Unites States v. United States Gypsum Co.,* 333 U.S. 364, 68 S. Ct. 525, 92 L.Ed. 746 (1948). See, also, *Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340 (3d Cir. 2002) ("A finding of fact is clearly erroneous when it had no credible evidence to support it or when it has no rational relationship to the evidence").

With regard to questions of law, the District Court is not bound by the "clearly erroneous" standard, but instead may substitute its own judgment and review the trial court's conclusions *de novo*. See, e.g., *Duke Energy Royal, LLC v. Pillowtex Corp. (In re Pillowtex, Inc.),* 349 F.3d 711 (3d Cir. 2003).

### C.   BACKGROUND AND HISTORY

On April 2, 2001, the Debtors, including W.R. Grace & Co. and W.R. Grace & Co.-Conn., filed their petitions under Chapter 11 of the Bankruptcy Code.

---

[2]   *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984).
[3]   *In re Federal Mogul Global Inc.,* 300 F.3d 368 (3d Cir. 2002) cert. denied sub nom. *Daimler Chrysler v. Official Committee of Asbestos Claimants,* 537 U.S. 1148 (2003).

A group of plaintiffs from Libby, Montana ("the Libby Claimants") had alleged that Debtors were responsible for their asbestos-related injuries arising out of Debtors' operations of a vermiculite mine and other facilities near and in Libby, Montana. The Libby Claimants had also filed suit against various affiliated entities and third parties whose purported liability was derivative of the liability of Debtors. On May 3, 2001, the Bankruptcy Court entered the preliminary injunction at issue, barring the continued prosecution of those latter actions [Adv. D.I. 32]. On January 22, 2002, the Bankruptcy Court modified the preliminary injunction to include certain additional affiliates, and to reinstate the bar against the commencement of new actions against affiliates arising from alleged exposure to asbestos, whether indirectly or directly caused by Debtors [Adv. D.I. 87].

On February 4, 2002, certain Libby Claimants sought to modify the preliminary injunction in order to pursue an alleged direct cause of action against Maryland Casualty Company ("MCC"), one of Debtors' insurers, based on the theory that MCC was negligent in failing to take sufficient action to protect and warn the Libby Claimants about the alleged asbestos hazards related to the Debtors' Libby operations. The Bankruptcy Court denied the Libby Claimants' motion, a decision later affirmed by the U.S. Circuit Court of Appeals for the Third Circuit. *In re W.R. Grace & Co. (Gerard v. W. R. Grace & Co.)*, 115 Fed. Appx. 565 (3d Cir. 2004).

The Libby Claimants then brought asbestos personal injury claims arising from Debtors' mining operations by commencing suit against Montana Vermiculite Company ("MVC"), the former owners of Debtors' mining operations [Adv. D.I. 153]. The Court amended the preliminary injunction to stay actions against MVC on February 25, 2005 [Adv. D.I. 358].

On or about March 25, 2003, Montana filed contribution and indemnification claims against Debtors, seeking contribution and indemnification from the Debtors in the pending state court actions against the State of Montana, actions related to Debtors' mining activities in Libby, Montana (the "State Court Actions"). Proof of Claim Number 6101 [Adv. D.I. 495 ex. 2].

On June 9, 2005, Montana filed a motion in the main bankruptcy case for relief from the automatic stay [Bank. Case D.I. 8582], seeking to join Debtors as third-party defendants in the State Court Actions filed against it by the Libby Claimants. Montana later withdrew this motion without prejudice to re-file. [Bank. Case D.I. 15969]

On August 22, 2005, Debtors filed a Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana (the "Injunction Motion") [Adv. D.I. 359], seeking to expand the preliminary injunction to include the State Court Actions.

The Libby Claimants filed an objection to the Injunction Motion [Adv. D.I. 363], while the Official Committee of Unsecured Creditors submitted a joinder to the Injunction Motion [Adv. D.I. 359]. The State of Montana filed a response in which it did not object to the Injunction Motion unless the relief affected certain of Montana's rights [Adv. D.I. 362].

On December 19, 2005, the Bankruptcy Court held a hearing on Debtors' Injunction Motion (the "Hearing"). At that time, Debtors represented that the Libby Claimants' claims against Montana were wholly derivative of the claims against Debtors and that the Libby Claimants' actions against Montana arise from alleged exposure to asbestos caused by Debtors [Bank. Case D.I. 11473, Tr., 153:6-15].

