## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF)<br>Adv. Proc. No. 01-771 |
| Debtors. | Jointly Administered |
| W.R. Grace & Co., *et al.*, | |
| Appellants, | Hon. Ronald L. Buckwalter<br>United States District Judge |
| v. | No. 08-cv-00246 |
| Libby Claimants, | |
| Appellees. | |

### APPELLEES' BRIEF

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Matthew B. McGuire (No. 4366)
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400

Daniel C. Cohn
Christopher M. Candon
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505

June 20, 2008

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF JURISDICTION ............................................................................1

ISSUE PRESENTED ON APPEAL ..........................................................................1

STATEMENT OF THE CASE ..................................................................................1

    Introduction .........................................................................................................1

        Procedural Background ....................................................................................4

SUMMARY OF ARGUMENT ................................................................................6

ARGUMENT .........................................................................................................6

I.      The Bankruptcy Court Properly Concluded that it Lacks
         Jurisdiction to Enjoin the State Litigation ..................................................6

        A.  Subject Matter Jurisdiction is a Threshold Requirement ....................................7

        B.  Related-To Jurisdiction Does Not Extend to the State Litigation .....................9

II.     The Bankruptcy Court Committed No Error in Declining to Follow
         Gerard Because Gerard is Not Law of the Case and Distinguishable
         from the Present Case ....................................................................................17

        A.  Gerard is Not Law of the Case ........................................................17

             1.  Grace's Request to Enjoin the State Litigation is
                Not the Same Case as Gerard ..........................................17

             2.  Law of the Case Does Not Apply Where Supervening
                Precedent Exists ..............................................................19

        B.  Gerard is Distinguishable from and Inapplicable to
            The State Litigation ......................................................................20

III.    If This Court Finds that Jurisdiction Does Exist, the Court Should
         Review the Merits of Requested Injunction Rather than Remand to
          the Bankruptcy Court ....................................................................................23

        A.   This Court Should Consider the Full Merits of the Appeal ............................23

B.  Even if this Court Concludes Jurisdiction Exists to Enjoin
the State Litigation, a Section 105 Injunction is Not Warranted ..................... 24

1.  Section 105(a) and the "Unusual Circumstances" Requirement ................. 24

a.  Grace had the burden of demonstrating "unusual circumstances" ........ 26

b.  Grace did not meet the first part of the "unusual circumstances"
test, requiring that Grace demonstrate an identity of interest
with the State ........................................................................................... 26

c.  Grace did not meet the second part of the "unusual circumstances"
test, requiring that Grace demonstrate that the State Litigation will
have an adverse effect on Grace's ability to reorganize ....................... 27

2.  Grace did not satisfy the traditional equitable factors relevant to
issuance of an injunction ........................................................................... 28

a.  The Likelihood of Success ................................................................. 29

b.  Irreparable Harm to the Estate ........................................................... 31

c.  Irreparable Harm to the Libby Claimants ........................................... 31

d.  Public Interest .................................................................................... 33

CONCLUSION ................................................................................................................. 34

# TABLE OF AUTHORITIES

## Cases

Acierno v. New Castle County, 40 F.3d 645 (3d Cir. 1994) ..........................................29

AFD Fund v. Transmed Foods, Inc. (In re AmeriServe Food Distribution, Inc.,
315 B.R. 24 (Bankr. D. Del. 2004) ..........................................19

A.H. Robins, Inc. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994 (4th Cir.),
cert. denied, 479 U.S. 876 (1986) ..........................................25

American Hardwoods, Inc. v. Deutsche Credit Corp.,
(In re American Hardwoods, Inc.), 885 F.2d 621 (9th Cir. 1989)..........................................8

Arizona v. California, 460 U.S. 605 (1983)..........................................18

Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)
115 Fed.Appx. 565 (3d Cir. 2004)… ..........................................6, 17-23

Casey v. Planned Parenthood of Southeastern Pennsylvania, 14 F.3d 848 (3d Cir. 1994) ..........18

Celotex Corp. v. Edwards, 514 U.S. 300 (1995) ..........................................9, 10

Chase Manhattan Bank v. Third Eighty-Ninth Assoc. (In re Third Eighty-Ninth Assoc., Inc.),
138 B.R. 144 (S.D.N.Y 1992)..........................................25

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988)..........................................18

Clinton v. Jones, 520 U.S. 681 (1997) ..........................................24, 33

Cunningham v. Pension Benefit Guar. Corp. (In re SiMetco, Inc.),
235 B.R. 609 (N.D. Ohio 1999)..........................................8

DeBeers Consol. Mines, Ltd. v. United States, 325 U.S. 212 (1945)..........................................29

Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co.,
54 B.R. 353 (Bankr. W.D. Wis. 1985)..........................................26

Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746 (5th Cir. 1995) ..........................................7, 8, 19, 24-26

Gray v. Hirsch, 230 B.R. 239 (S.D.N.Y 1999) ..........................................26

Hayman Cash Register Co. v. Sarokin, 669 F.2d 162 (3d Cir. 1982)..........................................17

In re Asbestos Litig., 271 B.R.118 (S.D. W. Va. 2001) ..........................................15

In re Ben Franklin Hotel Assocs., 186 F.3d 301 (3d Cir. 1999)....................................23

In re Cary Metal Products, Inc., 158 B.R. 459 (N.D. Ill. 1993)........................................8

In re Circle Land and Cattle Corp., 213 B.R. 870 (Bankr. D. Kan. 1997) ......................8

In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004) ........................ *passim*

In re Commonwealth Oil Refining Co., 805 F.2d 1175 (5th Cir. 1986)..........................28

In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000).................................................24

In re Crazy Eddie Sec. Litig., 104 B.R. 582, (E.D.N.Y 1989).........................................27

In re Deltacorp, Inc., 111 B.R. 419 (Bankr. S.D.N.Y. 1990)............................................8

In re Eagle-Picher Indus., Inc., 963 F.2d 855 (6th Cir. 1992)........................................28

In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.) (Wolin, J.),
mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom.,
Daimler Chrysler Corp. v. Official Comm. Of Asbestos Claimants,
537 U.S. 1148 (2003) ......................................................................................... *passim*

In re Johns-Manville Corp., 801 F.2d 60 (2d Cir. 1986) ..................................................8

In re Jacksen, 105 B.R. 542 (B.A.P. 9th Cir. 1989)..........................................................8

In re Kids Creek Partners, 248 B.R. 554 (Bankr. N.D. Ill. 2000)....................................8

In re Lowenschuss, 67 F.3d 1394 (9th Cir. 1995) .........................................................30

In re Millennium Seacarriers, Inc., 419 F.3d 83 (2d Cir. 2005) ....................................22

In re Nunez, 2000 WL 655983 (E.D.N.Y.)........................................................................8

In re S.T.R. Corp., 66 B.R. 49 (Bankr. N.D. Ohio 1986) .................................................8

Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,
123 F.3d 111 (3d Cir. 1997).........................................................................................19

MacArthur Co. v. Johns-Manville Corp., 837 F.2d (2d Cir. 1988) ...............................29

Oklahoma Federated Gold and Numistatics, Inc. v. Blodgett,
24 F.3d 136 (10th Cir. 1994) .......................................................................................27

O'Malley Lumber Co. v. Lockard (In re Lockard), 884 F.2d 1171 (9th Cir. 1989) ...............26, 27

Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187 (3d Cir. 1990) .......................29

Orr v. State of Montana, 106 P.3d 100 (Mont. 2004)...............................................................2, 12

Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) ............................................. *passim*

Phar-Mor, Inc. Sec Litig. V. Gen. Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.),
166 B.R. 57 (W.D. Pa. 1994)...........................................................................................26

Plumb v. Fourth Judicial Dist. Court, 927 P.2d 1011 (Mont. 1996)............................................16

Robbins v. Chase Manhattan Bank, N.A., 1994 WL 149597 *2 (W.D. Va. 1994)......................26

Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.),
352 F.3d 671 (2d Cir. 2003).............................................................................................25

Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847 (2d Cir. 1992) ..........................................23

Travelers Casualty and Surety Co. v. Chubb Indemnity Insurance Co.
(In re Johns-Manville Corp.), 517 F.3d 52 (2d Cir. 2008)............................................12

The Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000).................................................................29

U.S. v. Guy, 903 F.2d 1240 (9th Cir. 1990) .................................................................................18

United States v. Pepperman, 976 F.2d 123 (3d Cir. 1992) (quoting In re Morristown & Erie
Railroad Co., 885 F.2d 98 (3d Cir. 1989)........................................................................25

United States v. Sutton, 786 F.2d 1305 (5th Cir. 1986)................................................................25

Univ. Med. Ctr. v. Am. Sterilizer Co. (In re Univ. Med. Ctr.),
82 B.R. 754 (Bankr E.D. Pa. 1988) .................................................................................25

Williams v. Runyon, 130 F.3d 568 (3d Cir. 1997) .......................................................................18

Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994) ..............................................7 ,19

## Statutes

11 U.S.C. § 105......................................................................................................................19

11 U.S.C. § 524(g) ............................................................................................................11, 29, 30

28 U.S.C. § 157(a) ........................................................................................................9

28 U.S.C. § 157(b)(2)(L) ...........................................................................................22

28 U.S.C. § 158(a)(3)...................................................................................................1

28 U.S.C. § 1334(b) ...............................................................................................9, 19

Fed. R. Civ. P. 1 .........................................................................................................33

Fed. R. Civ. P. 59(e) ..................................................................................................18

Mont. Code Ann. § 27-1-703 (1997) .........................................................................16

## Rules

Third Circuit Internal Operating Procedure 5.5.4 (July 2002)......................................21

## Treatise

2 Collier on Bankruptcy ¶ 105.03 ..............................................................................25

## STATEMENT OF JURISDICTION

As set forth in the Opposition of Libby Claimants to Motion of W.R. Grace for Leave to Appeal Order Denying Injunction dated April 21, 2008,[1] the claimants injured by exposure to asbestos from the Debtors' operations in and near Lincoln County, Montana (the "Libby Claimants") assert that the Debtors (collectively, "Grace") and the State of Montana (the "State") have failed to demonstrate an exceptional circumstance for this appeal, and have not demonstrated that all other requirements for granting leave to appeal under 28 U.S.C. § 158(a)(3) have been met.

