# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re: W.R. Grace & Co., *et al.*,    )
    )
    Debtors,    )
    )
_____)
    )
W.R. GRACE & CO., *et al.*,    )
    )
    Appellants,    )
    )
    v.    )
    )
LIBBY CLAIMANTS,    )
    )
    Appellees.    )
    )

CIVIL ACTION NO. 08-246

BANKRUPTCY CASE NO. 01-1139
ADV. PROC. NO. 01-771

## APPELLANT STATE OF MONTANA'S BRIEF IN SUPPORT OF ITS MOTION FOR A STAY PENDING APPEAL

Dated:  August 29, 2008

**WOMBLE CARLYLE SANDRIDGE**
**& RICE, PLLC**
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, 15th
Floor Wilmington, DE 19801
(302) 252-4320
Counsel for the State of Montana

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................. ii

NATURE AND PROCEEDINGS AND FACTUAL BACK GROUND ...................... 1

SUMMARY OF THE ARGUMENT ........................................................ 5

LEGAL ARGUMENT ...................................................................... 6

    A.    Legal Standard ................................................................. 6

    B.    The four factors decidedly favor granting a stay ..................................... 7

        1.    Montana will likely succeed on the merits ................................. 7

        2.    Not staying the Order pending appeal will irreparably harm Montana (and Debtors) .............................................................. 14

        3.    Staying the Order will not substantially harm the Libby Claimants ................................................................. 17

        4.    The public interest weighs in favor of staying the Order ............ 17

CONCLUSION ........................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1147 (3d Cir.1982) .........................7, 14

Bracken v. Matgouranis, 296 F.3d 160 (3d Cir. 2002 ...................................................................12

Combustion Engineering, 391 F.3d 190 (3d Cir. 2004) ......................................................9, 10, 13

Crutchfield v. U.S. Army Corps of Engineers, 175 F.Supp.2d 835, 857 n.17 (E.D. Va. 2001)....18

EO Northeast, Inc. v. First American Engineered Solutions, L.L.C., 2007 WL 129064 *2 (E.D.
    Wisc. Jan. 12, 2007) ..............................................................................................................18

Federal-Mogul, Inc., 300 F.3d 368 (3d Cir. 2002) ..........................................................12, 13, 14

Highway Truck Drivers & Helpers Local Union # 107, 888 F.2d 293, 298 (3d Cir.1989).  FED. R.
    APP. P. 8(a)(C)...........................................................................................................................6

Hilton v. Braunskill, 481 U.S. 770, 776 (1987)..............................................................................7

Hodges v. Brown, 500 F.Supp. 25, 30 (E.D. Pa. 1980)...................................................................7

Intel Corp. Microprocessor Antitrust Litigation, 476 F.Supp.2d 452, 455 (D. Del. 2007) ...........12

KOS Pharmaceuticals, Inc. v. Andrix Corp., 369 F.3d 700, 708 (3d Cir. 2004)............................6

Obale v. Attorney General of the United States, 453 F.3d 151, 161 (3d Cir. 2006) ......................7

Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) ....................................................12, 13, 14

Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991)........7

W.R. Grace & Co. (Gerard v. W. R. Grace & Co.), 115 Fed. Appx. 565 (3d Cir. 2004) ..1, 5, 8, 9,
    10, 11, 12, 13, 14, 18

WestPoint Stevens, Inc., 2007 WL 1346616 (S.D.N.Y. 2007) ......................................................7

**Statutes**

§27-1-703(6)(a), MCA ................................................................................................................16

§27-1-703(6)(b), MCA ...............................................................................................................16

§27-1-703(6)(c)(i)-(iii), MCA ......................................................................................................16

**Rules**

FED. R. APP. P. 8 ........................................................................................................................6

**STATE OF MONTANA'S BRIEF IN SUPPORT OF ITS MOTION FOR A STAY PENDING APPEAL**

The State of Montana ("Montana"), by and through its undersigned counsel, hereby files this Brief in Support of Its Motion for a Stay Pending Appeal of this Court's August 12, 2008 Order affirming the Bankruptcy Court's April 13, 2007 Order denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana.[1] Montana respectfully shows the Court as follows:

## NATURE OF PROCEEDINGS AND FACTUAL BACKGROUND

1.     The preliminary injunction at issue was originally entered on May 3, 2001. It barred the prosecution of pending actions against various affiliated entities and third parties whose purported liability was derivative of the liability of debtors W.R. Grace & Co. and W.R. Grace & Co.-Conn. (collectively "Debtors"). [Adv. Pro. D.I. 32] On January 22, 2002, the Bankruptcy Court entered an order modifying the preliminary injunction to include certain additional affiliates, and to reinstate the bar against the commencement of new actions against affiliates arising from alleged exposure to asbestos, whether indirectly or directly caused by Debtors. [Adv. Pro. D.I. 87]

2.     On February 4, 2002, certain Libby Claimants sought to modify the preliminary injunction in order to pursue an alleged direct cause of action against Maryland Casualty Company ("MCC"), one of Debtors' insurers. The Court denied the Libby Claimants' motion, a decision later affirmed by the U.S. Circuit Court of Appeals for the Third Circuit. In re W.R. Grace & Co. (Gerard v. W. R. Grace & Co.), 115 Fed. Appx. 565 (3d Cir. 2004)

---

[1] Montana is simultaneously filing a Notice of Appeal to the Third Circuit.