On April 16, 2007, the Court entered its Memorandum Opinion and Order Denying Debtors' Injunction Motion [Adv. D.I. 419 and 420].

On April 26, 2007, Montana filed a Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction Entered April 16, 2007 ("Motion for Reconsideration") [Adv. D.I. 426]. Debtors filed a similar motion on the same date [Adv. D.I. 427]. The Bankruptcy Court stayed the State Court Actions pending reconsideration.

On March 31, 2008, the Court entered its Order Denying Motions to Reconsider (the "Order"), which denied both Montana's and Debtors' motions to reconsider [Adv. D.I. 484]. The Memorandum Opinion in regards to Order Denying Motion to Reconsider was entered on April 1, 2008 [Adv. D.I. 485].

On April 7, 2008, Debtors announced a tentative settlement with the Official Committee of Asbestos Personal Injury Claimants ("APIC"), the Future Claimants Representative ("FCR"), and the Official Committee of Equity Security Holders (the "Equity Committee") covering the asbestos-related personal injury claims. Under the proposed settlement, Debtors will establish a §524(g) trust for the benefit of asbestos personal injury claimants and pay $250 million in cash and various other forms of compensation. The proposed settlement did not address or resolve the contribution and indemnity claims filed by Montana against the Debtors.

On April 9, 2008, Montana filed with the Bankruptcy Court the "State of Montana's Motion for Stay Pending Appeal in the District Court of This Court's Order Denying Montana's Motion for Reconsideration" [Adv. D.I. 486]. Following a hearing on April 21, 2008, the Bankruptcy Court entered the Stay Pending Appeal Order [Adv. D.I. 508].

On April 10, 2008, both the State of Montana and the Debtors filed notices of appeal [Adv. D.I. 490 and 492]. Following a hearing on April 21, 2008, the Bankruptcy Court entered the Stay Pending Appeal Order . [Adv. D.I. 508]. On April 11, 2008, Debtors filed a motion for leave to appeal the order denying injunction [Adv. Pro. D.I. 495]. Montana joined in this motion

for leave to appeal [Adv. Pro. D.I. 518]. This Court subsequently maintained the stay pending appeal and consolidated the appeals of Debtors and Montana [D.I. 5, 7].

## II. ARGUMENT

### A. THE BANKRUPTCY COURT HAS JURISDICTION TO ENJOIN THE STATE COURT ACTIONS

In denying Debtors' Injunction Motion, the Bankruptcy Court did not determine whether enjoining the State Court Actions against Montana would be appropriate under section 105(a).[4] Rather, it concluded that it lacked subject matter jurisdiction to issue such an injunction. In this appeal, Montana requests that this Court determine that that conclusion was legal error. The matter should then be remanded to the Bankruptcy Court to determine the applicability of the section 105(a) injunction or, alternatively, this Court should issue the injunction based on the record below and the law surrounding section 105.

    1.    *Gerard* **shows there is jurisdiction in this case, and** *Gerard* **controls.**

The Bankruptcy Court acknowledged that application of the test for subject matter jurisdiction "has proven to be most difficult with cases involving indemnification and contribution." [Adv. DI 419 at 7]. Moreover, the Bankruptcy Court concluded that "reasonable minds can differ" on this issue:

> I think there's an issue, a big issue. I think Circuit has to decide whether I appropriately applied those standards and perhaps in a concept like this, where the purpose of the bankruptcy is essentially to stop all of the claims against the debtor, impose this breathing spell and let the debtor address its claims in the concept of a plan. Perhaps I am wrong. And I think the Circuit should take a look to see, or the District Court and the Circuit to take a look and see, and that's really where this issue should go and has to go. And I think there is a reasonable possibility, otherwise I wouldn't

---

[4] Under section 105(a), the Bankruptcy Court should, if it is determined that subject matter exists, then determine whether extension of the injunction is appropriate. See Montana's argument in subsection B below.

6

> be writing an opinion, that reasonable minds can differ on that issue.

[Bank Case DI 18644 4/21/08 hearing transcript at 46:5-16] While the Bankruptcy Court might have been correct that the law is complicated, what it missed was that the Third Circuit has already held, within this same adversary proceeding, that the Bankruptcy Court has jurisdiction to enjoin state-court litigation against third-party defendants that have an indemnification claim against Grace. *Gerard v. W.R. Grace & Co.*, 115 Fed. Appx. 565 (3d Cir. 2004).