## ISSUE PRESENTED ON APPEAL

Whether the Bankruptcy Court properly concluded that it lacks subject matter jurisdiction to enter a preliminary injunction staying the Libby Claimants' pending litigation against a non-debtor party, the State, where the litigation asserts claims against the State for its own tortious conduct (the "State Litigation").

## STATEMENT OF THE CASE

### Introduction

The suffering of the people of Libby, Montana due to asbestos disease from exposure to Libby asbestos originating from the vermiculite mine and mill operated by Grace is well chronicled.[2] Through the Center for Asbestos Related Disease (the "CARD Clinic") in Libby, Montana, Dr. Alan C. Whitehouse and Dr. C. Brad Black have diagnosed at least 1,500 patients with asbestos related disease due to exposure to Libby asbestos in or near Lincoln County, Montana.[3] The CARD Clinic regularly treats about 1,200 of these 1,500 patients.[4] Since the

---

[1] [Adversary Proc. D.I. 505.]
[2] [Adversary Proc. D.I. 417, p.3.]
[3] [Id., Ex. C, ¶2.]
[4] [Id.]

CARD Clinic opened in 2000, more than 65 patients have died of cancer or respiratory failure related to asbestos disease.[5] Most of those deaths have occurred since Grace filed its Chapter 11 case on April 2, 2001.[6] Currently the CARD Clinic has over 80 patients on oxygen, and over 100 patients are severely limited, with short life expectancy.[7] Most of these require 24-hour care.[8]

But the devastating disease in Libby, said to be 10 times more deadly than more common types of asbestosis, was not caused by Grace alone. The State also engaged in tortious conduct injuring the people of Libby. In Orr v. State of Montana, 106 P.3d 100 (Mont. 2004), the Montana Supreme Court held that under the state's Industrial Hygiene Act, "the State had statutory duties to the public and persons confronted with workplace hazards," id. at 110, ¶ 40, and that "the State had discretion to determine what information to gather, but once that information was gathered, it had no discretion about whether to distribute it." Id. at 108, ¶ 25. The court noted: "[I]t appears that the record is bereft of any actions taken by the State to warn the miners or the Libby townspeople of their plight." Id. at 110, ¶ 37.

Libby Claimants continue to suffer and die, without medical coverage for end stage care. The Grace Libby Medical Program does not pay for nursing home care or 24-hour home care for patients with asbestos disease. The affidavits of those who have performed the 24-hour home care, and of those who are currently performing it, show enormous suffering and terrible stress.[9] For the Libby Claimants, especially those on oxygen, these services are critical as they are

---

[5] [Id., ¶7.]
[6] Since the Chapter 11 filing, at least 41 clients of the firm McGarvey, Heberling, Sullivan & McGarvey in Kalispell, Montana have died of asbestos related disease. [Id., Ex. D, ¶4.]
[7] [Id., Ex. C, ¶7.]
[8] [Id.]
[9] [Adversary Proc. D.I. 363, Ex. A-N.]

unable to care for themselves, leaving exhausted family members to bear the burden, with no help from Grace.

Grace has not only failed to provide the care that the Libby Claimants need and deserve, but has sought to prevent them from obtaining compensation in the tort system from the State and other recognized wrongdoers with no special relationship to Grace or its Chapter 11 case. Grace's attempt to "expand" to the State the preliminary injunction that Grace obtained early on its bankruptcy case to enjoin asbestos-related claims against insurers and other affiliates of Grace (the "Preliminary Injunction") goes far beyond the original purpose of the Preliminary Injunction, and far beyond the typical case where the debtor in a mass tort case seeks to enjoin suits against its insurers and affiliates to protect the bankruptcy estate. Rather, in direct contradiction to the consistent teachings of the Third Circuit—most recently in In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)—Grace seeks to shield a non-debtor party from on-going litigation that cannot, as a matter of law, have a direct impact on Grace's estate. In Combustion Engineering and two earlier decisions, the Third Circuit concluded that the bankruptcy court did not have jurisdiction to enjoin litigation among non-debtor parties merely because the defendant claimed a right of contribution or indemnity against the debtor – as the State does here. The Bankruptcy Court properly recognized this established, controlling Third Circuit precedent in its orders denying Grace's request to enjoin the State Litigation (the "Denial Order").[10]

---

[10] For convenience, "Denial Order" will refer to the following Bankruptcy Court orders: (i) Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana [Adversary Proc. D.I. 420] and Memorandum and Opinion [Adversary Proc. D.I. 419], both entered on April 16, 2007 (collectively, the "Injunction Denial Order") and (ii) Order Denying Motions to Reconsider [Adversary Proc. D.I. 484] and Memorandum Opinion [Adversary Proc. D.I. 483], both entered on March 31, 2008 (collectively, the "Reconsideration Order").

## **Procedural Background**

On April 2, 2001 (the "Petition Date"), Grace filed petitions for relief under Chapter 11 of the Code. On the same date, Grace filed an adversary complaint seeking, *inter alia*, the Preliminary Injunction.[11] The Bankruptcy Court entered a temporary restraining order on April 2, 2001,[12] and on May 3, 2001 entered the Preliminary Injunction sought by Grace.[13] On January 22, 2002, the Bankruptcy Court entered an order modifying the Preliminary Injunction to expand its scope to include certain additional affiliates of Grace.[14]

Prior to and after the Petition Date, the Libby Claimants commenced the State Litigation in the Montana District Courts for Lincoln, Cascade, and Lewis and Clark Counties against the State.[15] The State Litigation proceeded uninterrupted by and without involvement of Grace until August 22, 2005, more than four years after Grace entered Chapter 11.[16] On that day, Grace filed a motion[17] (the "State Injunction Motion") to expand the Preliminary Injunction to include the State Litigation. The Libby Claimants filed an opposition to the State Injunction Motion[18] joined in by the PI Committee representing all asbestos personal injury claimants.[19]

On December 19, 2005, the Bankruptcy Court held a hearing on the State Injunction Motion.[20] Sixteen months later (during which the Bankruptcy Court imposed a "temporary stay"

---

[11] [Adversary Proc. D.I. 359, ¶ 3.]
[12] [Id.]
[13] [Id.]
[14] [Adversary Proc. D.I. 87.]
[15] [Adversary Proc. D.I. 363, p. 5.]
[16] [Id.]
[17] Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 359.]
[18] Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 363.]
[19] Joinder of the Official Committee of Asbestos Personal Injury Claimants in the Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 365.] Grace filed a reply to both oppositions. Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 367.]
[20] [Bankr. Case D.I. 11473.]

of the State Litigation), the Bankruptcy Court ruled in the Injunction Denial Order on April 16, 2007, that "related-to subject matter jurisdiction does not exist for the purpose of expanding the injunction to include the [State Litigation]."[21]

In response to the Injunction Denial Order, on April 26, 2007, Grace[22] and the State[23] filed motions to reconsider (collectively, the "Motions for Reconsideration"). On May 14, 2007, the Libby Claimants[24] and the PI Committee[25] filed oppositions to the Motions for Reconsideration. On May 21, 2007, the Bankruptcy Court heard oral argument on the Motions for Reconsideration, along with another motion (the "BNSF Injunction Motion") by Grace to expand the Preliminary Injunction—this time to include the Libby Claimants' actions against BNSF Railway Company[26] ("BNSF"). On March 31, 2008, with the State Litigation having been stayed in the meantime through yet another "temporary stay,"[27] the Bankruptcy Court denied the Motions for Reconsideration on the same ground as before: the Bankruptcy Court lacks subject matter jurisdiction over the State Litigation.

On April 11, 2008, Grace filed a motion for leave to appeal the Denial Order.[28] The State of Montana joined in Grace's motion.[29] On April 21, 2008, the Libby Claimants filed an

---

[21] [Adversary Proc. D.I. 419, p. 11.]

[22] Debtors' Motion to Alter and Amend the Court's Order Denying Its Request to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 427.]

[23] State of Montana's Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction Entered on April 16, 2007. [Adversary Proc. D.I. 426.]

[24] Libby Claimants' Objection to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 442.]

[25] Opposition of the Official Committee of Asbestos Personal Injury Claimants to the Debtors' and the State of Montana's Motions to Reconsider the Court's Decision Denying a Stay of Litigation Against Montana. [Adversary Proc. D.I. 443.]

[26] Along with its predecessors, the Great Northern Railway Company, the Burlington Northern Railroad Company, and The Burlington Northern & Santa Fe Railway Company.

[27] [Bankr. Case D.I. 15948, p. 94:1.]

[28] Motion of W.R. Grace for Leave to Appeal Order Denying Injunction [Adversary Proc. D.I. 495.]

[29] [Dist. Crt. D.I. 1; Case No. 08-91 (subsequently consolidated with this appeal.)]

opposition to the motion.[30]  The Court has not yet ruled on Grace's motion.

In the meantime, the State sought and obtained from the Bankruptcy Court a stay pending appeal.  On May 13, 2008, the Libby Claimants' motion to dissolve the stay was denied by this Court.[31]  Thus, even though the Bankruptcy Court has ruled on two separate occasions that the federal courts have no jurisdiction to stay the State Litigation, the Libby Claimants have been barred for more than two and one-half years—and remain barred to this very day—from pursuing the State Litigation.