3.    The Libby Claimants then brought asbestos personal injury claims arising from Debtors' mining operations by commencing suit against Montana Vermiculite Company ("MVC"), the former owners of Debtors' mining operations. [Adv. Pro. D.I. 153] The Court amended the preliminary injunction to stay actions against MVC on February 25, 2005. [Adv. Pro. D.I. 358]

4.    On or about March 25, 2003, Montana filed contribution and indemnification claims against Debtors, seeking contribution and indemnification from the Debtors in the pending state court actions against the State of Montana, actions related to Debtors' mining activities in Libby, Montana (the "State Court Actions"). [Adv. Pro. D.I. 495]

5.    On June 9, 2005, Montana filed a motion in the main bankruptcy case for relief from the automatic stay [Bank. Case D.I. 8582], seeking to join Debtors as third-party defendants in the State Court Actions filed against it by the Libby Claimants.  Montana later withdrew this motion without prejudice to re-file. [Bank. Case D.I. 15969]

6.    On August 22, 2005, Debtors filed a Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana (the "Injunction Motion"). [Adv. Pro. D.I. 359] Debtors asked the Bankruptcy Court to include all pending State Court Actions against the State of Montana and related to Debtors' mining activities in Libby, Montana.

7.    The Libby Claimants filed an objection to the Injunction Motion [Adv. Pro. D.I. 363], while the Official Committee of Unsecured Creditors submitted a joinder to the Injunction Motion [Adv. Pro. D.I. 359], and the State of Montana's response did not object to the Injunction Motion unless the relief affected certain of Montana's rights. [Adv. Pro. D.I. 362]

8.    On December 19, 2005, the Bankruptcy Court held a hearing on Debtors' Injunction Motion (the "Hearing"). At that time, Debtors represented that the Libby Claimants claims against Montana were wholly derivative of Debtors' activities and that the Libby Claimants' actions against Montana arose from alleged exposure to asbestos caused by Debtors. [Bank. Case D.I. 11473, Tr., 153:6-15]

9.    On April 16, 2007, the Bankruptcy Court entered its Memorandum Opinion and Order Denying Debtors' Injunction Motion. [Adv. Pro. D.I. 419 & 420]

10.    On April 26, 2007, Montana filed a Motion for Reconsideration of the Bankruptcy Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction Entered April 16, 2007 ("Motion for Reconsideration"). [Adv. Pro. D.I. 426]. Debtors filed a similar motion on the same date. [Adv. Pro. D.I. 427]

11.    On March 31, 2008, the Bankruptcy Court entered its Order Denying Motions to Reconsider, which denied both Montana's and Debtors' motions to reconsider. [Adv. Pro. D.I. 484]

12.    On April 7, 2008, Debtors announced a tentative settlement with the Official Committee of Asbestos Personal Injury Claimants ("APIC"), the Future Claimants Representative, and the Official Committee of Equity Security Holders (the "Equity Committee") covering the asbestos-related personal injury claims. Under the proposed settlement, Debtors will establish a §524(g) trust for the benefit of the APIC and pay $250 million in cash and various other forms of compensation. The proposed settlement did not address or resolve the contribution and indemnity claims filed by Montana against the Debtors.

13.    On April 9, 2008, Montana filed in bankruptcy court a Motion for Stay Pending Appeal in the District Court. [Adv. Pro. D.I. 486]

14.    On April 11, 2008, Debtors filed a motion for leave to appeal the Bankruptcy Court's Order declining to expand the injunction. [Adv. Pro. D.I. 495]  Montana joined in this Motion.

15.    The Bankruptcy Court granted Montana's request for a stay on April 22, 2008. [Adv. Pro. D.I. 508].  In granting the Motion, the Bankruptcy Court averred:

> If an appellate court determines that our conclusions in the March 27, 2008, Memorandum Opinion and Order are incorrect and, therefore, the injunction should issue in Montana's favor, absent a stay pending appeal Montana will be required to defend actions that it otherwise would not have been required to defend at this time.  Furthermore, if the actions proceed against Montana, the State would be forced to defend without the benefit of Debtors as a party and without being able to obtain discovery from the Debtors because of the automatic stay.   Conversely, the harm which the Libby Claimants may suffer is not substantial because, although they may have independent claims against the State, the basis of the Libby Claimants' primary alleged wrong has been and continues to be focused on the Debtors and Debtors' operations which generated asbestos dust in the Libby, Montana, area and led to the alleged personal injures and property damages for which Libby Claimants seek redress.

[Adv. Pro. D.I. 508 at 3]  The April 22, 2008 Order is attached hereto as Exhibit A.

16.    The Bankruptcy Court also observed that the claims against the Debtors are at the heart of the Libby Claimants alleged injuries and will be addressed in the reorganization plan:

> [T]he Libby Claimants are asbestos creditors subject to the automatic stay of § 362 as well as the existing § 105 injunctions issued in favor of other parties against which the Libby Claimants have attempted to bring actions throughout the pendency of this case.  Their claims against the Debtors, the alleged source of Libby's ills, will be addressed in the Debtors' plan of reorganization with respect to which, we note, significant progress has been made recently as announced in court on April 7.  Another short delay pending appeal will not cause substantial harm or untoward harm until the merits of the appeal are determined.

[Adv. Pro. D.I. 508 at 3-4]

17.    On August 12, 2008, this Court granted Debtors' motion for leave to appeal and affirmed the Bankruptcy Court's Order denying expansion of the preliminary injunction.