From the outset of the litigation surrounding the Injunction Motion, Montana has always contended that *Gerard* controls. In their responses to this argument, the Libby Claimants have stressed *In re Combustion Engineering*, 391 F.3d 190 (3d Cir. 2004), arguing that it has overruled or weakened *Gerard*. Their position is not correct. Nevertheless, even if the Libby Claimants are correct that *Combustion Engineering* requires "related to" jurisdiction before the Court can enjoin a non-core proceeding, the Third Circuit has already determined a specific instance of where there is such "related to" jurisdiction – in the situation presented by *Gerard*.[5] Because there is "related to" jurisdiction in *Gerard*, there is "related to" jurisdiction here.

---

[5]   The Court in *Gerard* at one point seemed to disavow the need to find "related to" jurisdiction. 115 Fed. Appx. at *567. Yet, in the next paragraph, the Court held: "In addition to having been misdirected as to the issue before it, the District Court, in its jurisdictional analysis, was also misled as to the nature of the proceeding before the Bankruptcy Court. Clearly, the ruling on appeal to the District Court resulted from the adversary proceeding seeking injunctive relief initiated by the debtor in its own chapter 11 case. Thus, the proceeding was assuredly 'related to' the case, and, further, it definitely 'arose under' the bankruptcy proceeding (and was perhaps even a 'core' proceeding)." *Id.* at *567-68. Hence the Court concluded that the injunction "related to" the bankruptcy. Indeed, the Libby Claimants have conceded as much in a brief. Opposition of Montana Plaintiffs to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana ("The panel concluded that the order on appeal was 'related to' the case" because it resulted from an adversary proceeding seeking injunctive relief that Grace initiated."). [Adv. D.I. 442 at p.4]. In any event, to the extent there is tension between *Combustion Engineering* and *Gerard*, *Gerard* should

7

In *Gerard*, the Libby Claimants' sued MCC for its alleged own independent actions, not because MCC was the Debtors' insurer. In enjoining the Libby Claimants' direct actions against MCC, the Bankruptcy Court stated that "MCC was a workers compensation insurer for Debtors and a ruling against MCC would have had a direct impact on the estate." Just as with their actions against MCC, the Libby Claimants' actions against the State of Montana are allegedly for the State of Montana's own independent actions. The Libby Claimants' theory of the liability of MCC is almost the same as the theory of liability asserted against the State of Montana. The Court of Appeals described the claim against MCC:

> Essentially, the Plaintiffs . . . contend that, as Grace's worker's compensation carrier, MCC undertook a duty to the workers, their families and the community of Libby, Montana to exercise reasonable care in relation to the mine safety program and that MCC breached this duty. They further allege that MCC aided and abetted Grace in its dangerously substandard operation and conspired with Grace to conceal the dangers posed by asbestos at the Libby Mine.

*Gerard*, 115 Fed. Appx. at 566-67. In complaints filed against the State of Montana, Libby Claimants assert nearly identical theories of liability arising from the State's inspections of Grace's facilities in Libby, i.e., that by conducting inspections at the Grace facility, Montana undertook a duty to the workers, their families and the community of Libby, Montana to exercise reasonable care in warning of asbestos at the facility [Adv. D.I. 359, Ex. A & B]. In fact, nearly all of the suits were brought against Montana after the petition was filed and the automatic stay prohibited the Libby Claimants from suing the Debtors.

In simplest terms, Debtors face the same risk from the Libby Claimants suing Montana as they did from the Libby Claimants suing MCC. In order to find Montana liable to the Libby Claimants, the Libby Claimants will first have to prove that Debtors negligently exposed the

---

be read to be consistent with *Combustion Engineering* if at all possible, and that is surely possible here, as discussed infra.

8

Libby Claimants to asbestos. If so, Debtors will be liable to Montana pursuant to Montana's pending contribution and indemnification claims. Specifically, Debtors have stated: "The Debtors and the State share an identity of interest with respect to the Montana Actions. Underlying any claim against the State, is the question of whether the Debtors negligently exposed the Montana plaintiffs to asbestos." Debtors' Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana at 10 [Adv. D.I. 359].