## SUMMARY OF ARGUMENT

The Libby Claimants respectfully submit that the Denial Order should be affirmed because the Bankruptcy Court properly (i) concluded that it lacks jurisdiction to enjoin the State Litigation under long-established Third Circuit precedent, and (ii) declined to follow the Third Circuit's non-precedential decision, Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.), 115 Fed.Appx. 565 (3d Cir. 2004).  In the event that this Court concludes that jurisdiction does exist, the Court should review the merits of Grace's request and deny the injunction.

## ARGUMENT

I.    **The Bankruptcy Court Properly Concluded that it Lacks Jurisdiction to Enjoin the State Litigation**

The Bankruptcy Court properly concluded that (1) it could not enjoin the State Litigation unless it had subject matter jurisdiction over the State Litigation, i.e., the State Litigation is "related to" Grace's bankruptcy within the meaning of 28 U.S.C. § 1334(b); and (2) under long-established Third Circuit precedent, affirmed and amplified in Combustion Engineering, the

---

[30] Opposition of Libby Claimants to Motion of W.R. Grace for Leave to Appeal Order Denying Injunction [Adversary Proc. D.I. 505.]
[31] [Dist. Crt. D.I. 7.]

State Litigation is not related to the Grace bankruptcy.  Accordingly, the Bankruptcy Court

correctly determined that it was without jurisdiction to issue the injunction requested by Grace.

### A.    Subject Matter Jurisdiction is a Threshold Requirement

A bankruptcy court has subject matter jurisdiction to enjoin litigation among third parties

only if the bankruptcy court has subject matter jurisdiction over the litigation sought to be

enjoined.  Combustion Engineering, 391 F.3d at 224-25; Feld v. Zale Corp. (In re Zale Corp.), 62

F.3d 746, 751 (5th Cir. 1995); see also Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 162 (7th

Cir. 1994).  In Combustion Engineering, the Third Circuit defined the threshold issue as

"whether the District Court properly exercised 'related to' jurisdiction over the non-derivative

asbestos claims against non-debtors Basic and Lummus" when it enjoined those claims.

Combustion Engineering, 391 F.2d at 224.  The court cautioned that "[w]hile aspects of the

[merits] analysis may be relevant to the 'related to' jurisdiction inquiry, these inquiries are

analytically distinct."  Id.  The court went on to conduct an extensive analysis of the

jurisdictional issue, concluding that the proponents of the injunction had failed to establish the

court's jurisdiction to enter it.  Id. at 225-33.  Reaching the merits of the injunction under Section

105(a) of the Bankruptcy Code only in order to determine whether it would be pointless to

remand for more fact-finding on the issue of jurisdiction,[32] id. at 233, the court then conducted a

separate analysis of whether the Bankruptcy Code permitted entry of the injunction.  Id. 233-39.

The Fifth Circuit similarly explained in Zale:

> Subject matter jurisdiction and power [under Section 105] are separate
> prerequisites to the court's capacity to act.  Subject matter jurisdiction is
> the court's authority to entertain an action between the parties before it.
> Power under Section 105 is the scope and forms of relief the court may
> order in an action in which it has jurisdiction.

---

[32] The remand would have solely concerned the issue of shared insurance between the debtor and the defendants in the enjoined litigation—an issue that Grace professes not to be present here.

Zale, 62 F.3d at 751 (citing American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American
Hardwoods, Inc.), 885 F.2d 621, 624 (9th Cir. 1989)).

The requirement for jurisdiction over the target litigation reflects the well-established
principle that Section 105 "does not provide an independent source of federal subject matter
jurisdiction." Combustion Engineering, 391 F.3d at 225. Accord, In re Johns-Manville Corp.,
801 F.2d 60, 63 (2d Cir. 1986); In re Jacksen, 105 B.R. 542, 544 (B.A.P. 9th Cir. 1989); In re
Nunez, 2000 WL 655983, at *8 (E.D.N.Y.); In re Kids Creek Partners, 248 B.R. 554, 561
(Bankr. N.D. Ill. 2000); Cunningham v. Pension Benefit Guar. Corp. (In re SiMetco, Inc.), 235
B.R. 609, 618 (N.D. Ohio 1999); In re Cary Metal Products, Inc., 158 B.R. 459, 465 (N.D. Ill.
1993); In re Circle Land and Cattle Corp., 213 B.R. 870, 877 (Bankr. D. Kan. 1997).  Section
105(a) is properly viewed as only an "aid to the exercise of jurisdiction." In re Deltacorp, Inc.,
111 B.R. 419, 420 (Bankr. S.D.N.Y. 1990).  A bankruptcy court may not invoke Section 105 to
give the court jurisdiction which it does not already possess.  In re S.T.R. Corp., 66 B.R. 49, 51
(Bankr. N.D. Ohio 1986).

The Bankruptcy Court correctly recognized this threshold principle and properly
concluded that before it could consider the merits of Grace's request to enjoin the State
Litigation, it was required to determine whether it had jurisdiction over the State Litigation.  As
stated by the Bankruptcy Court:

> While aspects of the §105(a) analysis may be relevant to "related-to"
> jurisdiction, the two inquiries are analytically distinct.  In re Combustion
> Engineering, Inc., 391 F.3d 190, 224-25 (3d Cir. 2004).  Section 105(a)
> "does not provide an independent source of federal subject matter
> jurisdiction."  Id. at 225.  Therefore, this court must establish subject
> matter jurisdiction before considering the merits of a §105(a) injunction.

Injunction Denial Order at p. 6.

**B.**    **Related-To Jurisdiction Does Not Extend to the State Litigation**

The Bankruptcy Court lacks jurisdiction over the Libby Claimants' litigation against the

State because under long-standing Third Circuit precedent, related-to jurisdiction under 28

U.S.C. § 1334(b) does not extend to litigation among non-debtor parties unless a judgment

rendered in the litigation would result in direct and automatic liability of the debtor's estate.  No

direct and automatic liability in Grace can result from the State Litigation.  Accordingly, the

Bankruptcy Court rightly determined that it was without jurisdiction to enter the injunction

sought by Grace.

The jurisdiction of bankruptcy courts is grounded in and limited by statute.  28 U.S.C.

§1334(b); 28 U.S.C. § 157(a).  Section 1334(b) provides that "the district courts shall have

original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in

or related to cases under title 11."  In turn, Section 157(a) permits the district court to refer "any

or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the

bankruptcy judges for the district."  Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).  In the

present case, since the claims of the Libby Claimants against the State arose neither under the

Bankruptcy Code nor in Grace's Chapter 11 case, the sole issue for the Bankruptcy Court was

whether those claims are "related to" the Chapter 11 case.

Courts have universally adopted the test first articulated by the Third Circuit in Pacor,

Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), for determining whether related-to jurisdiction

exists:

> A matter is related to the bankruptcy case for §1334 purposes if the
> outcome of that proceeding could conceivably have any effect on the
> estate being administered in bankruptcy . . . .  Moreover, an action is
> related to bankruptcy if the outcome could alter the debtor's rights,
> liabilities, options or freedom of action (either positively or negatively)
> and in any way impacts upon the handling and administration of the

bankruptcy estate.

Applying this standard, the Third Circuit held that related-to jurisdiction did not extend to personal injury litigation between non-debtor parties, neither of them related to the Chapter 11 debtor, stating:

> At best, [the personal injury lawsuit] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the [the personal injury lawsuit] would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the [the personal injury lawsuit], it could not be bound by res judicata or collateral estoppel.

Id. at 995. Accordingly, the Third Circuit concluded:

> there would be **no automatic creation of liability** against Manville on account of a judgment against Pacor. Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the [the personal injury lawsuit] could not give rise to any automatic liability on the part of the estate. All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action . . . . There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

Id. at 995-96 (emphasis added). Since the Chapter 11 debtor could not be bound **automatically** by the litigation, the litigation could not affect the estate in any way and thus was not related to the debtor's Chapter 11 case. Id.

Pacor has been expressly approved by the United States Supreme Court. Celotex, 514 U.S. at 308. And the Third Circuit has confirmed the on-going vitality of Pacor in Combustion Engineering, 391 F.3d at 225-27, and In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.), mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom. Daimler Chrysler Corp. v. Official Comm. of Asbestos Claimants, 537 U.S. 1148 (2003).

In Combustion Engineering, a prepackaged Chapter 11 case, the plan provided for all asbestos claims—including claims against non-debtor affiliates Basic, Inc. and ABB Lummus Global, Inc.—to be channeled to a post-confirmation trust created under Section 524(g) of the Bankruptcy Code. The plan provided for all three entities, along with their respective parent companies, to make substantial contributions of cash and other assets to the post-confirmation trust. Fulfilling a prerequisite to these contributions, the bankruptcy court entered an injunction under Section 105 barring the assertion of asbestos claims against Basic and Lummus. After a thorough analysis of Pacor and Federal-Mogul, the Third Circuit held that related-to jurisdiction cannot be extended to claims of asbestos plaintiffs against the non-debtors (Basic and Lummus) simply because of their corporate affiliation with the debtor or because the substantial financial contributions to the plan by the non-debtor affiliates depended on a channeling injunction in their favor. Combustion Engineering, 391 F.3d at 225-27. Accordingly, the court considered the other factors advanced by the debtor as grounds for related-to jurisdiction: a unity of interest based on the debtor's obligations of indemnity or contribution to the non-debtor affiliates, and the existence of shared insurance between the debtor and the affiliates.[33]

The Combustion Engineering decision rejected the debtor's assertion that the non-debtor affiliates' potential rights of contribution or indemnity from the debtor established related-to jurisdiction. Id. at 230-32. In so doing, the court specifically rejected the debtor's contention that common production sites between the debtor and affiliates provided "a sufficient basis for the kind of 'unity of interest' that could give rise to 'related to' jurisdiction." Id. at 232. In the State Litigation, of course, the State is not even in the business of producing asbestos products. Rather, liability in the State is predicated on the State's own violation of a governmental duty to

---

[33] There is indisputably no shared insurance between Grace and the State, so this factor will not be addressed in this Brief.

warn about hazards at Grace's production sites. <u>Orr</u>, 106 P.3d at 108. The Court of Appeals for the Second Circuit recently emphasized that this independent legal duty is dispositive, holding that the bankruptcy and district courts erred by asserting subject matter jurisdiction over litigation between non-debtor parties based on the factual relationship of the litigation claims to the Chapter 11 debtor, since the defendant in the non-bankruptcy litigation had "an independent legal duty [imposed by state law] in its dealing with plaintiffs, notwithstanding the factual background in which the duty arose." <u>Travelers Casualty and Surety Co. v. Chubb Indemnity Insurance Co. (In re Johns-Manville Corp.)</u>, 517 F.3d 52, 63 (2d Cir. 2008). But even if the fact that the inspections made by the State and the warnings it failed to issue concerned Grace's operations in Libby could be shoe-horned into the concept of a "common production site" between Grace and the State, <u>Combustion Engineering</u> makes it crystal clear that this factor does *not* represent a "unity of interest" that could confer jurisdiction. <u>Combustion Engineering</u>, 391 F.3d at 231-32.