## SUMMARY OF THE ARGUMENT

On three occasions, the Bankruptcy Court has recognized the complexity of the issues involved in this case, in light of the equities on all sides, and as a result, on three occasions, it has granted temporary stays of the State Court Actions pending its rulings on whether to expand the preliminary injunction to cover claims against Montana. [Adv. Pro. D.I. 376, 466 and 508]  For the same reasons, this Court should grant a stay pending Montana's appeal to the Third Circuit. This is all the more true given the proposed settlement between Debtors and various asbestos-related plaintiffs, a settlement in which Montana has had no involvement.    Specifically, Montana's contribution and indemnity claims were not addressed as part of the proposed settlement.  A stay would: (1) prevent the fundamental unfairness to Montana and its citizens which would occur in the State Court Actions if Montana could not obtain discovery from Debtors and Montana juries were not allowed to consider Debtors' activities and make the statutory apportionment of liability to Debtors; and (2) allow Montana and the other parties to resolve Montana's role in any such settlement, thus promoting a consensual reorganization.

Moreover, Montana easily satisfies all four prongs of the traditional test.  Montana has shown that (1) it will likely succeed on the merits, (2) it will suffer irreparable harm, (3) the Libby will face no substantial harm, and (4) the public interest favors a stay.

First, the Third Circuit has already held, within this same adversary proceeding, that the Bankruptcy Court had jurisdiction to enjoin state-court litigation against third-party defendants that have an indemnification claim against Grace.  See Gerard v. W.R. Grace & Co., 115 Fed. Appx. 565 (3d Cir. 2004).  This case presents an identical scenario.  Given that the Third Circuit affirmed the injunction pertaining to claims involved in Gerard, this Court should grant a stay pending Third Circuit resolution of the matter.

Second, Montana will suffer irreparable harm if the State Court Actions go forward and Montana is required to undergo discovery and participate in a case centering around Debtors' mining and other activities without having a Montana jury, as permitted by state statutory law, consider Debtors' fault.

Third, the Libby Claimants will not face substantial harm if the State Court Actions against Montana are stayed pending appeal. The appeal will likely take a short amount of time— a minor harm compared to the significant hardships facing Montana.

Finally, the public interest tips decidedly in Montana's favor. Permitting the State Court Actions to go forward is an economic cost to be borne by Montana's citizens and, if Montana suffers an adverse judgment, its public fisc will be affected.

## LEGAL ARGUMENT

### A.    Legal Standard

The Third Circuit recognizes that in bankruptcy cases, "a myriad of circumstances can occur that would necessitate the grant of a stay pending appeal in order to preserve a party's position." In re Highway Truck Drivers & Helpers Local Union # 107, 888 F.2d 293, 298 (3d Cir.1989). FED. R. APP. P. 8(a)(C), requires the party seeking a stay of an injunction order to first file in the district court, and to give that court an opportunity to "maintain the status quo." KOS Pharmaceuticals, Inc. v. Andrix Corp., 369 F.3d 700, 708 (3d Cir. 2004).

In evaluating a motion for a stay pending appeal under FED. R. APP. P. 8, a court must consider:

(1) whether the moving party is likely to succeed on the merits;

(2) whether the moving party will suffer irreparable injury absent relief;

(3) whether granting relief will cause harm to other interested parties; and

(4) whether granting or denying the motion would best serve the public interest.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Republic of the Philippines v. Westinghouse

Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); Hodges v. Brown, 500 F.Supp. 25, 30 (E.D. Pa.

1980)

This Court's disagreement with Montana's merits argument in its August 12, 2008 Order

does not preclude the granting of a stay.  Montana must show a reasonable probability of

success, but the Third Circuit has noted that "where factors of irreparable harm, interests of the

parties and public considerations strongly favor the moving party, an injunction might be

appropriate even though plaintiffs did not demonstrate as strong a likelihood of ultimate success

as would generally be required." In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137,

1147 (3d Cir.1982); see also In re WestPoint Stevens, Inc., 2007 WL 1346616 (S.D.N.Y. 2007)

(same).[2]  Thus, this Court may grant a stay--even if it still doubts whether related-to jurisdiction

exists--because of Montana's showing on the other three factors.

    **B.**      **The four factors decidedly favor granting a stay.**

      **1.  Montana will likely succeed on the merits**

The Bankruptcy Court and this Court have held that related-to subject matter jurisdiction

does not exist for the purpose of expanding the preliminary injunction to include the State Court

Actions.  Montana respectfully asserts that this conclusion is incorrect.

The Third Circuit has already held, within this same adversary proceeding, that the

Bankruptcy Court had jurisdiction to enjoin state-court litigation against third-party defendants

that have an indemnification claim against Grace.  Gerard v. W.R. Grace & Co., 115 Fed. Appx.

---

[2] The standard for granting a stay is the same as the standard for a preliminary injunction. See
Obale v. Attorney General of the United States, 453 F.3d 151, 161 (3d Cir. 2006).

565 (3d Cir. 2004).   Gerard was an appeal from this Court's order "vacating the Bankruptcy Court's order refusing to modify an injunction entered against the pursuit of state court litigation against Maryland Casualty Company ("MCC"), the worker's compensation carrier of the chapter 11 debtor." Id. at *566.  The Libby Claimants had filed suit in Montana state courts arguing that MCC undertook a duty to the Debtors' mine workers and their families to exercise reasonable care in relation to the mine safety program and that MCC breached this duty. Id. at *566-67.