The Bankruptcy Court found that the fact that Montana has a common law claim for contribution/indemnification distinguished this case from those cases involving contractual claims for contribution/indemnification, including *Gerard*, and clearly that was a significant factor in that Court's conclusion regarding subject matter jurisdiction. A review of the *Combustion Engineering* decision, however, demonstrates that this is only one factor in determining the existence of subject matter jurisdiction. See *Combustion Engineering*, 391 F.3d at 233. The Court should also look at whether there is derivative liability and identity of interest, which exist here. Also, the direct effects of litigation and administration of the estate are important factors, and they point to subject matter jurisdiction in this case. Perhaps most importantly, it is difficult to see the difference between a contractual claim for contribution/indemnification versus a common law claim for contribution/indemnification, as a legal or practical matter. How is contractual liability more "direct" than common law liability? A threat to a debtor in a case like *MCC* (contractual liability) is the same as the threat to a debtor in a case like the present (common law liability). In any event, even if the contractual/common law distinction applies in full force, there is a critical fact in this case that the Bankruptcy Court overlooked – that Montana has filed a proof of claim relating to its claims against the Debtors. Hence this case is not one where the third-party has a potential common law indemnification

9

claim, without more. Here Montana has a written, ready-to-go claim that is anything but theoretical.

In its March 31, 2008 Order Denying Motions to Reconsider [Adv. D.I. 483 and 484], the Bankruptcy Court also tried to distinguish the situation in MCC/*Gerard* by holding that Montana would need "intervening adjudication" to recover against Debtors, but that MCC would not need "intervening adjudication" because of the settlement agreement provision between Debtors and MCC mandating that Debtors indemnify MCC against asbestos-related claims. Even if Debtors have agreed to indemnify MCC, there must still be litigation to determine whether MCC is entitled to indemnification from Debtors and the terms of the indemnification agreement have been met. Montana timely filed and has pending contribution and indemnification claims (in the bankruptcy case)[6] for any liability resulting to it from the Libby Claimants' actions against Montana. That is, Montana has a written and pending claim ready to spring up, just like MCC had. Montana is in no different situation from MCC. MCC must litigate whether indemnification is required based on the claims brought against it and whether it met the terms of the indemnification agreement. So too must Montana litigate whether contribution and indemnification is required based on statutory law. See Mont. Code Ann. Section 27-1-703(5).

Moreover, the "intervening adjudication" rationale fails for another reason. Either: one, the automatic stay precludes Montana from impleading Debtors into the State Court Actions, or two, it does not (an issue not yet decided in the main bankruptcy case). If the automatic stay precludes Montana from impleading the Debtors into the State Court Actions, then the automatic

---

[6] The State of Montana has filed a proof of claim for contribution and indemnification from Debtors for all cases filed against it by the Libby Claimants. In other words, given that Montana's liability is derivative of any liability found against Debtors, Montana's contribution and indemnification claims will be automatically liquidated with the amount of the finding against Montana becoming the actual amount of Montana's claims against Debtors' estates.

stay would also have precluded MCC from impleading Debtors into the state court actions against it, regardless of the Grace-MCC settlement agreement indemnification provision. Consequently, MCC, just like Montana, would have needed "intervening adjudication" to recover what it lost in the state court actions against it. On the other hand, if the automatic stay does not preclude Montana from impleading Debtors into the State Court Actions, then the automatic stay would also not have precluded MCC from impleading the Debtors into the State Court Actions, regardless of the Grace-MCC settlement agreement indemnification provision. Consequently, there would be no need for "intervening adjudication" by either MCC or Montana, and there would be an (alleged) identical "direct impact" on the estate in either case. In short, the settlement agreement indemnification provision between MCC and Grace is irrelevant, and Montana is in the same position that MCC was. Debtors' liability to MCC was exactly as "direct" or dependent on "intervening adjudication," depending upon the scope of the automatic stay, as their liability to Montana. Put most simply, there is no relevant difference between a common-law and statutory right of indemnification and a contractual right of indemnification in the context of "intervening adjudication."

Finally, *Gerard* is controlling in this case, despite the fact that the Third Circuit marked the opinion as "Not Precedential." It is undisputed that the *Gerard* decision is relevant and of great value to the matter presented before the Court on this appeal. The same parties (Libby Claimants and Debtors) as well as the same trial court (the United States Bankruptcy Court for the District of Delaware) are present. Moreover, the same issue is presented. Pursuant to *Gerard*, this Court must reverse the Bankruptcy Court.[7]

---

[7] The Libby Claimants have at times argued that *Gerard* is distinguishable by its procedural posture. They claim that the Third Circuit in *Gerard* was discussing not subject-matter jurisdiction, but some other type of jurisdiction: "the relevant issue [was]

11

### 2. The other Third Circuit decisions regarding subject matter jurisdiction can be distinguished from this case and reconciled with *Gerard*.