This aspect of <u>Combustion Engineering</u> was not new, but simply an application of principles long settled under <u>Pacor</u> and <u>Federal-Mogul</u>. As the court in <u>Combustion Engineering</u> observed, <u>Pacor</u> rejected related-to jurisdiction even though the non-debtor's exposure to liability resulted from sale of products that the debtor manufactured, and <u>Federal-Mogul</u> found no jurisdiction even though the non-debtors' exposure to liability resulted from incorporating the debtor's products into their own. <u>Combustion Engineering</u>, 391 F.3d at 231-32. The court continued:

> In both cases the unity of exposure created by asbestos contained in a common product was insufficient to give rise to "related to" jurisdiction when the third-party claim would not directly result in liability for the debtor.

<u>Id</u>. at 232.

12

The District Court's decision in <u>Federal-Mogul</u> explains why a claim against a non-debtor who merely asserts a right of contribution or indemnity does not directly result in liability for the debtor.  In <u>Federal-Mogul</u>, non-debtors Chrysler, Ford and other automakers who were codefendants with the debtors in thousands of asbestos-related tort lawsuits (referred to as the Friction Products Litigation) sought to transfer those cases to the Delaware Bankruptcy Court, arguing that the tort suits were "related to" the debtors' Chapter 11 case so as to confer bankruptcy jurisdiction.  Applying <u>Pacor</u>, District Court held that "related-to bankruptcy jurisdiction [does] not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." <u>Federal-Mogul</u>, 282 B.R. at 309.  The debtor, although a putative indemnitor, had no cause for concern that common facts would be litigated against the non-debtors, because no factual determination could be binding on the debtor's estate.  <u>Id</u>. at 306.  An indemnitor can be bound by an underlying judgment only if given an opportunity to be heard and defend, but since the automatic stay prevents the debtor from being required to defend, the debtor cannot be bound:

> Implicit in <u>Pacor's</u> rationale is that a debtor may not be prejudiced by its failure to defend a lawsuit against a third-party common-law indemnitee without *de facto* depriving the debtor of the benefit of the automatic stay of litigation against it.

<u>Id</u>. at n.3.  Accordingly:

> The Court sees no justification to take the situation of these movants [the non-debtor codefendants of the debtor in asbestos litigation] outside of the rule of <u>Pacor</u>.  **A judgment against them will not bind the debtors.**  No asset of the estate is threatened nor is any re-ordering of creditors in the offing.  It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future.  It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Product Claims will affect the estate.

Id. at 311 (emphasis added). The District Court concluded: "To the extent that the validity of an indemnity agreement is in doubt, the directness between the third-party action and a judicial ruling that will affect the estate is attenuated." Federal-Mogul, 282 B.R. at 311-12. The District Court's denial of jurisdiction was upheld by the Third Circuit, which concluded:

> Any indemnification claims that the [automakers] might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy proceeding . . . .

Federal-Mogul, 300 F.3d at 382.

Before Combustion Engineering, it was possible (albeit incorrect) to distinguish Pacor and Federal-Mogul on the basis that those decisions involved attempts to remove litigation to the bankruptcy court, rather than attempts to enjoin such litigation. But in Combustion Engineering, the Third Circuit applied the exact same analysis of related-to jurisdiction to the injunction situation. As the Bankruptcy Court properly recognized in the Injunction Denial Order, it is now clear that related-to jurisdiction must exist for litigation to be enjoined by the bankruptcy court, just the same as it must exist for litigation to be removed to the bankruptcy court. Injunction Denial Order at p. 6.

The following chart succinctly summarizes the Third Circuit case law on whether subject matter jurisdiction exists to enjoin non-debtor litigation based on claims for indemnification or contribution by the non-debtor defendant.

**Jurisdiction Based on Indemnification or Contribution**

| Indemnification/ Contribution | Disputed | Clear |
|---|---|---|
| Common Law | No | No |
| Contractual | No | ? |

- <u>Common Law/Disputed</u> and <u>Common Law/Clear</u>: No subject matter jurisdiction. The Third Circuit has ruled three times that a common law right of indemnity or contribution against a debtor that would arise from judgment in a litigation among non-debtors does not cause the litigation to be "related to" the debtor's bankruptcy for purposes of establishing federal jurisdiction. <u>Combustion Engineering</u>, 391 F.3d at 232; <u>Federal-Mogul</u>, 300 F.3d at 382; <u>Pacor</u>, 743 F.2d at 994-95.

- <u>Contractual/Disputed</u>: No subject matter jurisdiction. In instances where the non-debtor party claims a right of indemnity under a contract rather than common law, <u>Federal-Mogul</u> made clear that the right to indemnification must be direct and automatic. Upon examining the indemnification agreements submitted by Chrysler in the <u>Federal-Mogul</u> case, the District Court stated that "the question whether this purported indemnity agreement would be determined to bind the [debtors] is open and one not easily resolved. The Court is unwilling again to rest subject matter jurisdiction on this tenuous support." <u>Id.</u> at 311 (quoting <u>In re Asbestos Litig.</u>, 271 B.R. 118, 124 (S.D. W. Va. 2001)).

- <u>Contractual/Clear</u>: Subject matter jurisdiction unclear. Although not pertinent to the State Litigation, the Third Circuit has left unclear the issue of whether an indemnification agreement *to which the debtor asserts no defense* would be sufficient to establish related-to jurisdiction. On the one hand, the Third Circuit indicated in *dictum* that an uncontested contractual indemnity from the debtor held by the defendant in non-debtor litigation could establish related-to jurisdiction. <u>Pacor</u>, 743 F.2d at 995. On the other hand, the logic and rationale of <u>Pacor</u>, <u>Federal-Mogul</u> and <u>Combustion Engineering</u> support the opposite result by establishing that a judgment against the defendant in the non-debtor litigation would not automatically result in liability of the bankruptcy estate since the debtor—protected by the automatic stay from any adverse effect of the non-bankruptcy litigation—would be free to defend the non-debtor defendant's indemnity claim on any basis, including issues already determined as between the non-debtor parties. <u>Pacor</u>, 743 F.2d at 995; <u>Federal-Mogul</u>, 282 B.R. at 309.

The Bankruptcy Court followed this established precedent and correctly determined that

<u>Pacor</u>, <u>Federal-Mogul</u>, and <u>Combustion Engineering</u> required the conclusion that the Bankruptcy

Court lacked jurisdiction to enjoin the State Litigation. As stated by the Bankruptcy Court:

- [In <u>Federal-Mogul</u>] [t]he bankruptcy court accurately reiterated the holding of <u>Pacor</u> stating that jurisdiction exists where "the potential impact on the debtor's estate would have been direct with no intervening adjudication or

joinder of issue necessary for judgment against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate." Injunction Denial Order at p. 8 (citing <u>Federal-Mogul Global, Inc.</u>, 282 B.R. at 307).

- The position [of] claims in the [State Litigation] is nearly identical to the claims in <u>Pacor</u> and <u>Federal-Mogul</u>. Before any effect on the Debtors can be realized, the State of Montana must first be found liable in state court and then pursue its claim for indemnification in bankruptcy court. Injunction Denial Order at p. 9.

- Montana law prohibits the State of Montana from litigating or establishing a factual basis (i.e. percentage of comparative fault) against Debtors for either contribution or indemnity during the course of the [State Litigation] . . . . A judgment against the State of Montana will not bind Debtors. An intervening adjudication is necessary to affect the estate. Injunction Denial Order at pp. 9-10.

- In [the State Litigation], it is the actions of the State of Montana, not Debtors, which are the basis of the claims. Injunction Denial Order at p. 10.

- Here … , as in <u>Pacor</u> and <u>Federal-Mogul</u>, the [State Litigation] will not be binding on the estate and will not have a direct impact on the estate without additional intervening adjudication. Injunction Denial Order at p. 11.

Grounded as it is in controlling Third Circuit precedent, the foregoing analysis is unassailable.