After Debtors filed for bankruptcy protection, they requested that MCC be included in an injunction halting pending actions against the Debtors' affiliated entities and insurance carriers. Id. at *567.  Although there had been no finding that MCC had any liability to the Libby Claimants, the Debtors' request was based in part on a settlement agreement between Debtors and MCC in which Debtors agreed to release and indemnify MCC against any future asbestos-related claims that arose out of Debtors' alleged liability, should MCC be found to have such liability. Id.  The Bankruptcy Court granted the motion as to MCC.  Id.  The Libby Claimants sought to modify the injunction; their motion was denied by the Bankruptcy Court.  Id.  This Court, finding that there was no related-to jurisdiction, vacated the order and remanded for further proceedings.  Id.  The Third Circuit, however, held that the Bankruptcy Court did not abuse its discretion and vacated this Court's order finding no related-to jurisdiction. Id. at *570.

The panel observed that it was the Libby Claimants' burden "to somehow discredit or undermine the need for a stay." Id. at *569.  The panel found that the Libby Claimants failed to carry this burden.  In ruling against the Libby Claimants, the panel stated that "the prospect of indemnification by Grace made inclusion of a stay of suits against MCC appropriate."  Id. at *568-69. Without question, the prospect of an indemnification was central to the Third Circuit's decision.   That is precisely the situation here; not only is there the "prospect for an

7

indemnification issue" between Montana and Debtors, the "indemnification issue" actually exists; Montana has already made a claim in bankruptcy court for indemnification from Debtors.

In contending that the preliminary injunction should be expanded to include actions against Montana, Montana has always argued that <u>Gerard</u> controls.  In their responses to this argument, the Libby Claimants have stressed <u>In re Combustion Engineering</u>, 391 F.3d 190 (3d Cir. 2004), arguing that it has overruled or weakened <u>Gerard</u>.  Even if <u>Combustion Engineering</u> requires "related to" jurisdiction before the Court can enjoin a non-core proceeding (a proposition Montana rejects), the Third Circuit has already determined a specific instance of where there is such "related to" jurisdiction – in the situation presented by <u>Gerard</u>.  And because the Third Circuit found there was "related to" jurisdiction in <u>Gerard</u>, there is "related to" jurisdiction here.

In fact, the <u>Gerard</u> Court held: "In addition to having been misdirected as to the issues before it, the District Court, in its jurisdictional analysis, was also misled as to the nature of the proceeding before the Bankruptcy Court.  Clearly, the ruling on appeal to the District Court resulted from the adversary proceeding seeking injunctive relief initiated by the debtor in its own chapter 11 case.  Thus, the proceeding was assuredly 'related to' the case, and, further, it definitely 'arose under' the bankruptcy proceeding (and was perhaps even a 'core' proceeding)." 115 Fed. Appx. at * 567-68.  Hence the Court concluded that the injunction "related to" the bankruptcy.  Indeed, the Libby Claimants have conceded as much in a brief.  Opposition of Montana Plaintiffs to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana p. 4 ("The panel concluded that the order on appeal was "'related to' the case" because it resulted from an adversary proceeding seeking injunctive relief that Grace initiated.").

[Adv. Pro. D.I. 442]   In any event, to the extent there is a tension between <u>Combustion Engineering</u> and <u>Gerard</u>, <u>Gerard</u> should be read to be consistent with <u>Combustion Engineering</u> if at all possible, and that is surely possible here, given that <u>Combustion Engineering</u> made no statement that it was overruling <u>Gerard</u>.

<u>Gerard</u> and the present case are indistinguishable.  Just as in <u>Gerard</u>, Debtors brought an "adversary proceeding seeking injunctive relief initiated by the debtor in its own chapter 11 case" to prevent litigation against Montana, and Montana is an entity with pending indemnification claims against Debtors in Debtors' chapter 11 case.  Simply out, Debtors face the same risk from the Libby Claimants suing Montana as they did from the Libby Claimants suing MCC.  Indeed, just as they acknowledged with MCC, Debtors have similarly stated that the claims against Montana are derivative of the Debtors' activities:  "The Debtors and the State share an identity of interest with respect to the Montana Actions.  Underlying any claim against the State, is the question of whether the Debtors negligently exposed the Montana plaintiffs to asbestos."  Debtors' Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana at 10 [Adv. Pro. D.I. 359].

Just as Montana did, MCC too sought indemnification from Debtors.  Just as Debtors did with MCC, Debtors too have acknowledged Montana's liability hinges upon, is derivative of, Debtors' activities at its mining operations.  Just as debtors did with MCC, Debtors too have initiated an adversary proceeding in its chapter 11 case to enjoin the state court actions against Montana.  Thus, because there is "related to" jurisdiction over the MCC injunction, as the Bankruptcy Court and the Third Circuit in <u>Gerard</u> have held, there is "related to" jurisdiction here.

In its August 12, 2008 Order, this Court tried to distinguish the situation in MCC/<u>Gerard</u> by holding that Montana would need an "intervening adjudication" to recover against Debtors, but that MCC would not need "intervening adjudication" because of the settlement agreement provision between Debtors and MCC mandating that Debtors indemnify MCC against asbestos-related claims.  Respectfully, Montana believes that this attempt fails.