Unlike the circumstances in *Pacor, Federal Mogul* and *Combustion Engineering*, the Libby Claimants are claimants in this case. The Third Circuit found in both *Pacor* and *Combustion Engineering* that it was significant that the non-debtor third party pursing the other non-debtor third party was not a claimant. *Pacor,* 743 F.2d at 995; *Combustion Engineering,* 391 F.3d at 231. Here, the Libby Claimants are claimants of the Debtors and have submitted themselves to the jurisdiction of the Bankruptcy Court.

Furthermore, in this case there is derivative liability, unlike some of the other Third Circuit decisions relied upon by the Libby Claimants. As discussed above, Debtors have stated that Montana's liability is derivative of the Debtors and that there is an identity of interest. In fact, the Libby Claimants have asserted aiding and abetting counts in nearly half of their actions, so that this is not just a matter of a claim of independent action against Montana.

Another critical distinguishing factor was that in *Pacor* and *Federal Mogul,* the effort was to remove thousands of non-bankruptcy actions to the bankruptcy court. In contrast, here,

---

whether the bankruptcy court [had] jurisdiction to consider the modification request rather than the underlying jurisdictional issue of whether the bankruptcy court had jurisdiction to enter the injunction in the first place." Opposition of Montana Plaintiffs to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana p.5 [Adv. D.I. 442]. Aside from the fact that the wording of the opinion, particularly the discussion of "related to" jurisdiction, clearly indicates that the Court was considering whether there was subject-matter jurisdiction supporting the injunction itself, (115 Fed. Appx. at *567-68), it is axiomatic that courts must analyze *sua sponte* whether they have subject-matter jurisdiction. *See, e.g., In re Intel Corp. Microprocessor Antitrust Litigation,* 476 F.Supp.2d 452, 455 (D. Del. 2007). Consequently, to assume that the Court in *Gerard* did not consider whether subject-matter jurisdiction supported the injunction covering MCC is to assume that the Court, after the Libby Claimants explicitly attacked subject-matter jurisdiction on appeal, either disregarded the rule or decided to make no mention of jurisdiction. That assumption is without merit.

the matter is to enjoin actions against a party with claims pending in the bankruptcy court. As the *Gerard* court emphasized, it is significant when the party sought to be enjoined is already subject to the jurisdiction of the court and has significant and identical claims against the Debtors, as it is here.

Furthermore, in *Pacor*, as the Bankruptcy Court points out, the third party to be protected "was not a creditor, had filed no claim against the debtor, and therefore, any judgment would have no effect on the estate." [Adv. Pro. D.I. 483 at p. 9]. In *Federal Mogul*, the third party actions were between personal injury claimants and the automotive companies and no claims had yet been pursued by the automobile companies against the debtors. Montana, however, has timely filed contribution and indemnification claims, in bankruptcy court, against the Debtors for any liability it may have arising out of the Libby Claimants' actions.

Moreover, the Third Circuit in *Gerard* distinguished both *Pacor* and *Federal Mogul* in a way consistent with the present case, stating that the issue presented in each of those cases was "whether the Bankruptcy Court had jurisdiction to remove to the Bankruptcy Court, and thus hear and decide, in the Bankruptcy Court, litigation pending in state court." *Gerard* at 567. The issue presented in this case, as in *Gerard*, is whether the Bankruptcy Court should clarify the scope of an injunction already issued by the Bankruptcy Court to include actions against the State of Montana because they relate to the underlying Chapter 11 cases. Unlike the courts in *Pacor* and *Federal Mogul*, the request for the injunction here, as in the *Gerard* case, is made by the "debtor in its own Chapter 11 case." *Id.* at p. 567. Accordingly, this Court should find, as the Third Circuit did in *Gerard*, that the proceeding "was assuredly 'related to' the case, and further, it definitely 'arose under' the bankruptcy proceeding." *Id.* at pp. 567-68.