If a state court verdict were to enter against the State, the State would need to return to the Bankruptcy Court to seek allowance of a claim for indemnity or contribution against Grace—just like Pacor in the <u>Pacor</u> case. In the contested matter relating to allowance of the State's claim, Grace will not be bound by any determination or order in the State Litigation.[34] While the Third Circuit may have left the door open to consider whether an undisputed contractual indemnification claim is sufficient to confer subject matter jurisdiction on the bankruptcy court, the State does not have a contract with Grace and, even if it did, Grace has repeatedly disputed

---

[34] Apart from the federal principles discussed above, Montana law prohibits the State from litigating or establishing a factual basis (i.e., percentage of comparative fault) against Grace for either contribution or indemnity during the course of the State Litigation. <u>See generally</u> Mont. Code Ann. § 27-1-703 (1997); <u>Plumb v. Fourth Judicial Dist. Court</u>, 927 P.2d 1011 (Mont. 1996) (entry of findings against a non-party violates substantive due process).

the validity of the State's claims.[35]  The Third Circuit has not left the door open for assertion of

federal jurisdiction where the right of indemnity is non-contractual or where it is disputed.  Here

it is both.  Absent a demonstration by Grace and the State that the State Litigation is

distinguishable in any meaningful way from the situation in Pacor and Federal-Mogul, the Denial

Order must be affirmed as the Bankruptcy Court lacks jurisdiction over the State Litigation.

## II.    The Bankruptcy Court Committed No Error In Declining to Follow Gerard Because Gerard is Not Law of the Case and Distinguishable from the Present Case

In the face of this overwhelming Third Circuit precedent, Grace and the State instead

maintain that the Third Circuit's panel opinion in Carol Gerard v. W.R. Grace & Co. (In re W.R.

Grace & Co.), 115 Fed.Appx. 565 (3d Cir. 2004), is law of the case and, thus, the Bankruptcy

Court erred in declining to follow the panel's ruling.  However, the doctrine of law of the case

has no application to Grace's request to enjoin the State Litigation because (a) this request for a

new injunction is **not the same case** as Gerard and (b) law of the case does not apply because

Combustion Engineering is a supervening precedent that overrules Gerard (or, more precisely,

Grace's and the State's interpretation of Gerard).  Thus, Gerard would not govern this appeal

even if it were not, in fact, distinguishable.

### A.    Gerard is Not Law of the Case

#### 1.    Grace's Request to Enjoin the State Litigation is Not the Same Case as Gerard

Under the law of the case doctrine, once an issue has been decided it will not be

relitigated in the same case except in unusual circumstances.  Hayman Cash Register Co. v.

Sarokin, 669 F.2d 162, 165 (3d Cir. 1982).  "[T]he doctrine posits that when a court decides

---

[35]  See State Injunction Motion [Adversary Proc. D.I. 359, ¶ 25, n.12] ("The Debtors do not concede that the State possesses a valid indemnification and/or contribution claim against them.  The State, however, alleged such rights in its Third-Party Complaint and its filed proof of claim.")

upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983) (dictum)); see also Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997). The purpose of the doctrine is to "maintain consistency and avoid reconsideration of matters once decided *during the course of a single continuing lawsuit*." Casey v. Planned Parenthood of Southeastern Pennsylvania, 14 F.3d 848, 856 (3d Cir. 1994) (emphasis added; citations omitted).

Grace's request for an injunction against the State Litigation does not concern the same issues, does not involve the same parties, and, therefore, is not the same case as Gerard. The happenstance (or stratagem) that Grace sought to amend the complaint in a pre-existing adversary proceeding to include the State and the Libby Claimants rather than file a new adversary proceeding does not cause Grace's request for a new injunction against different litigation among different parties[36] to be the same "case" as the injunction against the Gerard litigation for purposes of "law of the case." See U.S. v. Guy, 903 F.2d 1240, 1242 (9th Cir. 1990) (law of the case does not apply where court is faced with a similar dispute involving different parties). Grace's and the State's arguments about merely extending or modifying the existing Preliminary Injunction are misleading; the State does not even arguably fall within any category of protected parties under the existing Preliminary Injunction. Accordingly, Grace carries the burden of proving in this case, under the heightened standard of Fed. R. Civ. P. 59(e),

---

[36] See Debtors' Motion for Leave to Further Amend Complaint dated August 22, 2005 [Adv. Proc. D.I. 360], whereby Grace seeks to amend the original complaint to include the State and the Libby Claimants. As an exhibit to that motion, Grace attached its list of the Libby Claimants. Many of the Libby Claimants were not plaintiffs in the Gerard matter versus Maryland Casualty Company, and of course the State was not a party in Gerard. A list of Libby Claimants who have sued the State but not Maryland Casualty Company, along with an affidavit of counsel, is attached to the Libby Claimants' Objection to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana [Adv. Proc. D.I. 442].

why a new injunction should issue for the State's benefit.  For these reasons alone, law of the case does not govern Grace's request to enjoin the State Litigation.

### 2.    Law of the Case Does Not Apply Where Supervening Precedent Exists

Law of the case does not apply where a supervening decision has changed an applicable rule of law.[37] Magnesium Elektron, 123 F.3d at 116 -117; AFD Fund v. Transmed Foods, Inc. (In re AmeriServe Food Distribution, Inc.), 315 B.R. 24 (Bankr. D. Del. 2004).  Grace's and the State's interpretation of Gerard places it *squarely* contrary to Combustion Engineering—a later decision of the Third Circuit, and one expressly decided on a precedential basis in contrast to Gerard, which was issued as a non-precedential decision.  In Gerard, the Third Circuit panel vacated a District Court order that the Bankruptcy Court lacked related-to jurisdiction for the Bankruptcy Court to expand the Preliminary Injunction to include the Libby Claimants' independent actions against Maryland Casualty Company.   The decision is at odds with Combustion Engineering in permitting an injunction against litigation among third parties without requiring that the court be able to exercise jurisdiction over that litigation.  As discussed above, Combustion Engineering made clear in the Third Circuit what had previously been made clear in the Fifth and Seventh Circuits: that a bankruptcy court must establish jurisdiction over the matter to be enjoined before issuing a Section 105 injunction.  Combustion Engineering, 391 F.3d at 224-25; Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 751 (5th Cir. 1995); Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 162 (7th Cir. 1994)("only after [the non-debtor lawsuits] are shoehorned into the bankruptcy court on authority of Section 1334(b) can such suits be stayed by authority of Section 105").

---

[37] The three primary exceptions to the law of the case doctrine, which permit reconsideration of an issue previously decided in a case, include situations in which: (i) new evidence is available; (ii) a supervening new law has been announced; or (iii) the earlier decision was clearly erroneous and would create manifest injustice.  See Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 -117 (3d Cir. 1997).

**B.**    <u>Gerard is Distinguishable from and Inapplicable to the State Litigation</u>

In addition to not being law of the case, the <u>Gerard</u> opinion is distinguishable from and inapplicable to the State Litigation because (1) <u>Gerard</u> was expressly rendered as a non-precedential decision, (2) the Bankruptcy Court correctly followed and applied long-established Third Circuit precedent contrary to <u>Gerard</u>, (3) Bankruptcy Court fully considered and distinguished the <u>Gerard</u> decision, and (4) <u>Gerard</u> is, in any event, inapplicable to the present situation because the outcome resulted largely from its odd procedural posture, not present in the instant case.

The <u>Gerard</u> decision preceded <u>Combustion Engineering</u> and was expressly rendered on a non-precedential basis under the Third Circuit's Internal Operating Procedure 5.5.4. Accordingly, the Bankruptcy Court need not have cited <u>Gerard</u> at all. However, the Bankruptcy Court did address <u>Gerard,</u> in both the Injunction Denial Order and the Reconsideration Order. As the Bankruptcy Court itself stated in the Reconsideration Order:

> [T]his court did not "overlook" the <u>Gerard</u> case. Indeed, the court expressly cited <u>Gerard</u> and distinguished it on its facts.

Reconsideration Order at p. 8. The Bankruptcy Court distinguished <u>Gerard</u> on the basis that in <u>Gerard</u> Maryland Casualty Company asserted contractual indemnification against the Grace estate whereas, in the instant case, the State asserted common law contribution and indemnity. Reconsideration Order at pp. 7-11, <u>citing</u> Injunction Denial Order, 366 B.R. at 298, 301-02. Although the Libby Claimants regard <u>Gerard</u> as just plain wrong, the Bankruptcy Court certainly drew a valid distinction between <u>Gerard</u> and the present case. Most importantly, the Bankruptcy Court's decision in the present case is solidly grounded in Third Circuit precedent, including the <u>Combustion Engineering</u> decision which had not yet been rendered at the time of <u>Gerard</u>.

It should also be noted that <u>Gerard</u> is distinguishable from the instant case by reason of its procedural posture. The <u>Gerard</u> panel imposed the burden of proof on the Libby Claimants because they sought to clarify or modify a preliminary injunction that already included their independent claims against Maryland Casualty Company (the Libby Claimants had not opposed initial entry of the injunction). This procedural peculiarity drove the <u>Gerard</u> decision. Specifically, the <u>Gerard</u> panel stated:

- But, here, the issue before the Bankruptcy Court was not whether it should exercise jurisdiction over suits pending elsewhere, nor even whether it should enjoin such suits, but, rather, whether it should modify an injunction already entered in the Bankruptcy Court in favor of Grace and [Maryland Casualty Company]. <u>Gerard</u>, 115 Fed.Appx. at 567.

- It is important to note at the outset that the appeal before us is not an appeal from the entry of the Injunction, but, rather, from the Bankruptcy Court's refusal to interpret, alter, or reconsider the Injunction after its entry as Plaintiffs urge. Due to this procedural fact, it was Plaintiffs, as moving parties, who had the burden to demonstrate to the court that the Injunction was somehow improper as to them. This they failed to do. <u>Id</u>. at 568.

- We have little difficulty, especially given the constraints of Rule 60(b), in concluding that the Bankruptcy Court did not err in refusing to modify its previous grant of an injunction broad enough in scope to include a stay of The Lawsuit. <u>Id</u>. at 569.