Before MCC can obtain any indemnification from Debtors, there must be a finding that MCC has liability to the Libby Claimants.  Then there must be a finding that liability triggers Debtors' indemnification responsibilities to MCC.  That is no different than the situation with Montana.  First, there must be a finding that Montana has some liability to the Libby Claimants.  Then there must be a finding that Montana's liability is derivative of Debtors' activities. [Bank. Case D.I. 11473, Tr. 153-6-15]

Furthermore, the argument lacks merit that the automatic stay precludes Montana from impleading the Debtors into the State Court Actions and therefore, Montana should be treated differently from MCC.  Specifically, as far as actions against the Debtors, MCC is no different than Montana. If the automatic stay precludes Montana from impleading Debtors into the State Court Actions, it likewise would also have precluded MCC from impleading the Debtors into the state court actions against it, regardless of the Grace-MCC settlement agreement indemnification provision.  Consequently, MCC, just like Montana, needs "intervening adjudication" to recover through indemnification what it pays in settlements or verdicts against it in the state court suits.

Conversely, if the automatic stay does not preclude Montana from impleading Debtors into the State Court Actions, then the automatic stay would also not have precluded MCC from impleading the Debtors into the State Court Actions, regardless of the Grace-MCC settlement agreement indemnification provision.  Consequently, there would be no need for "intervening

adjudication" by either MCC or Montana, and there would be an (alleged) identical "direct impact" on the estate in either case. In short, the settlement agreement indemnification provision between MCC and Grace is irrelevant, and Montana is in the same position that MCC was. Debtors' liability to MCC was exactly as "direct" or dependent on "intervening adjudication," depending upon the scope of the automatic stay, as their liability to Montana.

This Court also tried to distinguish Gerard by its procedural posture. Montana understands that this Court believes there was no determination of related-to jurisdiction in Gerard. Montana respectfully disagrees with this interpretation. Aside from the fact that the wording of the Gerard opinion, particularly the discussion of "related to" jurisdiction, clearly indicates that the Court was considering whether there was subject-matter jurisdiction supporting the injunction itself, 115 Fed. Appx. at *567-68, it is axiomatic that courts must analyze *sua sponte* whether they have subject-matter jurisdiction. See, e.g., Bracken v. Matgouranis, 296 F.3d 160 (3d Cir. 2002) (noting that "this Court has a continuing obligation to sua sponte raise the issue of subject matter jurisdiction if it is in question"); In re Intel Corp. Microprocessor Antitrust Litigation, 476 F.Supp.2d 452, 455 (D. Del. 2007). Consequently, to assume that the Third Circuit in Gerard did not consider whether subject-matter jurisdiction supported the injunction covering MCC is to assume that the Court, after the Libby Claimants explicitly attacked subject-matter jurisdiction on appeal, either disregarded the rule or decided to make no mention of jurisdiction. Such an assumption is in error.

In affirming the Bankruptcy Court's Order, this Court relied heavily on Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) and In re Federal-Mogul, Inc., 300 F.3d 368 (3d Cir. 2002). Unlike the circumstances in Pacor and Federal Mogul where there were issues of personal jurisdiction over various parties, the Libby Claimants are claimants in this case. The Third

Circuit, for example, found in Pacor that it was significant that the non-debtor third party pursuing the other non-debtor third party was not a claimant in the pending bankruptcy proceeding. Pacor, 743 F.2d at 995. See also Combustion Engineering, 391 F.3d at 231. Here, the Libby Claimants are claimants of the Debtors and have submitted themselves to the jurisdiction of the Bankruptcy Court.

Another critical distinguishing factor was that in Pacor and Federal Mogul, the effort was to remove thousands of non-bankruptcy actions to the bankruptcy court. In contrast, here, the matter is not to remove non-bankruptcy actions to bankruptcy court, but to enjoin actions against a party already subject to the bankruptcy court's jurisdiction by virtue of the fact it has claims pending in the bankruptcy court. As the Gerard court emphasized, it is significant when the party sought to be enjoined is already subject to the jurisdiction of the court and has significant and identical claims against the Debtors, as Montana does here.

Furthermore, in Pacor, as the Bankruptcy Court pointed out, the third party to be protected "was not a creditor, had filed no claim against the debtor, and therefore, any judgment would have no effect on the estate." [Adv. Pro. D.I. 483 at p. 9]. In Federal Mogul, the third party actions were between personal injury claimants and the automotive companies and no claims had yet been pursued by the automobile companies against the debtors. Montana, however, has timely filed contribution and indemnification claims, in bankruptcy court, against the Debtors for its alleged liability arising out of the Libby Claimants' actions.

Moreover, the Third Circuit in Gerard distinguished both Pacor and Federal Mogul in a way consistent with the present case, stating that the issue presented in each of those cases was "whether the Bankruptcy Court had jurisdiction to remove to the Bankruptcy Court, and thus hear and decide, in the Bankruptcy Court, litigation pending in state court." Gerard, 115 Fed.

Appx. at *567. The issue presented in this case, as in <u>Gerard</u>, is whether the Bankruptcy Court should clarify the scope of an injunction already issued by the Bankruptcy Court to include actions against the State of Montana because they relate to the underlying Chapter 11 cases. Unlike the courts in <u>Pacor</u> and <u>Federal Mogul</u>, the request for the injunction here, as in the <u>Gerard</u> case, is made by the "debtor in its own Chapter 11 case." <u>Id.</u> at 567. Accordingly, this Court should find, as the Third Circuit did in <u>Gerard</u>, that the proceeding "was assuredly 'related to' the case, and further, it definitely 'arose under' the bankruptcy proceeding." <u>Id.</u> at 567-68.