B.  **THE STATE OF MONTANA AND DEBTORS HAVE AN IDENTITY OF INTEREST THAT SUPPORTS EXPANSION OF THE PRELIMINARY INJUNCTION**

Although the Bankruptcy Court did not address the issue whether an injunction is proper under the circumstances in the case, Montana and the Debtors have an identity of interest which would compel the finding of an injunction. As such, the matter should be remanded back to the Bankruptcy Court to determine the need for such an injunction. If it decides to determine the matter at this stage, however, this Court should issue the injunction based on the record below and the law surrounding 11 U.S.C. § 105.

The appropriate standard in considering Debtors' injunction request is whether an injunction is warranted under 11 U.S.C. § 105. Specifically, the appropriate analysis is that employed *In re American Film Technologies, Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994), where the court found that where an identity of subject matter, issues and parties was involved, the pending state court litigation gave rise to indemnification claims against the debtor and exposed the debtor to collateral estoppel prejudice if it did not participate in the state court litigation. As a result, the court found that injunctive relief under 11 U.S.C. § 105 was appropriate. *Id.*

In order to establish liability on the part of Montana to the Libby Claimants, the Libby Claimants will have to show that Debtors' mining and other activities were causing harm, and that Montana was aware of that harm. Any liability on the part of Montana is wholly derivative of Debtors' activities and disclosures to Montana. Debtors are thus an indispensable party to the State Court Actions and any liability that may be established, either on the part of the Debtors or Montana, will arise from the same set of facts involving Debtors' activities in Libby Montana. This is precisely the type of unity of subject-matter, parties, and issues for which injunctive relief under 11 U.S.C. § 105 is warranted.

In order to establish liability against Montana, the Libby Claimants would have to show that Debtors' mining and other activities were actually causing harm, and then that Montana was aware of that harm and failed to warn. Debtors' involvement in the State Court Actions is mandatory for defense against those claims. Indeed, Debtors would have documents and evidence in their control bearing directly on those issues.

For example, Montana alleges that W.R. Grace conducted medical examinations of many of the Libby Claimants beginning in 1959 through the date it ceased its mining operations (1990) and provided the results of those examinations to many of the Libby Claimants -including findings that many of the Libby Claimants had symptoms consistent with or manifestations of asbestos-related disease well before any suits were filed against Montana. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana further alleges W. R. Grace actively concealed from Montana information about its operations and the particular harm and injury caused by dust containing asbestos at its Libby, Montana operations. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana alleges W.R. Grace had safety devices and safeguards, such as respiratory protective devices and ventilation systems in the workplace, and instructed the miners to use such devices. Montana alleges that W.R. Grace either knew those devices and systems were not used or maintained in a manner sufficient to prevent injury from asbestos dust or, conversely, that its mandates were followed by the Libby Claimants. Montana alleges the Libby Claimants deny they had access to the devices and systems or were instructed to use them. Montana alleges W.R. Grace has testimony and documents to support Montana's allegations.

Montana alleges W.R. Grace controlled the methods, processes, practices, means, and operations in the place of employment. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana alleges the acts and omissions of W.R. Grace were the cause of the injuries and damages allegedly sustained by those Plaintiffs. Montana alleges W.R. Grace has testimony and documents to support Montana's allegation.

Montana alleges many of the Libby Claimants filed workers' compensation claims against Debtors in which claims were made for asbestos-related disease, but that those Libby Claimants either do not have access to that information, deny having access to that information, or deny having made such claims. Montana alleges W.R. Grace and its workers' compensation insurers also subject to the automatic stay have testimony and documents to support Montana's allegation.

As such, an injunction under section 105(a) against the Libby Claimants relating to the State Court Actions is appropriate.

## III. CONCLUSION

The Bankruptcy Court incorrectly concluded that it did not have "related to subject matter jurisdiction" under 28 U.S.C. § 1334(b) to expand an injunction to include actions against the State of Montana involving the Debtors' Montana mining operations. Specifically, the Bankruptcy Court failed to follow the Third Circuit decision in *Gerard* which addressed the same issue presented to the Bankruptcy Court. While the Bankruptcy Court attempted to distinguish *Gerard* from the facts presented relating to the State of Montana, no such distinction makes sense. The Bankruptcy Court should have followed *Gerard* and concluded that related to subject matter jurisdiction exists.

Dated: May 27, 2008

Respectfully submitted,

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*

  /s/ Kevin J. Mangan
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801
(302) 252-4320
Counsel for the State of Montana

WCSR 3902063v4