The <u>Gerard</u> panel criticized the District Court's order vacating the injunction for lack of subject matter jurisdiction on the basis that the District Court did not appreciate "the nature of the proceeding before the Bankruptcy Court." <u>Id</u>. at 568. Because the appeal concerned the Bankruptcy Court's refusal to modify an already-entered injunction, the <u>Gerard</u> panel stated that the "issue of bankruptcy jurisdiction to entertain the motion relating to the Injunction was in reality a non-issue." <u>Id</u>. The panel stated that the order on appeal was "'related to' the case" because it resulted from an adversary proceeding seeking injunctive relief that Grace initiated; thus, the Bankruptcy Court had jurisdiction to enforce its own order. <u>Id</u>. at 567-68. This is an

21

important distinction between the present case and <u>Gerard</u> since it is, or course, axiomatic that bankruptcy courts "retain jurisdiction to enforce and interpret their own orders." <u>In re Millennium Seacarriers, Inc.</u>, 419 F.3d 83, 97 (2d Cir. 2005). When <u>Gerard</u> is viewed in this light, the issue presented in this instance is strikingly different. This appeal does not concern an attack on a previously issued injunction. This appeal concerns the Bankruptcy Court's refusal to issue an injunction in the first instance.

It is a misreading of <u>Gerard</u> for Grace to argue that <u>Gerard</u> establishes that bankruptcy jurisdiction exists to enjoin litigation among third parties because the injunction was sought by the debtor as distinct from some other party in interest. Most likely the <u>Gerard</u> panel meant no more than that, when someone asks the bankruptcy court to modify a previously entered injunction, the relevant jurisdictional issue is whether the bankruptcy court has jurisdiction to consider the modification request rather than whether the bankruptcy court had jurisdiction to enter the injunction in the first place. Whether or not the panel was correct in this regard, it is clear that the procedural posture of <u>Gerard</u>—involving a motion to modify or clarify an already-issued injunction rather than a motion to obtain an injunction in the first instance—permeated the panel's analysis of jurisdiction. Right or wrong, <u>Gerard</u> is simply irrelevant to the Denial Order because **in the current situation** the issue is whether the Bankruptcy Court has jurisdiction to enter a new injunction, not limit an injunction that has already been entered.

Grace is incorrect in characterizing <u>Pacor</u>, <u>Federal-Mogul</u>, and <u>Combustion Engineering</u> as "inapposite" because "[i]n each of them, the courts were not dealing with adversary proceedings initiated by debtors that involved core issues in the bankruptcy cases."[38] <u>Combustion Engineering</u> involved a core proceeding (confirmation of a Chapter 11 plan),[39] a

---

[38] Grace Brief at p. 10.
[39] Confirmation of a plan is a core proceeding. 28 U.S.C. § 157(b)(2)(L).

requested injunction rather than removal, and the requesting party was the debtor. Grace's further explanation that "in Combustion Engineering, bankruptcy [injunctive?] protection was being sought not only on behalf of the debtor, but also on behalf of two affiliated companies of the debtor that sold 'different products [from the debtor], [which were] involved in different asbestos-containing materials, and were sold to different markets"[40] is not a distinction at all but just a restatement of the obvious: that in Combustion Engineering, as in the instant case, the injunction sought by the debtor was for the protection of a non-debtor defendant.

In sum, Grace's and the State's reliance on Gerard is misplaced. Gerard is an expressly non-precedential decision superseded by, in contravention of and distinguishable from Combustion Engineering and the earlier line of decisions from the Third Circuit and elsewhere upon which it relies. To apply Gerard, this Court would need to overrule Combustion Engineering.

## III.    If This Court Finds that Jurisdiction Does Exist, the Court Should Review the Merits of Requested Injunction Rather than Remand to the Bankruptcy Court

### A.    This Court Should Consider the Full Merits of the Appeal

Notwithstanding the pleas of Grace and the State to remand the appeal back the Bankruptcy Court,[41] this Court should consider the full merits of the appeal. The Libby Claimants assert that the record before the Bankruptcy Court cannot support either related-to jurisdiction or the merits of the requested injunction. See In re Ben Franklin Hotel Assocs., 186 F.3d 301, 306 (3d Cir. 1999) ("Because the record has been sufficiently developed for us to resolve this legal issue, we need not remand to the District Court to consider it in the first instance."); see also Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850-51 (2d Cir. 1992)

---

[40] Grace Brief at p. 11 (quoting Combustion Engineering, 391 F.3d at 231).
[41] Grace Brief at p. 11; State Brief at p. 6.

("An appellate court has the power to decide cases on appeal if the facts in the record adequately support the proper result."). Since the Bankruptcy Court took *sub judice* the question whether there is jurisdiction and, if so, grounds to issue the injunction sought by Grace, the record is sufficient for this Court to reach the same issue. Grace declined to offer any testimony, or even affidavits, in support of the requested injunction, so the usual considerations regarding a trial court's evaluation of evidence do not apply.

### B.    Even if this Court Concludes Jurisdiction Exists to Enjoin the State Litigation, a Section 105 Injunction is Not Warranted

Even where a bankruptcy court has jurisdiction to enjoin actions between non-debtors, the Bankruptcy Court is still constrained by the limits on such injunctions established under federal law. The Supreme Court has established that, in considering a stay of any civil litigation, federal courts must give paramount importance to the rights of the plaintiff. Clinton v. Jones, 520 U.S. 681, 707-08 (1997). This requirement does not disappear because the litigation is related to a bankruptcy proceeding. Indeed, when the injunction of non-debtor litigation is in the context of a Chapter 11 case, it is established that even if the bankruptcy court has jurisdiction, it may enter the injunction only if the moving party demonstrates the existence of (i) unusual circumstances warranting the injunction and (ii) the traditional prerequisites to issuance of an injunction. See Zale, 62 F.3d at 761, 765. Grace failed to meet either requirement in support of its request to enjoin the State Litigation.

### 1.    Section 105(a) and the "Unusual Circumstances" Requirement

Section 105(a) is intended to assure that bankruptcy courts may take whatever actions are necessary or appropriate to further the purposes of the substantive provisions of the Code. However, there are limits to the relief that a court may grant under Section 105. Combustion Engineering, 391 F.3d at 236; In re Continental Airlines, 203 F.3d 203, 211 (3d Cir. 2000). As

the Third Circuit has stated, "Section 105 does not 'give the court power to create substantive rights that would otherwise be unavailable under the Code.'" United States v. Pepperman, 976 F.2d 123, 131 (3d Cir. 1992) (quoting In re Morristown & Erie Railroad Co., 885 F.2d 98, 100 (3d Cir. 1989)); see also United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986). Courts have indicated that the Section 105 power must be used sparingly and in extraordinarily limited circumstances. Univ. Med. Ctr. v. Am. Sterilizer Co. (In re Univ. Med. Ctr.), 82 B.R. 754, 757 (Bankr. E.D. Pa. 1988); see also Chase Manhattan Bank v. Third Eighty-Ninth Assoc. (In re Third Eighty-Ninth Assoc., Inc.), 138 B.R. 144, 146 (S.D.N.Y. 1992). Section 105(a) in no sense constitutes "'a roving commission to do equity.'" Combustion Engineering, 391 F.3d at 236 (quoting Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 680 (2d Cir. 2003)).

Consistent with these principles and recognizing that a particularly high standard is required to enjoin litigation between non-debtor parties, courts have held that "[i]f the bankruptcy court does not determine that **unusual circumstances exist**, the court may not enter an injunction of the third-party actions." Zale, 62 F.3d at 761 (emphasis added). Unusual circumstances exist (1) when the non-debtor and the debtor enjoy such an identity of interests that the suit against the non-debtor is essentially a suit against the debtor, and (2) when the third-party action will have an adverse impact on the debtor's ability to reorganize. Id. See also 2 Collier on Bankruptcy ¶ 105.03[2][b][i][A] (15th Ed. 2002). An example of unusual circumstances would be where the third party litigation consists of an action against directors or officers of the debtor for acts within the scope of their corporate duties. See, e.g., A.H. Robins, Inc. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994 (4th Cir. 1986). Even where the "unusual circumstances" test has been met, the party seeking the injunction must also satisfy the

traditional four-part test for issuance of an injunction. Zale, 62 F.3d at 765.

### a.      Grace had the burden of demonstrating "unusual circumstances."

The burden is on the party seeking an injunction under Section 105 of the Bankruptcy Code to establish its entitlement to this relief. E.g., Robbins v. Chase Manhattan Bank, N.A., 1994 WL 149597, *2 (W.D. Va. 1994). Mere speculation about harm to the reorganization process does not constitute the type of proof required to entitle debtors to an injunction against third party actions. Gray v. Hirsch, 230 B.R. 239, 243-44 (S.D.N.Y. 1999); Phar-Mor, Inc. Sec. Litig. v. Gen. Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.), 166 B.R. 57, 62-63 (W.D. Pa. 1994); Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co., 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985).

### b.      Grace did not meet the first part of the "unusual circumstances" test, requiring that Grace demonstrate an identity of interest with the State.

As discussed above,[42] it is undisputed that Grace bears no identity of interest to the State—as would be required to meet the first part of the "unusual circumstances" test. Obviously, the State is not a director, officer or other insider of Grace. The State is not an insurer of Grace. The State's role – conducting periodic inspections of the Libby Mine – did not align the State with Grace but made the State a potential adversary. The State Litigation is based upon the independent breach by the State of its own statutory duty to the Libby Claimants to disseminate the critical information derived from its inspections. Orr, 106 P.3d at 111.

The unusual circumstances exception does not apply where a third party codefendant has obligations that are "independent and primary, not derivative of those of the debtor." O'Malley Lumber Co. v. Lockard (In re Lockard), 884 F.2d 1171, 1179 (9th Cir. 1989). In Lockard, a

---

[42] See pages 11-12 above.