In sum, Montana has shown a reasonable probability of success on the merits. <u>See</u> <u>In re Arthur Treacher's Franchisee Litigation</u>, 689 F.2d at 1147. <u>Gerard</u> has decided the issue in this case. There is subject-matter jurisdiction for the injunction covering MCC, and there is subject-matter jurisdiction for an injunction covering Montana. Given that the Third Circuit affirmed the injunction pertaining to claims against MCC, this Court should grant a stay pending Third Circuit resolution of the matter.

### 2.  Not staying the Order pending appeal will irreparably harm Montana

Montana will be irreparably harmed if the State Court Actions are allowed to proceed against it pending appeal. There is the obvious harm that Montana will have to undergo discovery and participate in hundreds of cases for which Debtors have admitted Montana's liability is derivative of Debtors' mining and other activities without the juries and Montana citizens being able to consider Debtors' liability absent the stay. That is, the Libby Claimants would have to first show that Debtors' mining and other activities were actually causing harm, and then, second, that Montana was aware of that harm and failed to warn. Debtors' presence and involvement in the State Court Actions is mandatory for defense against that first claim. Indeed, Debtors would have documents and evidence in their control bearing directly on that

issue.  Even forcing Montana to defend the second claim without the juries being able to consider Debtors' actions would cause grave harm, given that evidence of what Debtors failed to inform or withheld from Montana, which is in Debtors' control.  Moreover, if Montana were found liable to the Libby Claimants without the presence of Debtors, Montana would be forced to maintain a second suit against Debtors for indemnity and contribution – in the Chapter 11 proceedings – only increasing its expense and the numbers of claims against Debtors' estate.

Furthermore, under the proposed settlement, Debtors will pay $250 million now and make various other forms of compensation.  Montana has had no involvement in this settlement. The asserted value of the Libby Claimants' claims against Montana is nearly 25 percent of the nearly $3 billion settlement amount upon which Debtors, the APIC, Future Claimants' representative, and Equity Committee have agreed and those claims have resulted in significant contribution and indemnification claims brought by Montana against the estate.  Consequently, Montana may be prejudiced by the settlement, particularly if the settlement forces Montana to look only to the 524(g) trust to satisfy any future indemnification or contribution claims.

The Bankruptcy Court has summarized part of the harm Montana will suffer as follows:

> If an appellate court determines that our conclusions in the March 27, 2008, Memorandum Opinion and Order are incorrect and, therefore, the injunction should issue in Montana's favor, absent a stay pending appeal Montana will be required to defend actions that it otherwise would not have been required to defend at this time.  Furthermore, if the actions proceed against Montana, the State would be forced to defend without the benefit of Debtors as a party and without being able to obtain discovery from the Debtors because of the automatic stay.  Conversely, the harm which the Libby Claimants may suffer is not substantial because, although they may have independent claims against the State, the basis of the Libby Claimants' primary alleged wrong has been and continues to be focused on the Debtors and Debtors' operations which generated asbestos dust in the Libby, Montana, area and led to the alleged personal injures and property damages for which Libby Claimants seek redress.

[Adv. Pro. D.I. 508 at 3]

Irreparable harm exists to Montana if the stay does not remain in place because state juries could be prevented from considering Debtors' culpability.   Under Montana law, a defendant is entitled to assert as a defense that a claimant's damages were caused in full or in part by a party with whom the claimant has settled. §27-1-703(6)(a), MCA.  In determining the percentage of liability, the trier of fact must consider the negligence of the parties with whom a claimant has settled or released from liability.  §27-1-703(6)(b), MCA.  The Libby Claimants have argued that except for parties that have settled or been released from liability, a comparison of fault cannot be made to persons immune from liability to the claimant, not subject to the court's jurisdiction, or who could have been named as a third party.   §27-1-703(6)(c)(i)-(iii), MCA.

Here, while Debtors have reached a tentative settlement with the Libby Claimants, the Libby Claimants will argue that under Montana law, MCA 27-1-703, Debtors' liability for the Libby Claimants' alleged asbestos-related diseases cannot be decided on the basis that Debtors are either "immune from liability;" not "subject to the jurisdiction of [state] court;" or not settled or been released by the Libby Claimants.  If they are correct—and Montana does not concede that they are—then Montana citizens sitting on a Montana jury will be barred, if they find Montana has any liability to the Libby Claimants, from attributing to Debtors their "percentage of liability." §27-1-703(6)(b), MCA.  This violates fundamental fairness and is not what was intended under Montana law.  Keeping the stay in place until the Third Circuit rules or until the bankruptcy plan is approved removes this unfairness and will allow Montana juries to determine Debtors' percentage of liability without prejudice to Debtors.[3]

---

[3] A finding of negligence by a person with whom a claimant has settled or released from liability is neither a conclusive nor presumptive finding as to that person for purposes of a subsequent or prior action involving that person. §27-1-703(6)(b), MCA.

As a result, this Court should grant a stay pending appeal of its refusal to expand the preliminary injunction.