26

creditor of a building contractor commenced an action against the contractor's bonding company. When the contractor subsequently filed a Chapter 11 petition, it sought to extend the automatic stay to the action against the bonding company. The debtor argued that there was such an identity of interest between the debtor and the bonding company—in part because of the bonding company's rights back against the debtor—that the action against the bonding company should also be stayed. The court in <u>Lockard</u> denied the injunction because a surety's obligations are independent and primary, not derivative of those of the debtor. <u>Id</u>. at 1179. Other cases have similarly found that independent and primary actions against third parties do not constitute unusual circumstances, even where the plaintiff would have similar direct claims against the debtor. <u>See</u>, <u>e.g.</u>, <u>Oklahoma Federated Gold and Numistatics, Inc. v. Blodgett</u>, 24 F.3d 136 (10th Cir. 1994) (action against president of debtor for fraud not enjoined where claims were separate and independent from claims against the debtor); <u>In re Crazy Eddie Sec. Litig.</u>, 104 B.R. 582, 584 (E.D.N.Y. 1989) (except where the liability of the non-debtor defendants is automatically imputed to the debtor by operation of law, an injunction staying actions against the non-debtor defendants is not warranted).

> **c.    Grace did not meet the second part of the "unusual circumstances" test, requiring that Grace demonstrate that the State Litigation will have an adverse effect on Grace's ability to reorganize.**

The Bankruptcy Court record does not reflect and Grace has not alleged that the parties to the State Litigation will require any significant involvement by Grace personnel, much less a level of participation that could have any effect on Grace's ability to reorganize. Grace has not alleged that any of Grace's current managers were involved in the events that are the subject of the State Litigation; thus, depositions or testimony of Grace personnel are not required.

Although the State may request production of documents from Grace,[43] it is undisputed that the Grace documents relevant to the State Litigation are housed at a repository in Boston, Massachusetts, set up to handle with ease all document requests against Grace. The documents are all on a database, and have in the past been made available for litigation parties including the Libby Claimants. If a keeper-of-records deposition is needed to authenticate documents, it could not possibly distract any key personnel of Grace from the reorganization effort. In sum, the State Litigation will have no effect on Grace's ability to reorganize.

Nowhere in the Bankruptcy Court record is there any basis for the Bankruptcy Court to determine that "unusual circumstances" are present. For this reason alone, the State Litigation cannot be enjoined.

### 2.    Grace did not satisfy the traditional equitable factors relevant to issuance of an injunction.

Even if Grace had been able to demonstrate "unusual circumstances," Grace did not and could not satisfy the other prerequisites to issuance of an injunction. Zale, 62 F.3d at 765 (Section 105(a) injunctions are also subject to the traditional rules for the issuance of an injunction); In re Eagle-Picher Indus., Inc., 963 F.2d 855, 858 (6th Cir. 1992); In re Commonwealth Oil Refining Co., 805 F.2d 1175, 1188-89 (5th Cir. 1986).

The four prerequisites to issuance of a preliminary injunction, as enunciated by the Third Circuit, are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the extent to which the enjoined party would suffer irreparable harm if the preliminary injunction

---

[43] The Libby Claimants' proof in the State Litigation regarding the Grace operations in Libby will be based upon exhibits and testimony obtained in pre-bankruptcy litigation with Grace. [Adversary Case D.I. 363, p.21] The Libby Claimants will not be serving discovery requests upon Grace for any State Litigation. [Id.] Moreover, the State has already been provided with access to all discovery obtained by the Libby Claimants from Grace and the Grace repository. [Id.]

is issued; and (4) public interest.  The Pitt News v. Fisher, 215 F.3d 354, 365-66 (3d Cir. 2000).

The court should issue the injunction only if the movant demonstrates that all four factors favor

granting the injunction.  Id. at 365.

### a.    The Likelihood of Success

The likelihood-of-success arm of the preliminary injunction test measures the probability

that the party seeking the injunction against other parties will ultimately succeed in its litigation

against those parties.  Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994); Opticians

Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990).  Since the ultimate

objective of the Preliminary Injunction is a permanent injunction, Grace was required to establish

that it will likely succeed in permanently enjoining the State Litigation.  DeBeers Consol. Mines,

Ltd. v. United States, 325 U.S. 212, 220 (1945).  This is not only unlikely, it is prohibited by

Section 524(g) of the Bankruptcy Code.

Section 524(g) of the Bankruptcy Code was enacted in 1994 to codify the manner in

which asbestos personal-injury claims were resolved in the Johns-Manville bankruptcy case:

establishing a trust to pay present and future asbestos claims, enjoining such claims from being

asserted against the debtor, and discharging the debtor from such liabilities.  See MacArthur Co.

v. Johns-Manville Corp., 837 F.2d 89 (2d Cir. 1988).  Section 524(g) permits a "channeling

injunction" whereby the liability of the debtor and certain third parties for asbestos claims

against the debtor can be channeled so as to become the exclusive liability of the asbestos trust

established under the plan.  However, Section 524(g) does not apply to the State Litigation.  The

State Litigation does not seek to hold the State liable for claims against Grace but rather for the

State's own independent torts, and the State does not fit within any of the four statutory causes of

liability from which a third party may be shielded under Section 524(g):

(I)    the third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor;

(II)    the third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party;

(III)    the third party's provision of insurance to the debtor or a related party; or

(IV)    the third party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party, including but not limited to--

    (aa)    involvement in providing financing (debt or equity), or advice to an entity involved in such a transaction; or

    (bb)    acquiring or selling a financial interest in an entity as part of such a transaction.

11 U.S.C. § 524(g)(4)(A)(ii)(I)-(IV).

Since an injunction of the State Litigation is not authorized by Section 524(g), Grace has no likelihood of success in obtaining a permanent injunction against the State Litigation. This is so because the only other route to a permanent injunction against the State Litigation has been foreclosed by the Third Circuit's decision in Combustion Engineering, where the Court held that Section 105(a) cannot be "employed to extend a channeling injunction to non-debtors in an asbestos case where the requirements of [Section] 524(g) are not otherwise met." Combustion Engineering, 391 F.3d at 233-34. See also In re Lowenschuss, 67 F.3d 1394, 1402 (9th Cir. 1995) ("Section 105 does not authorize relief inconsistent with more specific law."); Zale, 62 F.3d at 760 ("A [Section] 105 injunction cannot alter another provision of the code.") Since Grace has no likelihood of success in obtaining a permanent injunction of the State Litigation,

Grace may not obtain a preliminary injunction of the State Litigation.

### b.    Irreparable Harm to the Estate

The Bankruptcy Court record is devoid of any demonstration by Grace that a substantial threat of any significant harm, much less irreparable harm, if the State Litigation was not enjoined. Bearing in mind that Grace had the burden on each element of the test for issuance of an injunction, Grace was in no position to premise a determination of irreparable harm upon the possibility that the State will someday have a right of indemnification or contribution from Grace, given that Grace denied that any such rights exist.[44] Moreover, since (as demonstrated above, pp. 10-16) Grace would not be bound by the judgment or any finding made in the State Litigation, any harm to Grace from the State Litigation is by definition not irreparable. Nor can a finding of irreparable harm be premised on the possibility of record taint, given that Grace did not even allege—much less established by credible evidence—specific facts indicating rational grounds to fear any new taint in the face of the already-developed record of Grace's misconduct.[45] Prior to Grace's filing the State Injunction Motion, the State Litigation proceeded uninterrupted by and without involvement of Grace for more than four years. There was no harm then, and there is no harm now. Grace did not and cannot meet its burden of establishing a substantial threat of irreparable harm if the State Litigation is not enjoined.

### c.    Irreparable Harm to the Libby Claimants

The balance of harms, standing alone, precludes enjoining the State Litigation. For the Libby Claimants, the harm resulting from an injunction will be severe and continuing. Through

---

[44] See footnote 35 above.

[45] It is hard to imagine that a fear of "record taint"—which ultimately translates into a concern that witnesses under oath will tell the truth—is the kind of harm from which anyone deserves protection by means of an injunction. It is no exaggeration to observe that every day of the week in courts throughout the land, witnesses say bad things about non-parties without entitling those non-parties to an injunction; see also Opposition of Libby Claimants to Motion of W.R. Grace for Leave to Appeal Order Denying Injunction [Dist. Crt. D.I. 3, pp 16-19.]

the CARD Clinic in Libby, Montana, Dr. Alan C. Whitehouse and Dr. C. Brad Black have diagnosed at least 1,500 patients with asbestos related disease due to exposure to Libby asbestos in or near Lincoln County, Montana.[46]  Since the CARD Clinic opened in 2000, more than 65 patients have died of cancer or respiratory failure related to asbestos disease.[47]  At least 41 of the Libby Claimants have died of asbestos disease since Grace filed for bankruptcy protection in 2001.[48]

Many Libby Claimants participate in the Grace Libby Medical Program, which is voluntary and is not insurance.[49]  There is no provision in Grace's proposed Chapter 11 plan to continue this health plan for Libby.  Currently, the CARD Clinic has over 80 patients on oxygen, and over 100 patients severely limited, with limited life expectancy.[50]  Most require 24-hour care.[51]  However, the Grace Libby Medical Program does not offer 24-hour home care.[52]  The Affidavit of Bonnie Fuller, who was caring for her husband Bob Fuller in end stage asbestos disease, shows that no amounts have been paid for 24 hour care by the Grace Libby Medical Program.[53]  The Grace Libby Medical Program also does not pay for nursing home care.[54]  The result has been to subject the Libby Claimants and their families to enormous stress.  For example, the affidavit of Betty Challinor states:

> I have taken care of aged parents, and have worked as an advocate for the aged for 15 years.  But, I could never have imagined what taking care of my dear husband for the last six months of his life would be.  It was extremely stressful, and I was close to a nervous breakdown.  I have the greatest respect for anyone who provides this kind of 24 hour care.[55]

---

[46] [Adversary Proc. D.I. 417, Ex. C, ¶2.]
[47] [Id., ¶7.]
[48] [Id., Ex. D, ¶4.]
[49] [Adversary Proc. D.I. 363, Ex. O.]
[50] [Adversary Proc. D.I. 417, Ex. C, ¶7.]
[51] [Id.]
[52] [Id.]
[53] [Adversary Proc. D.I. 363, Ex. F.]
[54] [Adversary Proc. D.I. 363, Ex. B and R.]
[55] [Adversary Proc. D.I. 363, Ex. B.]