### 3.    Staying the Order will not substantially harm the Libby Claimants

The Libby Claimants face no substantial harm if their State Court Actions against Montana are delayed pending appeal. As the Bankruptcy Court noted in its April 22, 2008 Order granting a stay pending appeal:

> [T]he harm which the Libby Claimants may suffer is not substantial because, although they may have independent claims against the State, the basis of the Libby Claimants' primary alleged wrong has been and continues to be focused on the Debtors and Debtors' operations which generated asbestos dust in the Libby, Montana, area and led to the alleged personal injures and property damages for which Libby Claimants seek redress.
>
> . . .
>
> Furthermore, the Libby Claimants are asbestos creditors subject to the automatic stay of § 362 as well as the existing § 105 injunctions issued in favor of other parties against which the Libby Claimants have attempted to bring actions throughout the pendency of this case. Their claims against the Debtors, the alleged source of Libby's ills, will be addressed in the Debtors' plan of reorganization with respect to which, we note, significant progress has been made recently as announced in court on April 7. Another short delay pending appeal will not cause substantial harm or untoward harm until the merits of the appeal are determined.

[Adv. Pro. D.I. 508 at 3-4]

The appeal to the Third Circuit likely will not take an extraordinary amount of time, and the irreparable harm to Montana if the Third Circuit reverses this Court far outweighs "the harm which the Libby Claimants may suffer" if the Third Circuit affirms this Court.

### 4.    The public interest weighs in favor of staying the Order

Finally, the public interest weighs in favor of staying the Order. The Libby Claimants seek to hold the citizens of Montana liable for the acts of a private company, the State being unable to mount an effective defense because vital information is possessed by Debtors which

Montana cannot obtain because the automatic stay prevent Montana from conducting discovery against Debtors.  That issue is remedied once the bankruptcy settlement is approved.

In addition, "not issuing a stay will harm the public interest because permitting the suit to go forward is an economic cost to be borne by [Montana's] citizens and, if Montana suffers an adverse judgment, its public fisc will be affected."  [Adv. Pro. D.I. 508 at 3]  See generally, Crutchfield v. U.S. Army Corps of Engineers, 175 F.Supp.2d 835, 857 n.17 (E.D. Va. 2001) (waste of public funds is a proper public interest consideration); EO Northeast, Inc. v. First American Engineered Solutions, L.L.C., 2007 WL 129064 *2 (E.D. Wisc. Jan. 12, 2007) (noting that an adverse impact on the "public fisc" is appropriate to consider under the public interest factor).

Accordingly, the public interest will be furthered by granting a stay.

### CONCLUSION

The Bankruptcy Court has stated that the Libby Claimants' claims against Montana are only "an end run around the automatic stay."  Memorandum Opinion and Order Denying Debtors' Injunction Motion. [D.I. 420]  This Court should stay that "end run" for a short time to allow an appeal to the Third Circuit.  The status quo should be maintained because Montana has made a strong showing that it will succeed on the merits and that the Third Circuit will reach the same result as it did in Gerard.

Moreover, the remaining three factors in the analysis decisively favor Montana.  The State will suffer irreparable harm if the State Court Actions go forward and Montana is required to undergo discovery and participate in a case centering around Debtors' mining and other activities without being able to obtain critical information from Debtors and without the ability and right to have a Montana jury consider Debtors' fault.  Also, the Debtors' tentative settlement

with the APIC Committee and the Equity Committee does not address or resolve the contribution and indemnity claims filed by Montana against the Debtors. The Bankruptcy Court has already held that the Libby Claimants will not face substantial harm if the State Court Actions against Montana are stayed pending appeal. Lastly, the public interest favors a stay. Permitting the State Court Actions to go forward is an economic cost to be borne by Montana's citizens and, if Montana suffers an adverse judgment, its public fisc will be affected because the juries will not be able to consider information about Debtors' activities or make the appropriate apportionment of liability.

Dated: August 29, 2008

Respectfully submitted,

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*

Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801
(302) 252-4320
Counsel for the State of Montana

**EXHIBIT "A"**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE

W.R. Grace & Co., Inc., *et al.*                    Bankruptcy No. 01-1139
    Debtors                                           Chapter 11

W.R. Grace & Co., Inc., *et al.*
    Plaintiffs
v.                                                  Adversary No. 01-771
Margaret Chakarian and
John Does 1-1000 *et al.*
    Defendants                            **Related to Document. No. 486,**
                                                    **State of Montana's Motion for**
                                                    **Stay Pending Appeal in the**
                                                    **District Court of this Court's**
                                                    **Order Denying Montana's Motion**
                                                    **for Reconsideration**

**MEMORANDUM ORDER GRANTING MOTION FOR STAY PENDING APPEAL**

The issue before court is whether to grant a stay pending appeal under Fed.R.Bankr.P.

8005. The underlying state court action has been stayed for approximately 30 months. The

argument at the hearing of April 21, 2008, focused on whether this court has jurisdiction to

entertain the motion for stay because of our March 27, 2008, Order at Adversary Doc. No. 484

that we had no jurisdiction to issue an injunction in favor of the State of Montana under 11

U.S.C. §105. The issue of this court's jurisdiction with respect to the §105 injunction is the basis

of the order that is subject to the appeal. We find that we have jurisdiction to entertain the

Fed.R.Bankr.P. 8005 motion for stay pending appeal. In addition, we have jurisdiction over the

parties in interest who have appeared here seeking the §105 relief.