By enjoining the State Litigation, the Libby Claimants will be unable to obtain compensation in the tort system to cover end stage care, against a recognized wrongdoer, the State of Montana.  Since the effect of the State Litigation on Grace's reorganization is non-existent, any fair balancing of harms favors the Libby Claimants.

### d.    **Public Interest**

The Federal Rules of Civil Procedure state that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.  There is an important public interest in permitting injured persons to obtain the speediest possible recovery, especially when the plaintiff is likely to die if the litigation drags on. See Clinton, 520 U.S. at 708 (potential death of a party is a factor in determining prejudice caused by a stay of litigation).  While there is also a public interest in successful reorganization under Chapter 11, the Bankruptcy Court record shows that Grace failed to establish any significant detriment to its reorganization effort if the State Litigation goes forward.  There is no public interest in permitting the State, a non-debtor party, to hide behind the protections of the Bankruptcy Code.

## Conclusion

Based on the foregoing, the Bankruptcy Court's Denial Order should be affirmed and the stay pending appeal vacated. If this Court were to determine that subject matter jurisdiction exists, the Court should deny on the merits Grace's request to enjoin the State Litigation.

Dated: June 20, 2008
      Wilmington, Delaware

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mumford@lrclaw.com
      mcguire@lrclaw.com

- and -

Daniel C. Cohn
Christopher M. Candon
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

*Counsel for the Libby Claimants*

34

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: W.R. Grace & Co., *et al.*

| | |
|---|---|
| W.R. Grace & Co., *et al.*,<br><br>Appellants,<br><br>v.<br><br>Libby Claimants,<br>Appellees. | 1:08-cv-00246-RLB<br><br><br>Bankruptcy Case No. 01-1139<br>Adversary Case No. 01-771 |

## AFFIDAVIT OF SERVICE

STATE OF DELAWARE )
                      ) SS
NEW CASTLE COUNTY )

        Cathy A. Adams, being duly sworn according to law, deposes and says that she is employed by the law firm of Landis Rath & Cobb LLP, attorneys for the Libby Claimants in the above-referenced cases, and on the 20th day of June, 2008, she caused a copy of the following:

### APPELLEES' BRIEF

to be served upon the parties on the attached list via first class mail or in the manner as indicated.

*Cathy A. Adams*
Cathy A. Adams

SWORN TO AND SUBSCRIBED before me this 20th day of June, 2008.

*Cassandra D. Lewis*
Notary Public

CASSANDRA D. WICKI
Notary Public - State of Delaware
My Comm. Exp. Aug. 15, 2008

**W.R. Grace & Co.,** *et al.*

**District Court Appeal**
**Service List**

Mark Shelnitz
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
(Debtors and Debtors in Possession)

David M. Bernick, P.C.
Janet S. Baer, Esquire
Lori Sinanyan, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
(Counsel to W.R. Grace & Co., *et al.*)

**HAND DELIVERY**
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
(Counsel to Debtors and Debtors in Possession)

Lewis Kruger, Esquire
Kenneth Pasquale, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982
(Counsel to Official Committee of Unsecured
Creditors)

**HAND DELIVERY**
Michael R. Lastowski, Esquire
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
(Counsel to Official Committee of Unsecured Creditors)

**HAND DELIVERY**
Michael B. Joseph, Esquire
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

Scott L. Baena, Esquire
Bilzin Sumberg Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
(Counsel to Official Committee of Asbestos Property
Damage Claimants)

**HAND DELIVERY**
Marla Rosoff Eskin, Esquire
Mark T. Hurford, Esquire
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19801
(Counsel to the Official Committee of Asbestos
Personal Injury Claimants)

Peter Van N. Lockwood, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
(Counsel to the Official Committee of Asbestos
Personal Injury Claimants)

Elihu Inselbuch, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
(Counsel to the Official Committee of Asbestos
Personal Injury Claimants)

**HAND DELIVERY**
Frank J. Perch, Esquire
Office of the United States Trustee
844 King Street
Suite 2311
Wilmington, DE 19801
(United States Trustee)

**HAND DELIVERY**
Teresa K.D. Currier, Esquire
Buchanan Ingersoll & Rooney PC
1000 West Street, Suite 1410
Wilmington, DE 19801
(Counsel to Equity Committee)

Philip Bentley, Esquire
Thomas M. Mayer, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(Counsel to Equity Committee)

John C. Phillips, Jr., Esquire
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
(Counsel to David T. Austern, Future Claimants'
Representative)

Richard H. Wyron, Esquire
Orrick, Herrington & Sutcliffe, LLP
3050 K Street, NW
Suite 300
Washington, DC 20007
(Counsel to David T. Austern, Future Claimants'
Representative)

**HAND DELIVERY**
Edward B. Rosenthal, Esquire
Rosenthal, Monhait, & Goddess, P.A.
919 Market Street
Mellon Bank Center, Suite 1401
Wilmington, DE 19801
(Counsel to Continental Casualty Company)

Brian H. Mukherjee, Esquire
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(Counsel to CNA Financial Corporation)

Elizabeth DeCristofaro, Esquire
Ford Marrin Esposito Witmeyer & Gleser, L.L.P.
Wall Street Plaza, 23rd Floor
New York, NY 10005-1875
(Counsel to Continental Casualty Company)

**HAND DELIVERY**
Ian Connor Bifferato, Esquire
Garvan F. McDaniel, Esquire
Chad J. Toms, Esquire
Bifferato Gentilotti LLC
800 North King Street, First Floor
Wilmington, DE 19801
(Counsel to Royal Indemnity Company)

Carl J. Pernicone, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY  10017-5639
(Counsel to Royal Indemnity Company)

Daniel C. Cohn, Esquire
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA  02110
(Counsel to Libby Plaintiffs)


**HAND DELIVERY**
Evelyn J. Meltzer, Esquire
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
PO Box 1709
Wilmington, DE  19899-1709
(Counsel to BNSF Railway Company)

Edward C. Toole, Jr., Esquire
Anne Marie Aaronson, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA  19103
(Counsel to BNSF Railway Company)


**HAND DELIVERY**
Mark J. Phillips, Esquire
Jeffrey C. Wisler, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
(Counsel to Maryland Casualty Company)

Edward J. Longosz, II, Esquire
Laura G. Stover, Esquire
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, N.W., Suite 1200
Washington, DC  20006
(Counsel to Maryland Casualty Company)


**HAND DELIVERY**
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(Counsel to DIP Lender)

J. Douglas Bacon, Esquire
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL  60606
(Counsel to DIP Lender)


David S. Rosenbloom, Esquire
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096
(Counsel to National Medical Care, Inc.)

**HAND DELIVERY**
David E. Wilks, Esquire
Buchanan Ingersoll PC
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE  19801
(Counsel to Gamma Holding, NV)

**HAND DELIVERY**
Kathleen M. Miller, Esquire
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue
Wilmington, DE  19801
(Counsel to the Allen Plaintiffs)

Brian Parker, Esquire
36 South Charles Street
Charles Center South
Suite 2200
Baltimore, MD  21201
(Counsel to Carol Gerard)

**HAND DELIVERY**
Steven K. Kortanek, Esquire
Klehr Harrison Harvey Branzburg & Ellers LLP
919 Market St., Suite 1000
Wilmington, DE  19801
(Counsel to Carol Gerard)

Michael S. Etkin, Esquire
Lowenstein Sandler P.C.
65 Livingston Avenue
Roseland, NJ  07068
(Counsel to Keri Evans)

**HAND DELIVERY**
Thomas D. Walsh, Esquire
McCarter & English, LLP
919 Market St., Suite 1800
Wilmington, DE  19801
(Counsel to James and Julie Holland)

**HAND DELIVERY**
Francis A. Monaco, Jr., Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
(Counsel to the State of Montana)

David K. Foust, Esquire
3030 W. Grand Boulevard
10th Floor – Suite 200
Detroit, MI  48202
(Counsel to the State of Michigan, Department of
Corrections)

**HAND DELIVERY**
Bernard G. Conaway, Esquire
Fox Rothschild LLP
919 Market Street, Suite 1300
Wilmington, DE  19801
(Counsel to the Lanier Law Firm Asbestos Claimants)

**HAND DELIVERY**
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE  19899
(Counsel to The Chase Manhattan Bank)

Robert J. Sidman, Esquire
Tiffany Strelow Cobb, Esquire
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216
(Counsel to The Scotts Co.)

**HAND DELIVERY**
Daniel B. Butz, Esquire
Gregory T. Donilon, Esquire
William H. Sudell, Jr., Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(Counsel to The Scotts Co.)

**HAND DELIVERY**
Ellen W. Slights
Assistant U.S. Attorney
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, DE 19801

**HAND DELIVERY**
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite1200
Wilmington, DE 19801
(Counsel to ExxonMobile)

Dale R. Cockrell, Esquire
Christensen, Moore, Cockrell, Cummings &
Axelberg, P.C.
P.O. Box 7370
Kalispell, MT 59904
(Counsel to the State of Montana)