Rule 8005 requires that motions to stay pending appeal be presented to the bankruptcy

Dkt. No. _____ 508 _____ 1

Date Filed _____ 4/22/08 _____

judge in the first instance. Rule 8005 permits the bankruptcy judge to make such appropriate rulings as "will protect the rights of all parties in interest."

In our Memorandum Opinion of March 27, 2008, we found that a §105 injunction in favor of Montana could not issue for the reasons expressed in two opinions we issued on the subject, *see* Adversary Doc. Nos. 419 and 483,[1] and, although the standards for issuance of a stay pending appeal under Rule 8005 are similar to those for issuance of an injunction, the focus of a stay pending appeal is different. While a §105 injunction is based on the underlying merits of the action, the Rule 8005 stay is centered on staying the effect of this court's order denying the injunction, not on the merits of the underlying action. The Rule also is aimed at maintaining the status quo pending an appeal so that the rights of all parties in interest are protected. In order to obtain a stay pending appeal the movant, here the State of Montana, must (1) make a strong showing of likelihood of success on the merits in the appeal, (2) that it will suffer irreparable harm absent a stay, (3) that issuance of the stay will not substantially injure other parties to the action and (4) that the stay is in the public interest. *In re Finova Group, Inc.*, 2007 WL 3238764 (D. Del., Oct. 31, 2007). The bankruptcy court is required to balance all of those factors. *Morgan v. Polaroid Corporation*, 2004 WL 253477 (D. Del., Feb. 9, 2004).

Here, we find that, based on the views of the Court of Appeals for the Third Circuit as expressed in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002), *cert. denied sub nom. DaimlerChrysler v. Official Committee of Asbestos Claimants*, 537 U.S. 1148 (2003), and *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004), the State of Montana is not likely to prevail on the merits on appeal.

---

[1]The orders corresponding to those Memorandum Opinions are at Doc. Nos. 420 and 484.

However, the harm to the parties that will result in the event that an appellate court determines
that the injunction should issue will be so severe if a stay is not issued that Montana's likelihood
of success on the merits is not the predominant factor to be considered under the unique
circumstances presented.

If an appellate court determines that our conclusions in the March 27, 2008,
Memorandum Opinion and Order are incorrect and, therefore, the injunction should issue in
Montana's favor, absent a stay pending appeal Montana will be required to defend actions that it
otherwise would not have been required to defend at this time.  Furthermore, if the actions
proceed against Montana, the State would be forced to defend without benefit of Debtors as a
party and without being able to obtain discovery from the Debtors because of the automatic stay.
Conversely, the harm which the Libby Claimants may suffer is not substantial because, although
they may have independent claims against the State, the basis of the Libby Claimants' primary
alleged wrong has been and continues to be focused on Debtors and Debtors' operations which
generated asbestos dust in the Libby, Montana, area and led to the alleged personal injuries and
property damages for which Libby Claimants seek redress.

We note that only statutory action direct claims against the State for, in essence alleged
violation of its independent duty to warn, and not claims that also implicate Debtors such as
aiding and abetting claims, may go forward at this time.  All claims against the Debtors, or which
implicate them or their businesses, products, property, etc., are stayed pursuant to §362.  Any
claims that implicate the Debtors or their businesses, products, property, etc., are clearly subject
to §362, must be addressed in the plan, and may be channeled to a trust under §524(g) or
otherwise addressed.

3

Furthermore, the Libby Claimants are asbestos creditors and are subject to the automatic stay of §362 as well as to the existing §105 injunctions issued in favor of other parties against which the Libby Claimants have attempted to bring actions throughout the pendency of this case. Their claims against the Debtors, the alleged source of asserted Libby ills, will be addressed in the Debtors' plan of reorganization with respect to which, we note, significant progress has been made recently as announced in court on April 7.[2] Another short delay pending appeal will not cause substantial or untoward harm until the merits of the appeal are determined.

We also find that issuance of a stay pending appeal will not harm the public interest. In fact, not issuing the stay will harm the public interest because permitting the suit to go forward is an economic cost to be borne by its citizens and, if Montana suffers an adverse judgment, its public fisc will be affected.

Furthermore, although the parties have represented to the court that by statute there can be no collateral estoppel effect against the Debtors through pursuit of the Montana state court actions, the reality is that there will be "record taint" in that witnesses will be called to testify. The impact could well adversely impact the estate inasmuch as Debtors' products and conduct will of necessity be put at issue in the state court actions.

We recognize that the fact of record taint affecting the Debtors in the event the state court actions proceed gives rise to the thought that we should have issued the injunction in favor of the State of Montana rather than denying it. However, we are bound by *Pacor* as expressed in our

---

[2]The State of Montana offered to use a period of a stay pending appeal as an opportunity to try to settle this dispute. The several months that this appeal could pend will provide an opportunity for those discussions. The court encourages the State and the Libby Claimants to engage in that endeavor.

4

most recent Memorandum Opinion on this issue. In addition, Debtors may solve their own

liability issues, including contingent liabilities to the State of Montana, if any, through a plan .

For the foregoing reasons, it is **ORDERED** that the State of Montana's motion for stay

pending appeal is **GRANTED**.

It is **FURTHER ORDERED** that counsel for the State of Montana shall immediately

serve a copy of this Memorandum Order on all parties in interest who do not receive electronic

notice and shall file a certificate of service forthwith.

*Judith K. Fitzgerald*　4|22|08

Judith K. Fitzgerald
United States Bankruptcy Judge

5